IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERWINE'S HOME HEALTH CARE, INC.<br>270 Pierce Street, Suite 208<br>Kingston, Pennsylvania 18704,<br><br>COLORADO HOME CARE, INC.<br>700 Ken Pratt Boulevard<br>Longmont, Colorado 80501, and<br><br>POTOMAC HOME HEALTH CARE, INC.<br>6001 Montrose Road, Suite 307<br>Rockville, Maryland 20852,<br><br>     Plaintiffs,<br><br>   v.<br><br>MICHAEL O. LEAVITT, Secretary,<br>Department of Health and Human Services<br>200 Independence Avenue, SW<br>Room 615F<br>Washington, DC 20202,<br><br>     Defendant. | Civil Action No.: |

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT

Plaintiffs state:

I. INTRODUCTION

1. In accordance with 42 U.S.C. § 1395oo(f), Plaintiffs seek judicial review of final administrative determinations pertaining to the Medicare reimbursement which they are owed. Specifically, during the Medicare cost reporting periods at issue in this appeal, the fiscal years ending ("FYEs") December 31, 1996, and December 31, 1997, for Plaintiff Erwine's Home Health Care, Inc., FYE December 31, 1995, for Plaintiff Colorado Home Care, Inc., and FYEs June 30, 1995 and June 30, 1996, for Plaintiff Potomac Home Health Care, Plaintiffs operated

home health agencies that participated as providers of services in the federal Medicare program established under Title XVIII of the Social Security Act (the "Medicare Act"). During the periods at issue, Medicare reimbursed home health agencies for the reasonable costs incurred to furnish Medicare-covered services to Medicare beneficiaries.

2. Plaintiffs bring this action for review of the final determinations of the Secretary of the United States Department of Health and Human Services (the "Secretary" and "HHS") upholding disallowances, for Medicare reimbursement purposes, of costs incurred by Plaintiffs during these FYEs to furnish physical therapy ("PT") services to patients using employed physical therapists. The disputed adjustments disallowed the portions of Plaintiffs' PT costs that exceeded the Salary Equivalency Guidelines ("Guidelines") used by HHS to limit PT payments made by providers furnishing such services "under arrangement" with outside contractors.

3. In the administrative proceedings below, the parties stipulated to hearings on the record before the Provider Reimbursement Review Board (the "PRRB" or "Board").

4. The PRRB, an administrative body composed of members who are "knowledgeable in the field of payment of providers of services" and established by law to adjudicate this dispute, 42 U.S.C. § 1395oo(h), unanimously reversed the PT cost disallowances that were imposed upon Plaintiffs. Erwine's Home Health Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, PRRB Hearing Dec. No. 2005-D61 (Aug. 31, 2005), reported in [2005-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,388; Colorado Home Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, PRRB Hearing Dec. No. 2005-D63 (Sept. 1, 2005), reprinted in [2005-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,390; Potomac Home Health Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, PRRB

2

Hearing Dec. No. 2005-D70 (Sept. 27, 2005), reported in [Vol. 6] Medicare and Medicaid Guide (CCH) ¶ 81,437. In all three cases, the PRRB found that the Guidelines during the periods at issue only applied to "under arrangement" services with outside contractors, not to employed physical therapists even when such employees are paid a portion of their compensation on a fee-for-service basis. The PRRB further concluded that the Medicare Fiscal Intermediary ("Intermediary") could not utilize the Guidelines in place of a prudent buyer analysis to determine whether the Provider's costs for these services were "substantially out of line" when compared to the costs incurred by similarly situated providers for similar services. Stated somewhat differently, the Intermediary had not demonstrated that the disallowed costs were unreasonable. The PRRB's decisions were entirely consistent with numerous prior PRRB decisions, stretching back to 1988, on this same issue. They were also consistent with all of the judicial decisions on this same issue.

