IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
ERWINE'S HOME HEALTH CARE, INC.,        )
COLORADO HOME CARE, INC., and           )
POTOMAC HOME HEALTH CARE, INC.,         )
                                        )
         Plaintiffs,                    )   Civil Action No. 05-2441 (ESH)
                                        )
         v.                             )   Judge Ellen Segal Huvelle
                                        )
MICHAEL O. LEAVITT, Secretary,          )
Department of Health and Human Services,)
                                        )
         Defendant.                     )
_____)


_____

BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
_____


Joel M. Hamme (D.C. Bar 219170)
Larry S. Gondelman (D.C. Bar 950691)
POWERS, PYLES, SUTTER & VERVILLE, PC
1875 Eye Street, NW
12th Floor
Washington, DC 20006-5409
(202) 466-6550

Attorneys for Plaintiff

Dated:  August 7, 2006

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Procedural History ................................................................................... 2

        B.      Statutory And Regulatory Setting............................................................ 3

                1.      The Reasonable Cost Reimbursement Requirement................................... 3

                2.      The Salary Equivalency Guidelines................................................... 5

                3.      The Medicare Claims and Appeals Process............................................ 8

        C.      Factual Synopsis ...................................................................................... 8

III.    ISSUE ................................................................................................................... 10

IV.     JURISDICTION, VENUE, AND SCOPE OF REVIEW ..................................... 10

V.      SUMMARY OF ARGUMENT ............................................................................ 11

VI.     ARGUMENT ........................................................................................................ 12

        A.      The Issue In This Case Has Been Extensively Litigated ........................ 12

        B.      The Secretary's Position In This Case Has Been Consistently And
                Uniformly Rejected By The Courts .......................................................... 19

        C.      The Secretary's Interpretation Is Inconsistent With His Own Actions................ 21

        D.      There Has Been No "Reasonable Cost" Or "Prudent Buyer" Analysis
                In This Case .............................................................................................. 24

VII.    CONCLUSION...................................................................................................... 25

CERTIFICATE OF SERVICE

LIST OF EXHIBITS

EXHIBITS

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

<u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970).......................................................... 11

\*<u>AllCare Home Health, Inc. v. Thompson</u>, C.A. No. 02-AP-25 (MJW) (D. Colo.)
    (July 19, 2002 settlement), <u>resolving</u>, HCFA Admin. Dec. (Nov. 14, 2001) <u>sub nom.</u>
    <u>HHS/AllCare 93-94, 96 PT Group Appeal v. BlueCross BlueShield Ass'n</u>,
    <u>reported in</u> [2002-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,785,
    <u>rev'g</u>, PRRB Dec. No. 2001-D46 (Aug. 8, 2001), <u>reported in</u> [2001-2 Transfer Binder]
    Medicare and Medicaid Guide (CCH) ¶ 80,738 .................................................... 14, 15, 22, 23

<u>Alma Nelson Manor v. Aetna Life Ins. Co.</u>, PRRB Dec. No. 90-D15
    (Feb. 26, 1990), <u>reported in</u> [1990 Transfer Binder] Medicare and Medicaid Guide
    (CCH) ¶ 38,429 ......................................................................................................... 19, 22, 24

\*<u>Berks Visiting Nurse Ass'n v. Leavitt</u>, Civil Action No. 04-CV-5567 (E.D. Pa.)
    (Oct. 19, 2005 settlement), <u>resolving</u>, CMS Admin. Dec. (Oct. 4, 2004),
    <u>reported in</u> [2005-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,271,
    <u>rev'g</u>, PRRB Dec. No. 2004-D34 (Aug. 13, 2004), <u>reported in</u> [2004-2 Transfer Binder]
    Medicare and Medicaid Guide (CCH) ¶ 81,185 ...................................................... 15, 22, 23, 25

<u>Capitol Home Health-Markville v. Blue Cross and Blue Shield Ass'n</u>,
    HCFA Admin. Dec. (Oct. 28, 1999), <u>reported in</u> [2000-1 Transfer Binder]
    Medicare and Medicaid Guide (CCH) ¶ 80,408, <u>rev'g</u>, PRRB Dec. No. 99-D65
    (Aug. 27, 1999), <u>reported in</u> [1999-2 Transfer Binder] Medicare and Medicaid
    Guide (CCH) ¶ 80,330 .............................................................................................. 18, 19

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ............................................................ 11

<u>Colorado Home Care, Inc. v. BlueCross BlueShield Ass'n</u>, CMS Admin. Dec.
    (Oct. 24, 2005), <u>reported in</u> [2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH)
    ¶ 81,444, <u>rev'g</u>, PRRB Dec. No. 2005-D63 (Sept. 1, 2005), <u>reported in</u> [2005-2 Transfer
    Binder] Medicare and Medicaid Guide (CCH) ¶ 81,390 ................................................ *passim*

<u>Erwine's Home Health Care, Inc. v. BlueCross BlueShield Ass'n</u>,
    CMS Admin. Dec. (Oct. 24, 2005), <u>reported in</u> [2006-1 Transfer Binder]
    Medicare and Medicaid Guide (CCH) ¶ 81,443, <u>rev'g</u>, PRRB Dec. No. 2005-D61
    (Aug. 31, 2005), <u>reported in</u> [2005-2 Transfer Binder] Medicare and Medicaid
    Guide (CCH) ¶ 81,388 ................................................................................................ *passim*

<u>Green Country Mobilephone, Inc. v. FCC</u>, 765 F.2d 235 (D.C. Cir. 1985) ................................ 24

---

\* Authorities Principally Relied Upon.

TABLE OF AUTHORITIES (cont'd)

Page(s)

Health Care Options v. BlueCross BlueShield Ass'n, PRRB Dec. No. 2005-D66
(Sept. 2, 2005)............................................................................................................ 17

*High Country Home Health, Inc. v. Shalala, 84 F. Supp.2d 1241 (D. Wy. 1999),
rev'g, HCFA Admin. Dec. (May 20, 1997), reported in [1997-2 Transfer Binder]
Medicare and Medicaid Guide (CCH) ¶ 45,543, rev'g, PRRB Dec. No. 97-D35
(Mar. 19, 1997), reported in [1997-1 Transfer Binder] Medicare and Medicaid Guide
(CCH) ¶ 45,130............................................................................................... passim

Illinois Bell Telephone Co. v. FCC, 740 F.2d 465 (7th Cir. 1984) ............................................... 24

*In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999),
aff'g, Civ. No. 97-2598/RHK/FLN (D. Minn. June 11, 1998), reported in
[1998-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 300,005,
rev'g, Health Care Financing Administration ("HCFA") Admin. Dec. (Oct. 28, 1997),
reported in [1998-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 45,942,
on remand from, Civ. No. 3-94-1408/RHK/FLN (D. Minn. Mar. 5, 1992), reported in
[1997-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 45,129, vacating and
remanding, HCFA Admin. Dec. (Apr. 29, 1996), reported in [1996-2 Transfer Binder]
Medicare and Medicaid Guide (CCH) ¶ 44,595, rev'g, PRRB Dec. No. 96-D16
(Feb. 17, 1996), reported in [1996-1 Transfer Binder] Medicare and Medicaid Guide
(CCH) ¶ 44,065............................................................................................... passim