5.  The Secretary, acting through his delegate, the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS"), reversed the PRRB and, thereby, upheld the Intermediary's disallowances in both cases. Erwine's Home Health Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, CMS Administrator Dec. (Oct. 24, 2005), reported in [Vol. 6] Medicare and Medicaid Guide (CCH) ¶ 81,443; Colorado Home Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, CMS Administrator Dec. (Oct. 24, 2005); Potomac Home Health Care, Inc. v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, CMS Administrator Dec. (Nov. 22, 2005), reported in [Vol. 6 Medicare and Medicaid guide (CCH) ¶ 81,448. The Deputy Administrator reasoned that, although 42 U.S.C. § 1395x(v)(5)(A) only authorizes Guidelines for PT services "under arrangement" rather than pursuant to employment relationships, such Guide-

3

lines may lawfully be applied to employees if they receive fee-for-service compensation. The Deputy Administrator also asserted that this interpretation was consistent with Section 1403 of the Provider Reimbursement Manual ("PRM"), which subjects employed physical therapists' compensation to the Guidelines if any part of the compensation is predicated on a fee-for-services, percentage of income, or commission basis. The Deputy Administrator reached this conclusion even though Section 1403 and the PRM were not adopted in accordance with the notice and comment rulemaking procedures of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, and do not have the force and effect of law. The Deputy Administrator further claimed that the Secretary's interpretation was supported by 42 C.F.R. § 413.106(c)(5), which applies the Guidelines to employed physical therapists' compensation based, at least in part, on fee-for-service, percentage of income, or commission factors. Although this particular provision was only effective on April 10, 1998 (after the various periods at issue here), the Deputy Administrator argued that it was merely a clarification of longstanding policy. The Deputy Administrator ignored and failed to cite or reference: (a) various judicial authorities, which have unanimously and consistently invalidated the Secretary's interpretation and (b) the fact that the Secretary has settled cases favorably to providers when this same issue has been presented for judicial review.

6. The Secretary's final decisions are clearly contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law. Accordingly, Plaintiffs seek a declaration reversing the Secretary's decisions and an order compelling the Secretary to reimburse them for the actual costs incurred to furnish PT services to their patients, plus interest, legal fees, and costs of suit.

4

## II. JURISDICTION AND VENUE

7. This action arises under the Medicare Act, 42 U.S.C. § 1395 et seq. and the APA, 5 U.S.C. § 551 et seq.

8. This Court has jurisdiction under 42 U.S.C. § 1395oo(f).

9. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1).

## III. PARTIES

10. During its FYEs December 31, 1996 and December 31, 1997, Plaintiff Erwine's Home Health Care, Inc. ("Erwine's") operated a home health agency that was certified to participate in the Medicare program (Provider No. 39-7573). Plaintiff was located at 270 Pierce Street, Suite 208, Kingston, Pennsylvania 18704, and provided services to Medicare beneficiaries in the Scranton-Wilkes Barre area of Pennsylvania.

11. During its FYE December 31, 1995, Plaintiff Colorado Home Care, Inc. ("Colorado HC") operated a home health agency that was certified to participate in the Medicare program (Provider No. 06-7188). Plaintiff was located at 700 Ken Pratt Boulevard, Longmont, Colorado 80501, and provided services to Medicare beneficiaries in the metropolitan Denver area.

12. During its FYEs June 30, 1995, and June 30, 1996, Plaintiff Potomac Home Health Care, Inc. ("Potomac") operated a home health agency that was certified to participate in the Medicare program (Provider No. 21-7084). At that time, Plaintiff Potomac was located at 6001 Montrose Road, Suite 307, Rockville, Maryland 20852, and served Medicare beneficiaries in the metropolitan Washington, D.C. area.

13. Defendant, Michael O. Leavitt, is the Secretary of HHS, the federal agency responsible for administration of the Medicare program.

## IV. GENERAL STATUTORY AND REGULATORY BACKGROUND

A.  Medicare Reasonable Cost Reimbursement For PT Services

14.  The Medicare Act provides for various health insurance programs covering the aged and disabled. Part A of the Medicare Act provides -- and during the periods at issue here provided -- for hospital insurance benefits that cover "home health services" for individuals confined to their homes, under the care of physicians, and receiving services under plans of care established and periodically reviewed by a physician. Such individuals must be in need of skilled nursing care on an intermittent basis or must require PT or speech-language pathology or must have a continuing need for occupational therapy. 42 U.S.C. §§ 1395f(a)(2)(C) and 1395x(m).

15.  During the periods at issue, the Medicare Act mandated payment for PT services furnished to patients, either directly by the home health agency or by others under arrangements with the home health agency, and directed that the payment would be the lower of the home health agency's customary charges for the services or its "reasonable cost" for the services "as determined under section 1395x(v)." 42 U.S.C. §§ 1395f(b)(1) and 1395l(a)(2)(A)(i) and (ii) (1996).