*K&R Home Health Services, Inc. v. Thompson, No. Civ. S-00-2501/LKK/DAD
(E.D. Cal. Nov. 9, 2001), rev'g, HCFA Admin. Dec. (Sept. 7, 2000) sub nom.
All-Care Home Health Services v. Blue Cross and Blue Shield Ass'n, reported in
[2001-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,621, rev'g,
PRRB Dec. No. 2000-D63 (June 8, 2000), reported in [2000-1 Transfer Binder]
Medicare and Medicaid Guide (CCH) ¶ 80,509 .............................................. passim

MGH Home Health v. BlueCross BlueShield Ass'n, CMS Admin. Dec. (July 11, 2006),
reported in Medicare and Medicaid Guide (CCH) ¶ _____, rev'g,
PRRB Dec. No. 2006-D25 (June 1, 2006), reported in Medicare and Medicaid Guide
(CCH) ¶ 81,532............................................................................................ 16

Motor Vehicle Manufacturers Association of the United States, Inc. v.
State Farm Mutual Automobile Insurance Company, 463 U.S. 29 (1983).............................. 11

Pocono Medical Home Care, Inc. v. BlueCross BlueShield Ass'n,
CMS Admin. Dec. (Sept. 10, 2004), reported in [2005-1 Transfer Binder]
Medicare and Medicaid Guide (CCH) ¶ 81,272, rev'g, PRRB Dec. No. 2004-D31
(July 16, 2004), reported in [2004-2 Transfer Binder] Medicare and Medicaid Guide
(CCH) ¶ 81,181........................................................................................... 17

---

* Authorities Principally Relied Upon.

TABLE OF AUTHORITIES (cont'd)

Page(s)

Potomac Home Health Care, Inc. v. BlueCross BlueShield Ass'n, CMS Admin. Dec.
(Nov. 22, 2005), reported in [2006-1 Transfer Binder] Medicare and Medicaid Guide
(CCH) ¶ 81,448, rev'g in part, PRRB Dec. No. 2005-D70 (Sept. 27, 2005), reported in
[2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,437 .......................... *passim*

Professional Home Care, Inc. v. Leavitt, Civil Action No. 1:06-cv-00512-RJL
    (D.D.C. pending), on appeal from, CMS Admin. Dec. (Jan. 13, 2006), reported in
    [2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,466, rev'g,
    PRRB Dec. No. 2006-D6 (Nov. 18, 2005), reported in [2006-1 Transfer Binder]
    Medicare and Medicaid Guide (CCH), ¶ 81,454 .............................................................. 16, 17

Shalala v. Guernsey Memorial Hospital, 514 U.S. 87 (1995) ....................................................... 4

SNI Home Care, Inc. v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec.
    (Nov. 1, 2001), reported in [2003-1 Transfer Binder] Medicare and Medicaid Guide
    (CCH) ¶ 80,973, rev'g, PRRB Dec. No. 2003-D11 (Dec. 20, 2002), reported in
    [2003-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,959 ....................... 18, 25

Summit Nursing Home, Inc. v. Prudential Ins. Co., PRRB Dec. No. 88-D29
    (Sept. 1, 1988), reported in [1989-1 Transfer Binder] Medicare and Medicaid Guide
    (CCH) ¶ 37,408 ............................................................................................................ 19, 22, 24

The Medical Team, Inc. v. Leavitt, Civil Action No. 1:06-cv-001139-HHK (D.D.C. pending),
    on appeal from, CMS Admin. Dec. (Apr. 26, 2006), reported in Medicare and Medicaid
    Guide (CCH), ¶ 81,522, rev'g, PRRB Dec. No. 2006-D18 (Mar. 3, 2006), reported in,
    Medicare and Medicaid Guide (CCH) ¶ 81,504 ...................................................................... 16

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994) ........................................................... 10

[*]Tip of Illinois Health Services, Inc. v. Leavitt, Case No. 04-4200 JPG (S.D. Ill.)
    (Feb. 16, 2006 settlement), resolving, CMS Admin. Dec. (Aug. 3, 2004),
    reported in [2004-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,187,
    rev'g, PRRB Dec. No. 2004-D25 (June 9, 2004), reported in [2004-2 Transfer Binder]
    Medicare and Medicare Guide (CCH) ¶ 81,160 ......................................................... 15, 22, 23

Tulsa Home Health Services v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec.
    (Nov. 1, 2001), reported in [2002-1 Transfer Binder] Medicare and Medicaid Guide
    (CCH) ¶ 80,781, rev'g, PRRB Dec. No. 2001-D44 (Aug. 3, 2001), reported in
    [2001-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,734 ........................... 18

United States v. Larinoff, 431 U.S. 864 (1977) .......................................................................... 10

---

[*] Authorities Principally Relied Upon.

TABLE OF AUTHORITIES (cont'd)

Page(s)

Visiting Nurse Ass'n of Washington, DC v. BlueCross BlueShield Ass'n,
    PRRB Dec. No. 2006-D33 (Jul. 19, 2006), reported in Medicare and Medicaid Guide
    (CCH) ¶ _____. ......................................................................................... 16

VNA Healthcare, Inc. v. BlueCross BlueShield Ass'n, CMS Admin. Dec. (July 8, 2005),
    reported in [2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,433,
    rev'g, PRRB Dec. No. 2005-D37 (May 10, 2005), reported in [2005-2 Transfer Binder]
    Medicare and Medicaid Guide (CCH) ¶ 81,351 ...................................................... 17

VNA of Maryland, LLC v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec.
    (Oct. 9, 2001), reported in [2002-1 Transfer Binder] Medicare and Medicaid Guide
    (CCH) ¶ 80,787, rev'g, PRRB Dec. No. 2001-D39 (Aug. 8, 2001, reported in
    [2001-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,729............................. 18


Statutes

5 U.S.C. § 504............................................................................................................. 26
5 U.S.C. § 551 et seq. ................................................................................................... 4
5 U.S.C. § 706............................................................................................................. 10
5 U.S.C. § 706(2)(A)................................................................................................... 10
42 U.S.C. § 1395 et seq. ............................................................................................... 3
42 U.S.C. § 1395f(b)(1) (1996) ................................................................................... 3
42 U.S.C. § 1395h......................................................................................................... 8
42 U.S.C. § 1395l(a)(2)(A)(i) (1996).......................................................................... 3
42 U.S.C. § 1395l(a)(2)(A)(ii) (1996) ........................................................................ 3
42 U.S.C. § 1395x(m).................................................................................................. 3
42 U.S.C. § 1395x(v).................................................................................................. 3, 4
42 U.S.C. § 1395x(v)(1)(A) .................................................................................... passim
[*]42 U.S.C. § 1395x(v)(5)(A)................................................................................. passim
42 U.S.C. § 1395ff(a)(2)(C) ....................................................................................... 3
42 U.S.C. § 1395fff(a) ................................................................................................. 5
42 U.S.C. § 1395oo(a) ................................................................................................. 8
42 U.S.C. § 1395oo(a)(1)(A)(i) .................................................................................. 8
42 U.S.C. § 1395oo(f)(1) ............................................................................................ 8, 10
42 U.S.C. § 1395oo(f)(2) ............................................................................................ 25

---

[*] Authorities Principally Relied Upon.