16.  Section 1395x(v) of the Medicare Act defines "reasonable cost." As originally enacted in the Social Security Amendments of 1965, Section 1395x(v)(1)(A) provided that: "[t]he reasonable cost of any services shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs. . . ." Pub. L. No. 89-97, § 102(a). That provision for payment of reasonable cost is "intended to meet the actual costs, however widely they may vary from one institution to another, except where a particular institution's costs are found to be substantially out of line with

6

those of institutions similar in size, scope of services, utilization, and other relevant factors." S. Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 1976. The governing statute also requires that Medicare's "reasonable cost" regulations must ensure that Medicare reimburses the costs attributable to its beneficiaries and that the program neither bears the costs of non-Medicare patients nor shifts its costs onto those patients. 42 U.S.C. § 1395x(v)(1)(A)(i).

17. The Medicare regulation implementing the statutory definition of "reasonable cost" was promulgated in 1966 and codified at that time at 20 C.F.R. § 405.451. 31 Fed. Reg. 14,808, 14,816-17 (Nov. 22, 1966). The regulation is now codified at 42 C.F.R. § 413.9.

18. The "reasonable cost" regulation has always provided: "[r]easonable cost includes all necessary and proper costs incurred in rendering the services [furnished to Medicare beneficiaries]." 31 Fed. Reg. 14,816; 42 C.F.R. § 413.9(a) (1997). The regulation has always defined "necessary and proper costs" to mean "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities," and has always provided that necessary and proper costs "are usually costs which are common and accepted occurrences in the field of the provider's activity." 31 Fed. Reg. 14,817; 42 C.F.R. § 413.9(b)(2) (1997). Likewise, the "reasonable cost" regulation precludes Medicare from either shifting the costs of its beneficiaries to non-Medicare patients or bearing the costs of non-Medicare patients. 42 C.F.R. § 413.5(a).

19. With respect to payment for the reasonable cost of services, the regulation adopted virtually verbatim the above-quoted language describing the intent of the statutory provision for payment of reasonable costs in the legislative history of Section 1395x(v) of the Medicare Act. The 1966 version of the regulation provided:

7

  (2) The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in title XVIII of the Act for payment of reasonable cost of services is intended to meet <u>the actual costs, however widely they may vary from one institution to another.</u> This is subject to a limitation where a particular institution's costs are found to be <u>substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors.</u>

  (3) The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services. . . . <u>The reasonable cost basis of reimbursement contemplates that the providers of services would be reimbursed the actual costs of providing quality care however widely the actual costs may vary from provider to provider and from time to time for the same provider.</u>

31 Fed. Reg. 14,817 (emphasis added). The language quoted above has remained virtually unchanged from 1966 to the present. <u>See</u> 42 C.F.R. § 413.9(c)(2)-(3) (1997).

  20. In February, 1969, HHS published Section 2102.1 of the PRM. The 1969 version of PRM, § 2102.1 reiterated the statutory mandate that reasonable costs shall be "determined in accordance with regulations establishing the method or methods to be used, and the items to be included."

  21. The PRM was amended in November 1971. The 1971 revision noted an "expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or service." <u>Id.</u>

  22. In 1972, Congress amended the Medicare Act. Social Security Amendments of 1972, Pub. L. No. 92-603, 86 Stat. 1329 (the "1972 Amendments"). Among other things, the 1972 Amendments authorized the Secretary to adopt regulations to limit the reasonable costs incurred by providers to obtain therapy services <u>from outside contractors</u> to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees plus

8

travel and other reasonable expenses incurred by an outside contractor. 1972 Amendments, § 251(c).

23. Section 251(c) of the 1972 Amendments enacted 42 U.S.C. § 1395x(v)(5)(A), which, as noted above, authorized the Secretary to adopt regulations limiting the reasonable costs incurred by providers to obtain therapy services <u>from outside contractors</u> to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees, plus travel and other reasonable expenses incurred by an outside contractor. In 1975, the Secretary adopted regulations implementing the authority to establish those salary equivalency limits on therapy costs related to the use of outside contractors. 40 Fed. Reg. 5,760 (Feb. 7, 1975). The Secretary's salary equivalency regulations are now codified in 42 C.F.R. § 413.106.