TABLE OF AUTHORITIES (cont'd)

Page(s)

Regulations

42 C.F.R. § 405.1803(a)(1) ................................................................................................. 8

42 C.F.R. § 413.9 ....................................................................................................... 4, 24

42 C.F.R. § 413.9(a) ...................................................................................................... 4

42 C.F.R. § 413.9(b)(2) ................................................................................................. 4

42 C.F.R. § 413.9(c)(2) ................................................................................................. 4

42 C.F.R. § 413.9(c)(3) ................................................................................................. 4

42 C.F.R. § 413.20 ....................................................................................................... 8

42 C.F.R. § 413.105(d) ................................................................................................. 6

[*]42 C.F.R. § 413.106 ............................................................................................. passim

[*]42 C.F.R. § 413.106 [1997] ........................................................................................ 11

42 C.F.R. § 413.106(a) ................................................................................................. 6

42 C.F.R. § 413.106(c)(1) ............................................................................................ 6

42 C.F.R. § 413.106(c)(5) ......................................................................................... 6, 7

Federal Register

31 Fed. Reg. 14,808 (Nov. 22, 1966) ............................................................................ 4

40 Fed. Reg. 5,760 (Feb. 7, 1975) ........................................................................... 6, 24

48 Fed. Reg. 44,922 (Sept. 30, 1983) ................................................................... 6, 7, 24

63 Fed. Reg. 5106 (Jan. 30, 1998) .......................................................................... 7, 24

63 Fed. Reg. 15,319 (Mar. 31, 1998) ............................................................................ 8

Other Authorities

F.R. Civ. P. 56(c) ........................................................................................................ 11

Provider Reimbursement Manual, CMS Pub. 15, Part I ("PRM"), § 1403 ........................... passim

PRM, § 2100 ............................................................................................................... 4

PRM, § 2102.1 ......................................................................................................... 4, 5

S. Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in 1965 U.S.C.C.A.N. 1943 ................... 4

*Social Security Amendments of 1972, Pub. L. No. 92-603, 86 Stat. 1329 ................................. 5

Transmittal No. 178 (June 1977) .......................................................................... 7, 24

---

[*] Authorities Principally Relied Upon.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
ERWINE'S HOME HEALTH CARE, INC.,          )
COLORADO HOME CARE, INC., and              )
POTOMAC HOME HEALTH CARE, INC.,         )
                                                    )
                    Plaintiffs,                    )     Civil Action No. 05-2441 (ESH)
                                                    )
            v.                                       )     Judge Ellen Segal Huvelle
                                                    )
MICHAEL O. LEAVITT, Secretary,              )
Department of Health and Human Services,   )
                                                    )
                    Defendant.                   )
_____)


BRIEF IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT


I.      INTRODUCTION

        In this brief in support of their motion for summary judgment, Plaintiffs, Erwine's Home

Health Care, Inc. ("Erwine's"), Colorado Home Care, Inc. ("CHC"), and Potomac Home Health

Care, Inc. ("PHHC"), first describe the background of this case – procedurally, legally, and

factually.  They then pose the legal issue to be resolved here.  After a short synopsis of points

pertaining to jurisdiction, venue, and scope of review, Plaintiffs next furnish a summary of their

argument.  Finally, Plaintiffs show why they are entitled to summary judgment as a matter of law

and enumerate the relief that should be ordered by this Court.

II.    BACKGROUND

   A.    Procedural History

   For the periods at issue here, Erwine's, CHC, and PHHC were Medicare-certified home health agencies furnishing covered services to beneficiaries of that program.[1]  During its fiscal years ending ("FYEs") December 31, 1996 and December 31, 1997, Erwine's employed physical therapists to furnish such services to its patients; CHC similarly employed physical therapists during its FYE December 31, 1995; and PHHC likewise employed physical therapists during its FYEs June 30, 1995 and June 30, 1996.[2]

   The Medicare fiscal intermediary for each Plaintiff ultimately conducted audits for these periods and, relying entirely on salary equivalency guidelines, refused to reimburse Plaintiffs for substantial portions of the compensation paid to these employed physical therapists.[3]  (The Plaintiffs all have the same fiscal intermediary, Cahaba Government Benefit Administrators.) Each Plaintiff filed timely administrative appeals of those audit adjustments with the Provider Reimbursement Review Board ("PRRB" or "Board").[4]  By decisions dated August 31, 2005 (Erwine's), September 1, 2005 (CHC), and September 27, 2005 (PHHC), the PRRB concluded that these adjustments were unlawful.[5]  On review, the Defendant Secretary's delegate, the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS"), reversed the

---

[1] Plaintiffs' Statement of Material Facts Not In Dispute ("Statement") at ¶¶ 1-3.  Citations to the record reflecting support for each of these factual assertions are contained in the Statement.

[2] Statement at ¶¶ 4-6.

[3] Statement at ¶¶ 7-12.

[4] Statement at ¶ 15.

[5] Statement at ¶ 16.  Copies of the PRRB's decisions in these administrative appeals are contained in the Administrative Record ("AR") at 31-34 (Erwine's), 1117-1121 (CHC), and 3732-3739 (PHHC).  It should be noted that the PRRB decided these appeals by "hearings on the record" – a procedure reserved for matters in which there are no factual disputes.

PRRB in decisions dated October 24, 2005 (Erwine's), October 24, 2005 (CHC), and

November 22, 20205 (PHHC).[6]

Having exhausted all available administrative remedies, Plaintiffs then filed a timely

complaint seeking judicial review of the agency's decisions.[7]

B.    Statutory And Regulatory Setting

1.    The Reasonable Cost Reimbursement Requirement

Title XVIII of the Social Security Act, otherwise known as the Medicare Act, establishes

several health insurance programs covering the aged and disabled.  42 U.S.C. § 1395 et seq.

Part A of the Medicare Act provides hospital insurance benefits, including "home health

services."  These particular services are designed for individuals confined to their homes, under

the care of physicians, and receiving services under plans of care established and periodically

reviewed by those physicians.  To qualify for home health services, these individuals must be in

need of skilled care on an intermittent basis or must require physical therapy ("PT") or speech-

language pathology or have a continuing need for occupational therapy.  42 U.S.C. §§

1395ff(a)(2)(C) and 1395x(m).

During the periods at issue here, the Medicare Act required payment for home health

services, including PT (whether provided directly by the home health agency or by others "under

arrangement" with the home health agency), at the lower of:  (1) the home health agency's cus-

tomary charges for the services; or (2) its reasonable cost for those services as determined under

42 U.S.C. §1395x(v).  42 U.S.C. §§ 1395f(b)(1) and 1395l(a)(2)(A)(i) and (ii) (1996).

---

[6] Statement at ¶ 17.  Copies of the CMS Deputy Administrator's decisions, which are the final administrative rulings in these cases, are contained in the AR at 2-12 (Erwine's), 1092-1102 (CHC), and 3703-3713 (PHHC).

[7] Statement at ¶¶ 18-19.

Historically, 42 U.S.C. § 1395x(v) has defined "reasonable cost" as "the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services" to "be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs." This standard is "intended to meet the actual costs, however widely they may vary from one institution to another, except where a particular institution's costs are found to be substantially out of line with those of institutions similar in size, scope of services, utilization, and other relevant factors." S. Rep. No. 404, 89th Cong., 1st Sess. (1965), reprinted in 1965 U.S.C.C.A.N. 1943, 1976. See also 42 C.F.R. §§ 413.9(c)(2)-(3).