24. The Secretary's salary equivalency regulations do not establish salary equivalency limits for any type of therapy service. 42 C.F.R. § 413.106. Rather, the regulations prescribe a process by which salary equivalency guidelines may be established by the Secretary for a particular type of therapy service. <u>Id.</u> Among other things, the regulations require the Secretary to approve and provide advance notice of separate salary equivalency guidelines for each type of therapy service. 42 C.F.R. §§ 413.106(c)(1) and (c)(5). The regulations also require publication in the <u>Federal Register</u> prior to the application of salary equivalency guidelines for a particular type of therapy service. 42 C.F.R. § 413.106(d).

25. When the Secretary originally issued salary equivalency limits for PT services, the preamble stated that they were confined to "under arrangement" services by "outside contractors" rather than services provided pursuant to employment relationships. 40 Fed. Reg. 5,760 (Feb. 7, 1975). This limitation was consistent with the language of 42 U.S.C. § 1395x(v)(5)(A)

9

and 42 C.F.R. § 413.106(a), which was similarly restrictive. The same limitation was also reiterated when HHS revised the Guidelines. E.g., 48 Fed. Reg. 44,922 (Sept. 30, 1983).

26.     In Transmittal No. 178 (June 1977), however, HHS amended Section 1403 ("Guideline Application") of the PRM to include the following language:

> The guidelines apply only to the costs of services performed by outside suppliers, not to the salaries of providers' employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationships, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.
>
> In situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

This extension of HHS's policy contravened the plain language of the governing statute and regulation. Moreover, neither Transmittal No. 178 nor PRM, § 1403 were subjected to notice and comment rulemaking pursuant to the APA.

27.     In 1998, the Secretary amended 42 C.F.R. § 431.106 specifically to have it apply to employment relationships in the same circumstances as enumerated in PRM, § 1403. See 63 Fed. Reg. 5106 (Jan. 30, 1998); 42 C.F.R. § 413.106(c)(5). Although the Secretary has attempted to claim that this alteration was only a clarification of existing policy, the effective date of the change was April 10, 1998 -- after the periods at issue here (FYEs June 30, 1995, June 30, 1996, December 31, 1996, and December 31, 1997). See 63 Fed. Reg. 15,319 (Mar. 31, 1998).

28.     The Secretary's "interpretation" that the Guidelines may be applied to employment relationships for periods before April 10, 1998, has not been adopted and utilized by all

Medicare fiscal intermediaries. As such, the Secretary's "interpretation" has not been applied uniformly or consistently. Indeed, the Secretary himself is not applying his "interpretation" uniformly or consistently. For example, the "interpretation" is not being applied to providers in: (a) states in the Eighth Circuit (Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota) because the Eighth Circuit has ruled against the Secretary's position; (b) Wyoming (where the Federal District Court ruled against the Secretary's position); and (c) the Eastern District of California (where the Federal District Court ruled against the Secretary's position). See In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999); K&R Home Health Services, Inc. v. Thompson, No. Civ. 5-00-2501/LKK/DAD (E.D. Cal. Nov. 9, 2001); High Country Home Health, Inc. v. Shalala, 84 F. Supp. 2d 1241 (D. Wy. 1999). It is unclear whether the Secretary is applying his "interpretation" in Colorado (where the Secretary settled a case on this issue on terms favorable to the provider prior to any court ruling) and the Eastern District of Pennsylvania (where the Secretary settled a case on this issue on terms favorable to the provider prior to any court ruling). See All Care Home Health, Inc. v. Thompson, C.A. No. 02-AP-25 (MJW) (D. Colo.) (Jul. 19, 2002 settlement); Berks Visiting Nurse Ass'n v. Leavitt, No. 04-CV-5567 (E.D. Pa.) (Oct. 19, 2005 settlement).

29.     The Guidelines in place from October 1, 1982, through April 9, 1998, were based on 1981 data with a trend factor to update the data for inflation. 48 Fed. Reg. 44,922 (Sept. 30, 1983); 63 Fed. Reg. 15,315 (Mar. 31, 1998). When the Secretary reissued the Guidelines in 1998 utilizing more recent data, they increased 49.8 percent over the Guidelines in effect just one year earlier -- a powerful indication that the Guidelines amounts during this period were insufficient and not a proper basis for any "reasonable" cost or "prudent buyer" analysis. Stated

somewhat differently, for the 15½ years that the 1982 Guidelines were in effect, they underestimated PT cost increases by an average of more than 3.2 percent annually.