These concepts are reiterated in the governing regulations. 42 C.F.R. § 413.9. See also 31 Fed. Reg. 14,808 at 14,816-17 (Nov. 22, 1966). Additionally, applicable regulations provide that "reasonable cost":

- includes all "necessary and proper" costs incurred in rendering services to Medicare beneficiaries;

- entails "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities"; and

- encompasses expenditures that "are usually costs which are common and accepted occurrences in the field of the provider's activities."

42 C.F.R. §§ 413.9(a) and (b)(2); 31 Fed. Reg. at 14,816-18.

Likewise, Medicare's Provider Reimbursement Manual, CMS Pub. 15, Part I ("PRM") incorporates these same criteria in its provisions.[8] See PRM, §§ 2100 and 2102.1. PRM,

---

[8] The manual provisions in the PRM are simply interpretive, rather than substantive, guidelines. They are not subject to notice and comment rulemaking under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., and, as such, are non-binding and do not have the force and effect of law. E.g., Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995).

§ 2102.1 also articulates the "expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or service."

Finally, it should be emphasized that the issue presented in this case is confined to periods during which home health agencies were paid on a retrospective, reasonable cost payment system. Effective for cost reporting periods beginning on and after October 1, 2000, Medicare converted to a prospective payment system ("PPS") for home health agencies. Under PPS, home health agencies' Medicare payment rates are calculated based upon data unrelated to individual providers' own costs or cost experience. See 42 U.S.C. § 1395fff(a). As such, the issue here is entirely historical in nature and has no implications for Plaintiffs' (or any other Medicare-certified home health agency's) cost reporting periods beginning on and after October 1, 2000.

2.     <u>The Salary Equivalency Guidelines</u>

The Social Security Amendments of 1972 authorized the Secretary to adopt regulations to limit the reasonable costs of providers for obtaining therapy services <u>from outside contractors</u> to the salaries that would have been incurred by these providers if such services had been furnished by employees. Pub. L. No. 92-603, 86 Stat. 1329. Specifically, Section 251(c) of those amendments enacted 42 U.S.C. § 1395x(v)(5)(A), which mandates in relevant part that:

> [W]here physical therapy services, occupational therapy services,
>
> speech therapy services, or other therapy services . . . are <u>furnished</u>
>
> <u>under an arrangement</u> with a provider of services . . . the amount
>
> included in any payment to such provider . . . as the reasonable
>
> cost of such services <u>(as furnished under such arrangements)</u> shall

> not exceed an amount equal to the salary which would reasonably
> have been paid for such services (together with any additional
> costs that would have been incurred by the provider . . .) to the
> person performing them <u>if they had been performed in an employ-
> ment relationship with such provider (rather than under such
> arrangement)</u> plus the cost of such other expenses . . . incurred by
> such person, as the Secretary may in regulations determine to be
> appropriate.  (Emphasis added.)

In 1975, the Secretary adopted regulations, now codified at 42 C.F.R. § 413.106, imple-
menting the authority to establish such salary equivalency limits on therapy costs related to the
use of outside contractors.  40 Fed. Reg. 5,760 (Feb. 7, 1975).  These regulations do not establish
specific salary equivalency limits for any type of therapy service.  Rather, they prescribe a pro-
cess by which salary equivalency guidelines ("Guidelines") may be established by the Secretary
for a particular type of therapy service.  For example, among other things, the regulations require
the Secretary to approve and provide advance notice of separate Guidelines for each type of
therapy service.  42 C.F.R. §§ 413.106(c)(1) and (5).  The regulations also require publication in
the <u>Federal Register</u> prior to the application of the Guidelines for a particular type of therapy
service.  <u>Id</u>. at § 413.105(d).

When the Secretary originally issued Guidelines for PT services, the preamble stated that
they were confined to "under arrangement" services by "outside contractors" rather than services
provided pursuant to employment relationships.  40 Fed. Reg. 5,760 (Feb. 7, 1975).  This
paralleled the language in 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106(a).  Similar
limiting language was reiterated when the agency revised the Guidelines.  <u>E.g.</u>, 48 Fed. Reg.

44,922 (Sept. 30, 1983) ("the guidelines do not apply to services furnished by employees of a hospital or other provider; the part [sic – should be "cost"] of these services will continue to be evaluated under the Medicare program's reasonable cost provisions").

In Transmittal No. 178 (June 1977), the agency amended PRM, § 1403 to include the following language:

> The guidelines apply only to the cost of services performed by outside suppliers, not to salaries of providers' employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationships, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.
>
> In situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

In 1998, the Secretary amended 42 C.F.R. § 413.106 to have it apply specifically to employment relationships in the same circumstances as enumerated in PRM, § 1403. See 63 Fed. Reg. 5106 (Jan. 30, 1998); 42 C.F.R. § 413.106(c)(5). The effective date of the regulatory change, however, was April 10, 1998 – well after the FYEs (December 31, 1995, December 31,

1996, December 31, 1997, June 30, 1995, and June 30, 1996) at issue here. <u>See</u> 63 Fed. Reg. 15,319 (Mar. 31, 1998).

3.    <u>The Medicare Claims and Appeals Process</u>

In administering the Medicare program, the Secretary contracts with outside organizations, such as the Blue Cross Association or other insurance companies, to perform certain audit, administrative, and payment functions with respect to providers of services. These organizations are known as "fiscal intermediaries" ("Intermediaries"). 42 U.S.C. § 1395h.

After the close of each fiscal year, a provider files a Medicare cost report with its Intermediary, which audits the cost report and issues a final determination of the provider's reimbursable costs of services furnished to program beneficiaries. This issuance is known as a "notice of program reimbursement." <u>See</u> 42 U.S.C. §§ 1395h and 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 405.1803(a)(1) and 413.20.

A provider that is dissatisfied with the Intermediary's determination of its reimbursable costs may appeal to the PRRB if the requisite jurisdictional amount is met. 42 U.S.C. § 1395oo(a). The decision of the PRRB is final unless the Secretary, acting through the CMS Deputy Administrator, reverses, affirms, or modifies the PRRB's decision within 60 days after provider notification of that decision. 42 U.S.C. § 1395oo(f)(1). A provider that disagrees with the final decision of the Board – or with subsequent agency actions as to that decision – may appeal to the United States District Court for the District of Columbia or to the United States District Court for the judicial district where the provider is located. 42 U.S.C. § 1395oo(f)(1).

C.    <u>Factual Synopsis</u>

The material facts in this case are both uncomplicated and undisputed.