30.     Accordingly, during the periods at issue here, the reasonable cost principles established in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9 govern a provider's entitlement to Medicare payment for costs incurred by the provider in using employees to furnish PT services to patients.

B.     Medicare Claims and Appeals

31.     The Secretary contracts with outside organizations (usually the Blue Cross Association or an insurance company) to perform certain audit, administrative, and payment functions with respect to providers of services under the Medicare program.

32.     The Secretary has established separate processes for determining whether services furnished to beneficiaries are covered by Medicare and for determining a provider's reasonable costs of furnishing services.

33.     Regulations governing determinations of benefits covered by Medicare are codified in 42 C.F.R., part 405, subparts G and H. Pursuant to the regulations, an individual claim must be filed with the Medicare intermediary by or on behalf of a beneficiary after PT services have been furnished to the beneficiary by a home health agency. See 42 C.F.R. §§ 405.702, 405.704. The fiscal intermediary reviews these individual claims, ascertains whether the services furnished to the beneficiary are covered under Medicare, makes interim payment for the claims, and issues a determination (known as the initial determination) to the beneficiary and, in most circumstances, to the provider of services. Id. The initial determination is final and binding unless the beneficiary or provider pursues administrative remedies or the

intermediary revises the determination within a prescribed period after the date of the initial determination. See 42 C.F.R. §§ 405.708, 405.750.

34. After the close of each fiscal year and for each of the years involved here, a provider files a cost report with its Medicare fiscal intermediary, which audits the cost report and issues a final determination of the provider's reasonable costs of services furnished to Medicare beneficiaries in a notice of program reimbursement ("NPR"). See 42 U.S.C. §§ 1395h and 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 405.1803(a)(1) and 413.20; Bethesda Hospital Ass'n v. Bowen, 485 U.S. 399, 400-01 (1988).

35. A provider that is dissatisfied with the intermediary's determination of its reasonable cost, or a group of providers that are dissatisfied with intermediary determinations involving a common issue regarding their reasonable costs, may appeal to the PRRB. 42 U.S.C. § 1395oo(a). The decision of the PRRB is final unless the Secretary (acting through the CMS Administrator) reverses, affirms, or modifies the Board's decision within 60 days after the provider is notified of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). A provider or group of providers that is dissatisfied with the final decision of the Board, or with an affirmance, reversal or modification by the Secretary (acting through the Administrator), may appeal to the United States District Court for the District of Columbia or to the United States District Court for the judicial district where the provider is located or, in the case of a group appeal, where the greatest number of providers in the group are located. 42 U.S.C. § 1395oo(f)(1).

## V. FACTS SPECIFIC TO THIS CASE

A. <u>Plaintiffs' Employment Relationships</u>

36. During the periods at issue, Plaintiffs employed full-time physical therapists to furnish PT services to their patients. Plaintiffs paid these physical therapists on a per-visit basis

for the work they performed. It is undisputed that these individuals were employees of the Plaintiffs – they were subjected to payroll withholdings, received fringe benefits, had federal taxes withheld, and received W-2s.

B. <u>Disallowance Of Plaintiffs' PT Costs</u>

37. On September 16, 1998, the Intermediary issued a NPR for Plaintiff Erwine's FYE December 31, 1996. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff Erwine's to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $10,700 in Medicare reimbursement to Plaintiff Erwine's.

38. On September 30, 1999, the Intermediary issued a NPR for the Plaintiff Erwine's FYE December 31, 1997. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff Erwine's to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $7,198 in Medicare reimbursement to Plaintiff Erwine's.

39. On September 26, 1997, the Intermediary issued a NPR for Plaintiff Colorado HC's FYE December 31, 1995. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff Colorado HC to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $10,346 in Medicare reimbursement to Plaintiff Colorado HC.

40. On March 16, 1998, the Intermediary issued a NPR for Plaintiff Potomac's FYE June 30, 1995. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff Potomac to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $45,230 in Medicare reimbursement to Plaintiff Potomac.