During the periods at issue, the Plaintiffs employed full-time physical therapists to furnish PT services to their patients. These individuals were employees of the Plaintiffs and were treated as such. For example, they were entitled to and received employee benefits such as participation in pension and health benefits plans, were subjected to payroll withholdings for the employee share of the Federal Insurance Contributions Act ("FICA") and Medicare taxes, and had their worker's compensation insurance and employer's share of FICA and Medicare taxes paid by the Plaintiffs.[9]

The compensation for these physical therapists was determined by payments on a per-visit basis for their work.[10]

In the audits of Plaintiffs for these periods, the Intermediary subjected the entire compensation of the employed physical therapists to the PT Guidelines as if the therapists had been outside contractors furnishing such services under arrangement.[11] This resulted in reductions of Medicare reimbursement of approximately $10,700 to Erwine's for its FYE December 31, 1996, $7,198 to Erwine's for its FYE December 31, 1997, $10,346 to CHC for its FYE December 31, 1995, $45,230 to PHHC for its FYE June 30, 1995, and $71,026 to PHHC for its FYE June 30, 1996.[12] The use of the PT Guidelines was the only basis for these adjustments; there was no "prudent buyer" or "reasonable cost" analysis used for purposes of disallowing these sums as not reflecting reimbursable cost.[13]

---

[9] Statement at ¶¶ 4-6. In its decisions, the PRRB expressly found that there was an employment relationship and typically elaborated on the factors that reflected that relationship. AR at 32 (Erwine's), 1118 (CHC), and 3734 n.2 (PHHC).

[10] Id. The PRRB's decisions also described the compensation arrangements. AR at 32 (Erwine's), 1118 (CHC), and 3734 (PHHC).

[11] Statement at ¶¶ 7-11.

[12] Statement at ¶¶ 7-11 and nn.7-11. The figures are drawn from the PRRB's decisions and are projections rather than final determinations.

[13] Statement at ¶ 12.

III.    ISSUE

The sole issue in this case is whether it was lawful for the Intermediary to use the PT

Guidelines to disallow portions of the compensation paid by Plaintiffs to their employed physical

therapists.

IV.    JURISDICTION, VENUE, AND SCOPE OF REVIEW

The Court has jurisdiction of this case, and venue lies in this judicial district, pursuant to

42 U.S.C. § 1395oo(f)(1).[14]

Relevant provisions of the Medicare Act require this case to be adjudicated pursuant to

"the applicable provisions under chapter 7 of Title 5," the APA.  42 U.S.C. § 1395oo(f)(1).

Under 5 U.S.C. § 706, the APA specifies that the final agency decision must be set aside if it is

"arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C.

§ 706(2)(A).

Under this standard, an agency's interpretation of its own regulation is generally

accorded judicial deference <u>unless</u> the agency's interpretation is inconsistent with:

- the plain language of the regulation;

- other indications of the agency's intent at the time of its adoption; or

- the manifest intent of Congress.

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); United States v. Larinoff, 431

U.S. 864, 872-73 (1977).

The scope of review under the arbitrary and capricious standard requires a careful,

searching inquiry as to whether:

---

[14] See also Complaint at ¶¶ 8-9; Answer at ¶¶ 8-9.

> the agency has relied on factors which Congress has not intended it
> to consider, entirely failed to consider an important aspect of the
> problem, offered an explanation for its decision that runs counter
> to the evidence before the agency, or is so implausible that it could
> not be ascribed to a difference in view or the product of agency
> expertise.

Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm Mutual Automobile Insurance Company, 463 U.S. 29, 43 (1983).

In the case at bar, both parties agree that summary judgment is appropriate.  There are no genuine issues of material fact, and judgment may be entered as a matter of law.  F.R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970).

V.    SUMMARY OF ARGUMENT

There are numerous reasons why the agency's decisions in these appeals must be over-turned.  Any of these grounds, standing alone, would warrant reversal of those decisions.  Collectively, these factors (and the legal authorities that furnish overwhelming support for them) not only underscore why judgment must be rendered in Plaintiffs' favor, but also highlight why the Secretary's position lacks merit and is not substantially justified.

First, the Secretary claims that the agency may apply the PT Guidelines to employed physical therapists if any portion of their compensation is on a non-salary basis.  This argument contravenes the language of the statute (42 U.S.C. § 1395x(v)(5)(A)) and the language of the regulation as it existed during the periods at issue (42 C.F.R. § 413.106 [1997]).  Indeed, the courts confronted with this issue have consistently and unanimously ruled against the Secretary.

Second, the Secretary's "interpretation" of the statute as reflected in the amended regulation and in the manual provision cannot be used to justify the agency's decision in this case. The regulation, 42 C.F.R. § 413.106, was amended to incorporate the Secretary's position in 1998. That amendment occurred – and was effective – well after the cost years at issue here. Further, for the periods involved here, PRM, § 1403 is not legally binding and, in any event, conflicts with the language and plain meaning of the statute and applicable regulation.

Third, the Secretary's own actions belie his litigation position in this case. For example, the Secretary has ignored the fact that at least one Intermediary failed and/or refused to apply the Guidelines to situations involving employed physical therapists. Worse, the Secretary himself has chosen not to apply the Guidelines on a consistent or uniform basis. Indeed, the Secretary has opted not to apply the Guidelines in the manner he espouses here in significant areas of the country, including areas where there are no controlling federal appellate court or district court decisions on this issue.

Finally, neither the Secretary nor the Intermediary ever analyzed Plaintiffs' PT costs on a prudent buyer or reasonable cost basis to assess whether they were substantially out-of-line with comparable costs incurred by comparable providers for comparable services. The Guidelines do not serve this function and, in fact, relevant evidence suggests that the Guidelines applied here were substantially insufficient to function as a proxy for "reasonable cost."

VI.    ARGUMENT

A.    The Issue In This Case Has Been Extensively Litigated

At the outset and prior to Plaintiffs' furnishing their legal analysis, the Court should be aware that the issue posed here is hardly novel. For the past 18 years, administrative and judicial tribunals have grappled with this very issue. An exhaustive list of these cases, with the exception

of the decisions in the instant action, is catalogued below.  However, the upshot of these deci-

sions is that:  (1) the PRRB has consistently ruled in favor of Medicare providers on this issue;

(2) the agency has – with the exception of the two earliest cases – reversed the PRRB; (3) every

court that has decided the issue has ruled for the providers and against the Secretary; and (4) the

Secretary has settled or failed to pursue a number of these cases, including ones involving pro-

viders located in areas where there were no dispositive federal appellate or district court rulings

on the issue.

With the exception of the matter at bar, these cases – many of which will be discussed in

detail later – include:

- In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999), aff'g, Civ.

  No. 97-2598/RHK/FLN (D. Minn. June 11, 1998), reported in [1998-2

  Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 300,005, rev'g,

  Health Care Financing Administration ("HCFA") Admin. Dec. (Oct. 28,

  1997), reported in [1998-1 Transfer Binder] Medicare and Medicaid Guide

  (CCH) ¶ 45,942, on remand from, Civ. No. 3-94-1408/RHK/FLN (D.

  Minn. Mar. 5, 1992), reported in [1997-1 Transfer Binder] Medicare and

  Medicaid Guide (CCH) ¶ 45,129, vacating and remanding, HCFA Admin.

  Dec. (Apr. 29, 1996), reported in [1996-2 Transfer Binder] Medicare and

  Medicaid Guide (CCH) ¶ 44,595, rev'g, PRRB Dec. No. 96-D16 (Feb. 17,

  1996), reported in [1996-1 Transfer Binder] Medicare and Medicaid Guide

  (CCH) ¶ 44,065.[15]

---

[15] These decisions are included in reverse chronological order in the AR at 41-96.  HCFA was the predecessor to CMS.