41. On March 16, 1999, the Intermediary issued a NPR for Plaintiff Potomac's FYE June 30, 1996. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by Plaintiff Potomac to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $71,026 in Medicare reimbursement to Plaintiff Potomac.

42. The Intermediary's disallowances for these periods were not based upon a determination that the PT services to Plaintiffs' patients were medically unnecessary or otherwise not covered by the Medicare program. The PT services furnished to the Plaintiffs' patients during these periods were subject to a separate claims review process for coverage determinations and were determined by the Intermediary to be medically necessary and covered.

43. The disallowances of Plaintiffs' PT costs for these periods were based, instead, on the premise that Plaintiffs paid too much for the PT services rendered by employed physical therapists in accordance with physicians' care plans for their patients. The Intermediary, therefore, disallowed portions of Plaintiffs' PT costs in excess of the Guidelines, thereby assuming that: (a) the Guidelines were applicable to employment relationships; (b) the amounts in the Guidelines were a lawful and accurate barometer of what reasonable costs should be; and (c) no

15

consideration should be given to, and no exception or additional allowance should be made for, work performed by the physical therapists in excess of their full-time duties. Apart from rote application of the Guidelines, the Intermediary performed no separate or independent "prudent buyer" analysis as to these costs and their reasonableness.

C.     Administrative Proceedings

44.    Plaintiff Erwine's timely appealed the Intermediary's disallowances of its FYEs December 31, 1996, and December 31, 1997 costs, including the PT costs, to the PRRB pursuant to the appeals process established under 42 U.S.C. § 1395oo. The PRRB issued a unanimous decision on the record in Plaintiff Erwine's favor based upon the parties' written evidence and arguments. The PRRB's decision is dated August 31, 2005, and was received by Plaintiff Erwine's on September 1, 2005.

45.    Plaintiff Colorado HC timely appealed the Intermediary's disallowances of its FYE December 31, 1995 costs, including the PT costs, to the PRRB pursuant to the appeals process established under 42 U.S.C. § 1395oo. The PRRB issued a unanimous decision on the record in Plaintiff Colorado HC's favor based upon the parties' written evidence and arguments. The PRRB's decision is dated September 1, 2005, and was received by Plaintiff Colorado HC on September 2, 2005.

46.    Plaintiff Potomac timely appealed the Intermediary's disallowances of its FYE June 30, 1995 and June 30, 1996 costs, including the PT costs, to the PRRB pursuant to the appeals process established under 42 U.S.C. § 1395oo. The PRRB issued a unanimous decision on the record in Plaintiff Potomac's favor based upon the parties' written evidence and arguments. The PRRB's decision is dated September 27, 2005, and was received by Plaintiff Potomac on September 28, 2005.

47. In all three cases, the PRRB concluded that the Intermediary's disallowances of PT costs using the Guidelines was improper under 42 U.S.C. § 1395x(v)(5)(A) because the Guidelines were limited under that provision to "under arrangement" relationships with outside contractors and do not apply to employee relationships. The Board further reasoned the Guidelines could not be substituted for a prudent buyer analysis and that, instead, intermediaries were required to determine whether a provider's costs are "substantially out of line" by comparing those costs to costs incurred by similarly situated providers. The Board found that the Intermediary had not conducted such an analysis.

48. The Deputy Administrator of CMS issued decisions reversing the PRRB. In Erwine's case, the decision was dated October 24, 2005, was sent to Plaintiff Erwine's representative by certified mail and letter dated October 27, 2005, and was received by Plaintiff Erwine's representative on October 28, 2005. In Colorado HC's case, the decision was dated October 24, 2005, was sent to Plaintiff Erwine's representative by certified mail and letter dated October 27, 2005, and was received by Plaintiff Colorado HC's representative on October 28, 2005. In Potomac's case, the decision was dated November 22, 2005, was sent to Plaintiff Potomac's representative by certified mail and letter dated November 23, 2005, and was received by Plaintiff Potomac's representative on November 29, 2005. In all three cases, the Deputy Administrator ruled that application of the Guidelines in this situation was not foreclosed by 42 U.S.C. § 1395x(v)(5)(A). Conceding that Congress had not envisioned or contemplated the types of employment relationships present in this case, the Deputy Administrator nonetheless concluded that PRM, § 1403 was an appropriate vehicle for limiting such relationships.