- K&R Home Health Services, Inc. v. Thompson, No. Civ. S-00-2501/LKK/DAD (E.D. Cal. Nov. 9, 2001), rev'g, HCFA Admin. Dec. (Sept. 7, 2000) sub nom. All-Care Home Health Services v. Blue Cross and Blue Shield Ass'n, reported in [2001-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,621, rev'g, PRRB Dec. No. 2000-D63 (June 8, 2000), reported in [2000-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,509.[16]

- High Country Home Health, Inc. v. Shalala, 84 F. Supp.2d 1241 (D. Wy. 1999), rev'g, HCFA Admin. Dec. (May 20, 1997), reported in [1997-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 45,543, rev'g, PRRB Dec. No. 97-D35 (Mar. 19, 1997), reported in [1997-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 45,130.[17]

- AllCare Home Health, Inc. v. Thompson, C.A. No. 02-AP-25 (MJW) (D. Colo.) (July 19, 2002 settlement), resolving, HCFA Admin. Dec. (Nov. 14, 2001) sub nom. HHS/AllCare 93-94, 96 PT Group Appeal v. BlueCross BlueShield Ass'n, reported in [2002-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,785, rev'g, PRRB Dec. No.

---

[16] These decisions are included in reverse chronological order in the AR at 98-132. The AR is missing pages 11 and 14 of the Court's decision. The missing pages are attached hereto as Exhibit A and have been labeled AR 107a and 109a.

[17] These decisions are included in reverse chronological order in the AR at 134-159.

2001-D46 (Aug. 8, 2001), <u>reported in</u> [2001-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,738.[18]

- <u>Tip of Illinois Health Services, Inc. v. Leavitt</u>, Case No. 04-4200 JPG (S.D. Ill.) (Feb. 16, 2006 settlement), <u>resolving</u>, CMS Admin. Dec. (Aug. 3, 2004), <u>reported in</u> [2004-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,187, <u>rev'g</u>, PRRB Dec. No. 2004-D25 (June 9, 2004), <u>reported in</u> [2004-2 Transfer Binder] Medicare and Medicare Guide (CCH) ¶ 81,160.[19]

- <u>Berks Visiting Nurse Ass'n v. Leavitt</u>, Civil Action No. 04-CV-5567 (E.D. Pa.) (Oct. 19, 2005 settlement), <u>resolving</u>, CMS Admin. Dec. (Oct. 4, 2004), <u>reported in</u> [2005-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,271, <u>rev'g</u>, PRRB Dec. No. 2004-D34 (Aug. 13, 2004), <u>reported in</u> [2004-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,185.[20]

- 

---

[18] The settlement and decisions are included in reverse chronological order in the AR at 161-188.

[19] The settlement agreement in this case was executed after completion of the AR. A copy of the agreement is attached as Exhibit B. Copies of the Administrator's and PRRB's decisions are contained in the AR at 190-204.

[20] The settlement agreement in this case was executed after completion of the AR. A copy of the agreement is attached as Exhibit C. Likewise, the Deputy Administrator's decision was issued after completion of the AR. A copy of that decision is attached as Exhibit D. The PRRB's decision is contained in the AR at 206-209.

Visiting Nurse Ass'n of Washington, DC v. BlueCross BlueShield Ass'n,
PRRB Dec. No. 2006-D33 (Jul. 19, 2006), reported in Medicare and
Medicaid Guide (CCH) ¶ _____.[21]

- MGH Home Health v. BlueCross BlueShield Ass'n, CMS Admin. Dec.
  (July 11, 2006), reported in Medicare and Medicaid Guide (CCH)
  ¶ _____, rev'g, PRRB Dec. No. 2006-D25 (June 1, 2006), reported in
  Medicare and Medicaid Guide (CCH) ¶ 81,532.[22]

- The Medical Team v. BlueCross BlueShield Ass'n, CMS Admin. Dec.
  (Apr. 26, 2006), reported in Medicare and Medicaid Guide (CCH),
  ¶ 81,522, rev'g, PRRB Dec. No. 2006-D18 (Mar. 3, 2006), reported in,
  Medicare and Medicaid Guide (CCH) ¶ 81,504.[23]

- Professional Home Care, Inc. v. BlueCross BlueShield Ass'n, CMS
  Admin. Dec. (Jan. 13, 2006), reported in [2006-1 Transfer Binder]
  Medicare and Medicaid Guide (CCH) ¶ 81,466, rev'g, PRRB Dec. No.

---

[21] This decision was issued after completion of the AR and, at this writing, has not yet been reviewed by the CMS Administrator. A copy of the decision is attached as Exhibit E.

[22] These decisions were issued after completion of the AR. Copies of the decisions are attached as Exhibit F.

[23] These decisions were also issued after completion of the AR. Copies of the decisions are attached as Exhibit G. Plaintiffs understand that judicial review has been sought in this Court in The Medical Team case. Civil Action No. 1:06-cv-01139-HHK (D.D.C.).

2006-D6 (Nov. 18, 2005), <u>reported in</u> [2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH), ¶ 81,454.[24]

- <u>Health Care Options v. BlueCross BlueShield Ass'n</u>, PRRB Dec. No. 2005-D66 (Sept. 2, 2005).[25]

- <u>VNA Healthcare, Inc. v. BlueCross BlueShield Ass'n</u>, CMS Admin. Dec. (July 8, 2005), <u>reported in</u> [2006-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,433, <u>rev'g</u>, PRRB Dec. No. 2005-D37 (May 10, 2005), <u>reported in</u> [2005-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,351.[26]

- <u>Pocono Medical Home Care, Inc. v. BlueCross BlueShield Ass'n</u>, CMS Admin. Dec. (Sept. 10, 2004), <u>reported in</u> [2005-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,272, <u>rev'g</u>, PRRB Dec. No. 2004-D31 (July 16, 2004), <u>reported in</u> [2004-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 81,181.[27]

---

[24] These decisions were likewise issued after completion of the AR. Copies of the decisions are attached as Exhibit H. Plaintiffs understand that judicial review has been sought in this Court in the <u>Professional Home Care</u> case. Civil Action No. 1:06-cv-00512-RJL (D.D.C.).

[25] This decision, too, was issued after completion of the AR. A copy of the decision is attached as Exhibit I. Interestingly, the Board's decision is not published in the CCH Medicare and Medicaid Guide. Plaintiffs understand that the provider in this case reached an administrative resolution of the matter shortly after the PRRB's decision and, as a result, the CMS Administrator did not review the case.

[26] These decisions were issued after completion of the AR. Copies of the decisions are attached as Exhibit J.

[27] These decisions were issued after completion of the AR. Copies of the decisions are attached as Exhibit K.

- SNI Home Care, Inc. v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec. (Nov. 1, 2001), reported in [2003-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,973, rev'g, PRRB Dec. No. 2003-D11 (Dec. 20, 2002), reported in [2003-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,959.[28]

- Tulsa Home Health Services v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec. (Nov. 1, 2001), reported in [2002-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,781, rev'g, PRRB Dec. No. 2001-D44 (Aug. 3, 2001), reported in [2001-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,734.[29]

- VNA of Maryland, LLC v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec. (Oct. 9, 2001), reported in [2002-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,787, rev'g, PRRB Dec. No. 2001-D39 (Aug. 8, 2001, reported in [2001-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,729.[30]

- Capitol Home Health-Markville v. Blue Cross and Blue Shield Ass'n, HCFA Admin. Dec. (Oct. 28, 1999), reported in [2000-1 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 80,408, rev'g, PRRB Dec. No. 99-

---

[28] These decisions are included in the AR at 211-228.