49. Plaintiffs have exhausted all available administrative remedies and bring this action for judicial review pursuant to the provisions of 42 U.S.C. § 1395oo(f).

17

## VI. ASSIGNMENT OF ERRORS

50. The Secretary's final decisions are contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law for several reasons, including the following.

51. The Secretary's decisions upholding the application of the Guidelines to Plaintiffs' PT costs for employees are arbitrary and capricious and violate the plain meaning and intent of 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue.

52. The Secretary's decisions upholding the Intermediary's disallowances are an unlawful attempt to apply retroactively the terms of 42 C.F.R. § 413.106(c)(5) that were only effective April 10, 1998, and thereafter.

53. The Secretary's decisions upholding the Intermediary's disallowances of the Plaintiffs' actual PT costs are also contrary to the plain meaning of the reasonable cost reimbursement provisions in 42 U.S.C. § 1395x(v)(1)(A) and the implementing regulations codified at 42 C.F.R. §§ 413.5 and 413.9.

54. As construed and applied by the Secretary, PRM, § 1403 is invalid because: (a) it conflicts with 42 U.S.C. § 1395x(v)(1)(A) and (5)(A) and 42 C.F.R. §§ 413.9 and 413.106 as the latter existed during the periods at issue; and (b) it was not adopted in accordance with the notice and comment rulemaking procedures mandated by the APA, 5 U.S.C. § 553.

55. The Secretary's decisions upholding the Intermediary's disallowances of Plaintiffs' PT costs are arbitrary and capricious and not based upon substantial evidence because they did not require the Intermediary to base its determinations on a prudent buyer analysis

demonstrating that Plaintiffs' actual PT costs were substantially out of line with comparable costs incurred by comparable providers for comparable services.

56. The Secretary's decisions upholding the Intermediary's disallowances of Plaintiffs' actual PT costs are arbitrary and capricious and not based on substantial evidence because they: (a) assume the validity of the Guidelines as a proxy for measuring reasonable costs; and (b) ignore the necessity of additional compensation for employees who work on an overtime (more than full-time) basis.

57. The Secretary's decisions upholding the use of the Guidelines in Plaintiffs' cases are arbitrary and capricious, not based on substantial evidence, and otherwise contrary to law because the Secretary has ignored the selective application of the Guidelines by intermediaries to similar situations.

58. The Secretary's decisions upholding the use of the Guidelines in Plaintiffs' cases are arbitrary and capricious, not based on substantial evidence, and otherwise contrary to law because the Secretary himself is not applying the Guidelines uniformly but, instead, has chosen not to apply them in significant areas of the country, including areas where there is no controlling federal appellate court or federal district court decision on this issue.

59. The Secretary's decisions in Plaintiffs' cases are without substantial justification.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiffs request:

(1) A declaration that the disallowances of Plaintiffs' PT costs are invalid because they are inconsistent with 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue;

(2) A declaration that the disallowances of Plaintiffs' PT costs are invalid because the disallowances conflict with the reasonable cost reimbursement principles established in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9;

(3) A declaration that the disallowances of Plaintiffs' PT costs are invalid because the disallowances are based on a manual provision that conflicts with 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue and that was issued in contravention of the required notice and comment procedures of the APA;

(4) A declaration that the disallowances of Plaintiffs' PT costs are invalid because the disallowances are otherwise arbitrary and capricious, unsupported by substantial evidence, and otherwise contrary to law;

(5) An order reversing the Secretary's decisions to permit the disallowances of Plaintiffs' PT costs and requiring Defendant to make prompt payment to Plaintiffs for the amounts disallowed, plus interest, in accordance with 42 U.S.C. § 1395oo(f)(2);

(6) An order requiring Defendant to pay the legal fees and costs of suit incurred by Plaintiffs pursuant to 5 U.S.C. § 504(a); and

(7) Such other relief as the Court may consider appropriate.

Respectfully submitted,

*[signature]*

JOEL M. HAMME (D.C. Bar 219170)
ADAM H. GREENE (D.C. Bar 475179)
POWERS, PYLES, SUTTER & VERVILLE, PC
1875 Eye Street, NW
12th Floor
Washington, DC 20006-5409
(202) 466-6550

Attorneys for Plaintiffs

December 21, 2005