[29] These decisions are included in the AR at 230-245.

[30] These decisions are included in the AR at 247-263.

D65 (Aug. 27, 1999), <u>reported in</u> [1999-2 Transfer Binder] Medicare and

Medicaid Guide (CCH) ¶ 80,330. [31]

- <u>Alma Nelson Manor v. Aetna Life Ins. Co.</u>, PRRB Dec. No. 90-D15

    (Feb. 26, 1990), <u>reported in</u> [1990 Transfer Binder] Medicare and

    Medicaid Guide (CCH) ¶ 38,429.  The PRRB's decision in favor of the

    provider was not reviewed by the Administrator.  The provider in this case

    was located in Illinois.[32]

- <u>Summit Nursing Home, Inc. v. Prudential Ins. Co.</u>, PRRB Dec. No. 88-

    D29 (Sept. 1, 1988), <u>reported in</u> [1989-1 Transfer Binder] Medicare and

    Medicaid Guide (CCH) ¶ 37,408.  The PRRB's decision in favor of the

    provider was not reviewed by the Administrator.  The provider in this case

    was located in New Jersey.[33]

B.    The Secretary's Position In This Case Has Been Consistently
       And Uniformly Rejected By The Courts

    The Secretary's position in this case is that the relevant statutory provision, 42 U.S.C.

§ 1395x(v)(5)(A), distinguishes between services furnished "under an arrangement" and services

provided through an "employee relationship."  The Secretary argues that this permits him to

apply the Guidelines not only to services "under arrangement" but also to services provided by

employees compensated on a non-salary basis (such as a per visit or commission basis).  The

---

[31] These decisions are included in the AR at 265-276.

[32] This decision is included in the AR at 278-283.

[33] This decision is included in the AR at 285-288.

Secretary claims that the plain language of the statute is either silent or ambiguous as to whether it may be applied to employees with non-salary compensation and that the Secretary's interpretation is reasonable and, thus, must be upheld.

The Secretary's position has been repeatedly and unanimously rejected by all of the federal courts that have examined it. In <u>In Home Health</u>, <u>supra</u>, the Eighth Circuit found that the plain meaning of 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 (as it existed prior to its amendment in 1998) distinguishes between services "under an arrangement" and services furnished by an individual in an "employment relationship" with the provider.[34] As such, the Eighth Circuit rejected the Secretary's effort to restrict employment relationships to only those involving salaried employees. 188 F.3d at 1046. The Court also ruled that the statutory allusion to "the salary which would reasonably have been paid" does not permit non-salaried employees to be subjected to the Guidelines. Rather, the term "salary" as used in the statute was simply generic for "remuneration." <u>Id</u>. Finally, the Court found that PRM, § 1406 could not be used to justify the Secretary's interpretation because the PRM is merely interpretive and not subject to APA rulemaking. <u>Id</u>. at 1047.

The district court's decision in <u>In Home Health</u>, affirmed by the Eighth Circuit, utilized similar reasoning with respect to the plain meaning of the Medicare statute. <u>In Home Health</u>, <u>supra</u>, [1998-2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 300,005; AR at 50-51. In reaching this result, the Court stressed that:

> The Secretary . . . cannot read out the dichotomy that
>
> §1395v(5)(A) [<u>sic</u> – should be 1395x(v)(5)(A)] creates between
>
> services performed by physical therapists "under an arrangement"

---

[34] The Court noted that the 1998 amendment of the regulation was inapplicable. 188 F.3d at 1044 n.4. As such, it did not have to rule on the legality of that amendment (<u>i.e.</u>, whether it exceeded the Secretary's statutory authority). Because the cost reporting periods at issue here antedated the amendment, the same concept applies in this case.

and those performed by a physical therapist in an employment

relationship with the provider.

Id.; AR at 51.

Likewise, the district court in <u>High Country Home Health</u>, <u>supra</u>, explicitly relied upon
and quoted from the Eighth Circuit's analysis in <u>In Home Health</u>.  84 F.Supp.2d at 1246-47.

The same conclusion was reached by the district court in <u>K&R Home Health Services</u>,
<u>supra</u>.  In that case, the Court held that 42 U.S.C. § 1395x(v)(5)(A) did not give the Secretary or
the Court authority to extend its restrictions to employees.  The Court also emphasized that,
regardless of the potential definitions of the word "salary" as used in the statute, the statute
clearly covers only non-employees.  The Court further rejected the Secretary's contention that
the application of the Guidelines could be justified pursuant to the Secretary's authority to define
and determine "reasonable cost."  The Court reasoned that neither the Guidelines nor the PRM
provision seeking to extend the application of the Guidelines was issued pursuant to the Secre-
tary's authority concerning "reasonable cost."[35]

In sum, four federal courts, including one federal appeals court and three district courts,
have considered the issue presented here.  All have rejected the Secretary's position.

C.    <u>The Secretary's Interpretation Is Inconsistent With His Own Actions</u>

The Secretary's interpretation of the statute is not entitled to any deference for an
additional reason.  He has failed to enforce that interpretation on a uniform basis and to pursue
appeals of court decisions adverse to his interpretation.  He has also settled at least three cases on
grounds that are inconsistent with his interpretation.  In particular, the Secretary:

---

[35] <u>K&R Home Health Services</u>, <u>supra</u> at 9-13 (AR at 106-109; Exhibit A).

(1)     did not pursue an appeal of the district court's decision in <u>High Country</u> to the Tenth Circuit, even though that Court had not previously ruled on the issue;

(2)     did not pursue an appeal of the district court's decision in <u>K&R Home Health Services</u> to the Ninth Circuit although that Court had not previously decided the issue;

(3)     settled the <u>All Care Home Health</u> case on terms contrary to his interpretation, despite the fact that neither the United States District Court for the District of Colorado nor the Tenth Circuit had previously resolved the issue;[36]

(4)     settled the <u>Berks Visiting Nurses Ass'n</u> case on terms inconsistent with his interpretation despite the fact that neither the United States District Court for the Eastern District of Pennsylvania nor the Third Circuit had earlier ruled on this issue;[37] and

(5)     settled the <u>Tip of Illinois</u> case on terms at odds with his interpretation even though neither the United States District Court for the Southern District of Illinois nor the Seventh Circuit had decided the issue previously.[38]

Further, the Secretary did not reverse PRRB decisions contrary to his interpretation in <u>Alma Nelson Manor</u> and <u>Summit Nursing Home</u>.[39]  And, uncontradicted evidence in the record reflects

---

[36] AR at 161-166.

[37] <u>See</u> Exhibit C.

[38] <u>See</u> Exhibit B.

[39] <u>See</u> AR at 278-283 and 285-288.  It should be noted that both of these PRRB decisions were rendered, and involved cost reporting periods occurring, well after the Secretary's June 1977 amendment of PRM, § 1403 to incorporate his interpretation.

that at least one Medicare fiscal intermediary was not enforcing the Guidelines in the manner in which the Secretary construes them.[40]

Thus, despite the fact that Medicare is a uniform, federal program, the Secretary has not applied his interpretation to providers in large segments of the country:

- Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota (the Eighth Circuit where In Home Health controls);

- Wyoming (where High Country is dispositive);

- the Eastern District of California (where K&R Home Health Services applies);

- Colorado (where All Care Home Health was settled);

- the Eastern District of Pennsylvania (where Berks Visiting Nurses Ass'n was settled); and

- the Southern District of Illinois (where Tip of Illinois was settled).

---

[40] See AR at 502-503 (letter from Aetna Life Insurance Company ["Aetna"] explaining that it applied the Guidelines only to non-employees, not to employees with non-salary compensation).

Additionally, the Secretary has not applied his interpretation to selected providers in Illinois (Alma Nelson Manor) and New Jersey (Summit Nursing Home) and, evidently, permitted at least one intermediary, Aetna, to ignore that interpretation as well.[41]

In short, the egregious inconsistency with which the Secretary has applied his interpretation not only undercuts the potential for any deference to it but also represents a blatant inconsistency lacking rationality and constituting arbitrary conduct.  E.g., Green Country Mobilephone, Inc. v. FCC, 765 F.2d 235, 237-38 (D.C. Cir. 1985); Illinois Bell Telephone Co. v. FCC, 740 F.2d 465, 470-71 (7th Cir. 1984).

> D.    There Has Been No "Reasonable Cost" Or "Prudent Buyer"
>        Analysis In This Case

Since the Secretary cannot justify his application of the Guidelines under 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods relevant to this case, his only remaining argument is that such application is warranted under the "reasonable cost" and "prudent buyer" concepts in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9.

This contention was squarely rejected in the K&R Home Health Services decision.[42]  In this respect, it is notable that, when the Secretary initially promulgated 42 C.F.R. § 413.106 in 1975, when he updated the Guidelines in 1983, when he amended the regulation in 1998 to reflect his interpretation, and when he amended PRM, § 1403 in 1977, the Secretary never invoked or referred to his authority under the "reasonable cost" provisions, relying instead on the statutory and regulatory provisions pertaining directly to the Guidelines.  See 40 Fed. Reg. 5,760

---

[41] During this time, Aetna was one of nine intermediaries nationally.  These intermediaries were assigned to service free-standing home health agencies on a regional basis, and Aetna's assigned areas included Arizona, Florida, and Nevada.  Thus, there is serious doubt whether home health agencies in these states were subjected to the Secretary's interpretation.

[42] K&R Home Health Services, supra, at 11-13 (AR at 108-109; Exhibit A).  The Eighth Circuit declined to reach this argument in In Home Health, finding that the plain meaning of 42 U.S.C. § 1395x(v)(5)(A) controlled.  188 F.3d at 1047 (AR at 45).  The Court in High Country did likewise.  84 F.Supp.2d at 1247 (AR at 140).

(Feb. 7, 1975); 48 Fed. Reg. 44,922 (Sept. 30, 1983); 63 Fed. Reg. at 5,125-26 (Jan. 30, 1998);

Transmittal No. 178 (June 1977).

Equally important, the PRRB specifically found in these cases that there had been no

prudent buyer or reasonable cost analysis.  AR at 34 (Erwine's), 1120-1121 (CHC), and 3733

(PHHC).  As such, there never has been a determination that the Plaintiff providers' disallowed

costs were unreasonable and substantially out of line with those of similarly situated providers.

Moreover, in any event, such an analysis would encounter at least one insuperable obstacle.

As the PRRB has indicated on several occasions, the Guidelines would not be an

acceptable proxy for "reasonable cost" or "prudent buyer" analyses.  Specifically, the Guidelines

applied here were based upon 1983 data updated annually for inflation.  When the Guidelines

were reissued in 1998 based on new data, they increased by about 50% over the limits that were

in effect only one year previously.  E.g., Berks Visiting Nurse Ass'n, supra; SNI Home Care,

supra (AR at 208-209 and 219).  In other words, the Guidelines consistently and chronically

underestimated compensation to therapists by about 3.2% annually during the 15 and a half years

they were in effect.  Clearly, the Guidelines were both an improper and insufficient substitute for

a reasonable cost analysis.

VII.    CONCLUSION

For the reasons explained above, this Court should grant Plaintiffs' motion for summary

judgment, deny Defendant's motion for summary judgment, reverse Defendant's October 24,

2005 (Erwine's), October 24, 2005 (CHC), and November 22, 2005 (PHHC) decisions in this

case, grant Plaintiffs their costs and interest in accordance with 42 U.S.C. § 1395oo(f)(2), and

allow Plaintiffs to apply for an award of attorneys' fees under 5 U.S.C. § 504. A proposed order

to that effect has been submitted with this brief.

Respectfully submitted,

_____/s/ Joel M. Hamme (with consent)_____
Joel M. Hamme (D.C. Bar 219170)
Larry S. Gondelman (D.C. Bar 950691)
POWERS, PYLES, SUTTER & VERVILLE, PC
1875 Eye Street, NW
12th Floor
Washington, DC 20006-5409
(202) 466-6550

Attorneys for Plaintiffs

Dated:  August 7, 2006

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on August 7, 2006, I electronically filed Plaintiffs' Brief In Support Of Plaintiffs' Motion For Summary Judgment and exhibits thereto with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to the following counsel for the Defendant:

       Megan Lindholm Rose, Esq. – <u>megan.rose@usdoj.gov</u>
       Alan Burch, Esq. – <u>alan.burch@usdoj.gov</u>.


                         /s/ Joel M. Hamme
                     Joel M. Hamme

<u>LIST OF EXHIBITS</u>

Exhibit A Pages Missing From Administrative Record As To The Court Decision In <u>K&R Home Health Services, Inc. v. Thompson</u>, No. Civ. S-00-2501/LKK/DAD (E.D. Cal. Nov. 9, 2001)

Exhibit B Settlement Agreement In <u>Tip of Illinois Health Services, Inc. v. Leavitt</u>, Case No. 04-4200 JPG (S.D. Ill.) (Feb. 16, 2006)

Exhibit C Settlement Agreement In <u>Berks Visiting Nurses Ass'n v. Leavitt</u>, Civil Action No. 04-CV-5567 (E.D. Pa.) (Oct. 19, 2005)

Exhibit D CMS Administrator Decision In <u>Berks Visiting Nurses Ass'n v. Blue Cross And Blue Shield Ass'n</u>

Exhibit E PRRB Decision In <u>Visiting Nurse Ass'n of Washington, DC v. BlueCross BlueShield Ass'n</u>

Exhibit F CMS Administrator and PRRB Decisions In <u>MGH Home Health v. BlueCross BlueShield Ass'n</u>

Exhibit G CMS Administrator and PRRB Decisions In <u>The Medical Team v. BlueCross BlueShield Ass'n</u>

Exhibit H CMS Administrator And PRRB Decisions In <u>Professional Home Care, Inc. v. BlueCross BlueShield Ass'n</u>

Exhibit I PRRB Decision In <u>Health Care Options v. BlueCross BlueShield Ass'n</u>

Exhibit J CMS Administrator And PRRB Decisions In <u>VNA Healthcare v. BlueCross BlueShield Ass'n</u>

Exhibit K CMS Administrator And PRRB Decisions In <u>Pocono Medical Home Care, Inc. v. BlueCross BlueShield Ass'n</u>