IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERWINE'S HOME HEALTH CARE, INC., COLORADO HOME CARE, INC., and POTOMAC HOME HEALTH CARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary, Department of Health and Human Services, <br><br> Defendant. | Civil Action No. 05-2441 (ESH) <br><br> Judge Ellen Segal Huvelle |

### EXHIBIT D TO PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

CMS-DEC, MED-GUIDE, ¶81,271, Berks Visiting Nurse Ass'n v. BlueCross and BlueShield Ass'n, *CMS Administrator Decision* (Cost reports ending 12/31/1995 and 12/31/1996), (Oct. 4, 2004)

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

Berks Visiting Nurse Ass'n v. BlueCross and BlueShield Ass'n

*CMS Administrator Decision* (Cost reports ending 12/31/1995 and 12/31/1996), Oct. 4, 2004.

Medicare: Physical Therapy Compensation Guidelines

**Provider reimbursement-allowable costs --Therapy services by outside suppliers --Fee-for-service employees. --**
The Provider Reimbursement Review Board (PRRB) improperly rejected the intermediary's adjustment applying the Medicare Physical Therapy Compensation Guidelines to employees of a home health agency who were paid for each service they performed rather than as salaried or hourly workers. The guidelines were developed to prevent abuses such as overcharging by providers who were reimbursed for therapy services on a fee-for-service basis. The same opportunities for abuse are present whenever employees are paid by the services rendered rather than on salary. The prudent buyer analysis does not require a different result, because fees that exceed the guidelines will usually exceed the fee paid by a prudent buyer.

See ¶5849D-2.30

The decision of the PRRB (see ¶81,185) was reversed.

[Text of Decision]

### CENTERS FOR MEDICARE AND MEDICAID SERVICES

*Decision of the Administrator*

In the case of: BERKS VISITING NURSE ASSOCIATION Provider vs. BLUE CROSS AND BLUE SHIELD ASSOCIATION/CAHABA GOVERNMENT BENEFIT ADMINISTRATORS Intermediary

Claim for: Provider Cost Reimbursement Determination of Reasonable Costs for Cost Reporting Period(s) Ending: 12/31/95 AND 12/31/96

Review of: PRRB Decision No. 2004-D34

This case is before the Administrator, Centers for Medicare and Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (the Board). The review is during the 60-day period in section 1878(f)(1) of the Social Security Act (the Act), as amended (42 U.S.C. §1395oo(f)). Comments were received from CMS' Center for Medicare Management (CMM) requesting reversal of the Board's decision. The parties were notified of the Administrator's intention to review the Board's decision. Accordingly, the case is now before the Administrator for review.

### ISSUE AND THE BOARD'S DECISION

The issue is whether the Intermediary's adjustment applying Medicare's Physical Therapy Compensation Guidelines to the Provider's employee physical therapists was proper.

The Board found that the Intermediary's application of the salary equivalency Guidelines to the Provider's costs was improper. The Board noted that there is no dispute in this case that the individual therapists at issue are "employees" of the Provider as opposed to outside contractors or suppliers. The Board also noted that language of the Act distinguished between services that are performed by employees of a provider and the services that are performed "under an arrangement." Therefore, the Board found that the Guidelines do not apply to employee

physical therapists that are paid on a fee-for-service basis. In addition, the Board found that the statute and regulation provide no legal basis for the application of the Guidelines to employee physical therapists. Both the legislative history and regulatory history of the Guidelines indicate that their purpose was to curtail and prevent perceived abuse in the practices of outside physical therapy contractors. The Board also noted that the term "under arrangement" is commonly referred to and used interchangeably with the term "outside contractor."

The Board found that the Guidelines should not be used in place of a prudent buyer analysis; rather, intermediaries should determine whether or not a provider's costs are "substantially out of line" by a comparison of those costs to those incurred by other similarly situated providers. The Board noted that in the instant case, the Intermediary did not perform a prudent buyer analysis.

Finally, the Board commented that the Guidelines applied to the Provider's cost reports were outdated because they were developed from 1983 data, and noted that the new 1998 guideline reimbursement rate represents a 49.8 percent increase over the rate that was in effect just one year earlier. Therefore the Board concluded that this supports the argument that the Guideline amounts were insufficient and should not be used as an established "prudent buyer" limit.

## SUMMARY OF COMMENTS

CMM commented, recommending reversal of the Board's decision. CMM argued that the Intermediary's application of the salary equivalency Guidelines to the Provider's physical therapists paid on a fee-for-service basis was appropriate based on the agency's authority to apply the Guidelines under sections 1861(v)(1)(A) and 1861(v)(5)(A) of the Act. CMM continues to maintain that the statute distinguishes between services furnished "under an arrangement" and those provided through a salaried "employee relationship" and therefore, the Provider's physical therapists, who were not salaried but paid on a per-visit basis, were subject to the Guidelines. Further, because the plain language of the statute is silent or ambiguous on the issue of whether the Guidelines should be applied to employees compensated on a per-visit basis, CMS's interpretation should be upheld because it is reasonable under section 1861(v)(5)(A) of the Act. CMM also noted that even if the Agency is not mandated under section 1861(v)(5)(A) of the Act to apply the Guidelines to bona fide therapist employees of the provider who are paid on a per-visit basis, the Agency has the authority under section 1861(v)(1)(A) of the Act to define reasonable cost and establish and apply cost limits to different provider costs and different classes of providers to determine that they are recognized as reasonable in determining Medicare program payments. CMM noted the similarities of the issues presented in this PRRB decision to those issues presented in Decision No. 2003-D11 where the Administrator, applied the substantially out-of-line standard, reversed the decision of the Board, and affirmed that the Intermediary properly adjusted the Provider's costs.

The Provider commented requesting that the Administrator affirm the Board's decision. The Provider stated that the Guidelines do not apply to therapists who are employees, regardless of how they are paid. The Provider contended that the plain meaning of the statute and the regulation is that physical therapists employed by a home health agency, paid on a per visit basis, are employees, not outside suppliers subject to the Physical Therapy Guidelines. In addition, the Provider contended that the Intermediary's position conflicts with the home health agency cost report instructions. The Provider also stated that its costs for physical therapy were reasonable, and the Intermediary offered no evidence to the contrary. In the alternative, the Provider argued that even if the Guidelines were applicable, they cannot be applied because they are arbitrary, capricious and contrary to law because they have not been updated. The Provider also argued that its Physical Therapy Employees cannot be reclassified to outside suppliers furnishing services "under arrangement" nor can the Intermediary apply Guidelines retroactively because that would be a violation of the Administrative Procedure and Medicare Acts.

## DISCUSSION AND EVALUATION

Since its inception in 1966, Medicare's reimbursement of health care providers was governed by section 1814(b)(1)[1] and §1861(v)(1)(A) of the Act. Section 1861(v)(1)(A) of the Act provides that:

> reasonable cost shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services,...
>
> In addition, the Secretary has been granted authority under section 1861(v)(1)(A) of the Act to establish:

limits on the direct and indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in the efficient delivery of needed health services to individuals covered by the insurance programs established under this title....

The Secretary has promulgated regulations at 42 C.F.R. §413.9 which provide that all payments to providers of services must be based on reasonable costs of services covered under Title XVIII of the Act and related to the care of beneficiaries. In addition, the Provider must meet the documentation requirements of both the Act and the regulations in order to demonstrate entitlement to reimbursement.[2]

Finally, the regulations at 42 C.F.R. §413.106(c)(5) states in part, "[u]ntil a guideline is issued for a specific therapy or discipline, costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service." *Id*. This regulation is implemented by section 1403 of the Provider Reimbursement Manual (PRM), which reads in part, "[u]ntil specific Guidelines are issued for the evaluation of the reasonable costs of other services furnished by outside suppliers, such costs will continue to be evaluated under the Medicare programs requirement that only reasonable costs be reimbursed." *Id*.

A limitation on payments for the reasonable cost of physical therapy services under arrangement was established by section 251(c) of the Social Security Amendments of 1972[3] and section 17(a) of the Social Security Amendments of 1973.[4] These amendments added section 1861(v)(5)(A) of the Act which provides that:

Where physical therapy services [and other therapy services] ... are furnished *under an arrangement* with a provider of services ..., the amount included in any payment to such provider ... as the reasonable cost of such services ... *shall not exceed an amount equal to the salary* which would reasonably have been paid for such services ... to the person performing them if they had been performed in an employment relationship with such provider ... incurred by such person, as the Secretary may in regulations determine to be appropriate. (Emphasis added.)

Section 1861(w)(1) of the Act provides that:

the term 'arrangements' is limited to arrangements under which receipt of payment by the ... home health agency ... (whether in its own right or as agent), with respect to services for which an individual is entitled to have payment made under this title, discharges the liability of such individual or any other person to pay for the services.

The Secretary implemented section 1861(v)(5)(A) through the promulgation of 42 C.F.R. §413.106, which defines the Guidelines as reflective of the "amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider ... had such services been performed by such person in an employment relationship." In turn, subsection (b) defines "prevailing salary" as:

the hourly salary rate based on the 75th percentile of salary ranges paid by providers in the geographical area, by type of therapy, to the therapists working full-time in an employment relationship.

Consequently, the Guidelines, as explained at 42 C.F.R. §413.106(b)(6), are the amounts published by the Secretary reflecting the application of section 413.106(b)(1) through (4) to an individual therapy service and a geographical area. Paragraph (c) of the regulation states that:

Under this provision, HCFA will establish criteria for use in determining the reasonable costs of physical ... therapy services ... furnished by individuals under arrangements with a provider of services.... It is recognized that providers have a wide variety of arrangements with such individuals. These individuals may be independent practitioners or employees of organizations furnishing various health care specialists. This provision does not require a change in the substance of these arrangements.

The Secretary's interpretation of the reasonable cost provision of section 1861(v)(1)(A), the provisions of section 1861(v)(5)(A) and the regulation at 42 C.F.R. §413.106 is set forth in section 1403 of the PRM. First promulgated in 1977, section 1403 of the PRM states, *inter alia*, that:

The Guidelines apply only to the costs of services performed by outside suppliers, not the *salaries of*

provider's employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationship, will be closely scrutinized to determine if *an employment situation is being used to circumvent the Guidelines*. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.

In situations where compensation, at least in part, is based on a fee-for-services or on a percentage of income (or commissions), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the Guidelines in this chapter.

The Administrator disagrees with the Board's analysis of the case and the relevant law and policy. The Administrator finds that, after a review of the controlling law, legislative history of the Act, and relevant Medicare policy, the Intermediary properly applied the Guidelines to the Provider's physical therapy compensation. Contrary to the Board's finding that the employment relationship between the Provider and the physical therapists determined whether the Guidelines should be applied, the Administrator finds that the fee-for-service compensation of the Provider's therapists was the controlling factor in the application of the limits in this case.

While the parties did not dispute that the individual therapists at issue were "employees" of the Provider, the Administrator disagrees with the Board's assertion that they are exempt from the physical therapy Guidelines. Rather, the Administrator notes that the Secretary is not bound by the Internal Revenue Service (IRS) provisions in determining Medicare reimbursement. The Administrator notes that these physical therapists may be employees under the IRS code but where compensation, at least in part, is based on fee-for-service, these payments are treated as nonsalaried payments under section 1403 of the PRM and nonemployment relationships for Medicare reimbursement purposes.

The compensation of the physical therapists in this case are based solely on a fee-for service, and therefore must be treated as "nonsalaried arrangements." The employment payment schemes for physical therapy services appear to be outside of a standard employment arrangement with the Provider and thus create the same opportunities for abuses as more traditionally defined contractor relationships. Consequently, wages paid on a fee-for-service or commissioned basis are governed by the Guidelines for purposes of Medicare reimbursement. The Administrator finds that section 1861(v)(1)(A) of the Act authorizes the Secretary to determine reasonable costs and to implement limits on costs. That the Secretary has chosen to apply the Guidelines to the cost of employee compensation on a fee-for-service basis is not inconsistent with that authority. The law is well established that section 1861(v)(1)(A) of the Act gives the Secretary "broad discretion" to determine what are reasonable costs.[5] The Administrator finds that the application of the Guidelines under these facts is a reasonable exercise of that discretion.

Moreover, with respect to the Secretary's authority to apply the Guidelines under these circumstances under the authority granted pursuant to section 1861(v)(5)(A) of the Act, the Administrator finds it significant that the plain language of section 1861(v)(5)(A) of the Act does not limit the application of the Guidelines only to non-employees or outside contractors. As evident from the foregoing statutory language, the phrase "under an arrangement" is not defined in the Act by reference to a legal employment situation under the IRS code, but rather, is defined in broad terms as where receipt of Medicare payment by a provider discharges the liability of the beneficiary to pay for such services. Although the language of section 1861(v)(5)(A) clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms and, thus, does not specifically exclude employment situations.

In addition, both the language of the statute and the legislative history of the Act support the conclusion that Congress was concerned with limiting costs associated with fee-for-service arrangements such as those in this case. In drafting the language of section 1861(v)(5)(A), Congress chose to refer to the form of compensation, "salary," rather than the form of the legal relationship between provider and therapist to establish the standard for determining the applicable limits. Thus, this limit is established based on salary compensation, i.e., a fixed compensation which is periodically paid to a person for regular work or service.

Moreover, the legislative history clearly reflects that Congress expected this limit (salary-based) would be applied to fee-for-service arrangements, as Congress was concerned about the cost implications of therapy provided under fee-for-service arrangements, as opposed to salary-based compensation.[6] Thus, rather than focusing on the exact nature of the legal relationship between the provider and the therapists, Congress focused on the form of compensation to the therapist, viewing fee-for-service arrangements as the most

likely area for uncontrolled costs and potential abuse.

Consequently, the statutory language of section 1861(v)(5)(A) and its legislative history all indicate that Congress did not contemplate all possible forms of fee-for-service arrangements and, thus, did not contemplate fee-for-service arrangements within the context of a formal employment relationship. However, it is equally evident that the purpose of enacting section 1861(v)(5)(A) of the Act was to place limits on physical therapy fee-for-service compensation costs. Because of the ambiguity of the language at section 1861(v)(5)(A), the Secretary's interpretation of the statute is entitled to considerable deference as long as it is reasonable.[7] The Administrator finds that the Secretary's interpretation of the Act, to consider the phrase "under arrangement" to include those employment situations where payment is on a per-visit or per-unit basis, is reasonable based on the ambiguous language of the statute, the clear congressional intent to control costs and abuses by limiting fee-for-service compensation, and the Secretary's concern about the possibility of providers circumventing that intent through what would appear to be employment relationships.

The language of section 1403 of the PRM specifically addresses two types of "employment" situations, i.e., 1) the "newly salaried" employees which the Secretary closely scrutinizes to make sure that an "employment situation is not being used to circumvent the Guidelines," and 2) the "fee-for-service" compensated employees, which the Secretary treats as "nonsalary arrangements." As noted above, the Secretary's treatment of the latter situation, as a nonsalary arrangement, reflects the agency's assumption that such a compensation arrangement is subject to the same possible abuses that arise in the situation of the use of an outside contractor. Section 1403 of the PRM is therefore CMS's attempt to further congressional efforts to prevent such abuses, whether they arise through a clear outside contractor situation or through a hybrid employment/contractor situation, as in this case.

As reflected at section 1403 of the PRM, the Secretary believed that either way, the possibility of abusing the program for greater reimbursement was the same, and could reasonably be prevented using the same imposed compensation limits. Contrary to the Board's opinion, the fact that the therapists are employees of the Provider is not the significant factor in this case. To base the decision of whether the Guidelines apply simply by examining the form of the employment relationship, rather than by exploring its substance, would facilitate the types of program abuses which Congress was trying to prevent in its adoption of section 1861(v)(5)(A) of the Act.

Consistent with the above, the Administrator notes that the Secretary has amended her regulations, reiterating the long-standing policy of treating fee-for-service therapist services as "under arrangement" situations. The 1998 amendments to the regulation at 42 C.F.R. §413.106(c)(5) provide that:

> If therapy services are performed in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service or on a percentage of income (or commission), the Guidelines will apply. The entire compensation will be subject to the Guidelines in cases where the nature of the arrangements is most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The intent of this section is to prevent an employment relationship from being used to circumvent the Guidelines.

The Secretary explained in the preamble to the proposed rule of the above regulation at 42 C.F.R. §413.106(c)(5) that:

> We are proposing to revise section 413.106(c) to add a new paragraph (c)(6) that would provide that salary equivalency Guidelines will apply in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service or on a percentage of income (or commission). The entire compensation would be subject to the Guidelines in cases where the nature of the arrangements are most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The Guidelines would be applied in this situation so that an employment relationship is not being used to circumvent the Guidelines.

> Since June 1977, there has been longstanding governing policy at section 1403 of the Provider Reimbursement Manual, Guideline Application, regarding this issue for making payments to providers.... This instruction clearly requires the intermediary to apply the salary equivalency Guidelines in cases where the provider is paying the physical therapists on a fee-for-service basis. This instruction considered the nature of those arrangements and that they are most like an under "arrangement" situation, although technically they are employees. Therefore, the instructions further the statutory purpose as reflected in the

legislative history of the salary equivalency Guidelines. This instruction addresses the fact that HCFA recognizes that certain employment relationships would effectively circumvent the Guidelines and provided for these circumstances in section 1403 of the Provider Reimbursement Manual.[8]

The Administrator finds that the foregoing regulatory language reflects a clarification in regulation of longstanding Medicare interpretative policy. Section 1403 of the PRM interprets and clarifies existing legislation and regulatory instruction regarding the Guidelines' applicability to physical therapist compensation paid under arrangements. Moreover, in this case, as discussed above, the policy of applying the Guidelines to fee-for-service arrangements has been in section 1403 of the PRM since 1977.

The Administrator notes that Congress did not specify, when adding section 1861(v)(5)(A), the primary or secondary sources of the data used to develop the Guidelines, nor did it specify how often the Guidelines were required to be updated or rebased. Instead, the Act delegated to the Secretary the discretion to determine the appropriate Guidelines pursuant to the promulgation of regulations. However, consistent with the Act, the Senate Committee on Finance stated that:

> To the extent feasible, timely and accurate, salary data complied by the Bureau of Labor Statistics would be used in determining the 75th percentile level of salaries in the area. S.Rep. No. 92-1230, 92nd. Cong. 2nd Sess. 251 (1972).

The Secretary provided for the published guideline amount to be adjusted upward and "updated" by a factor equal to .6 percent for each lapsed month between October 1, 1982 and the beginning month of the provider's cost reporting period.[9] Congress did not specify how often the Guidelines were required to be rebased. Significantly, there is no regulatory requirement that the Guidelines be rebased at a particular time or updated by a specified increase or decrease in the base figure. Therefore, the Secretary is not bound to a yearly update or rebasing schedule.

Further, the Secretary noted, that there were limited data sources with which to develop salary rates and other expense factors. The Medicare cost reports and claims data do not provide data on rates paid to therapists and other relevant expense and net revenue data. Therefore, the salary rates and the effects of the revised Guidelines were based on "the best available data from HCFA sources and the therapy industry."[10]

The Board found that the Intermediary failed to prove that the costs for its employee physical therapists are substantially out of line with physical therapy costs paid by similar home health agencies. However, the regulation at 42 C.F.R. §413.106(c)(5) provides that these costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service. The Administrator notes that the Provider's physical therapy costs exceeded the Guidelines. The Secretary has determined that in such circumstances the Provider's rate per visit was not what a prudent and cost conscious buyer would pay for the given service. However, rather than an irrebuttable presumption of unreasonableness, the Secretary in fact allows Providers to demonstrate that they are entitled to exceptions to the application of the Guidelines under certain circumstances.

Finally, the Administrator notes that the Court of Appeals for the Eighth Circuit holding in *In Home Health*,[11] is not controlling in this case. The Provider is not located in a State which comprises the Eighth Circuit.

## DECISION

The Board's decision is reversed. The Intermediary properly applied the Salary Equivalency Guidelines to the Provider's physical therapy compensation.

THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF SECRETARY OF HEALTH AND HUMAN SERVICES

Date: 10/14/04

[1] 42 U.S.C §1395f(b)(1).

[2] Section 1815 of the Act (42 U.S.C. §1395g); 42 C.F.R. §413.20; 42 C.F.R. §413.24.

[3] Pub. Law 92-603.

[4] Pub. Law 93-233.

[5] See, e.g., Good Samaritan Hospital v. Shalala, 508 U.S. 402, 411, 419 (1993); Mt. Diablo County Hosp. v. Bowen, 811 F.2d 38, 343 (7th Cir. 1987) (section 1861 (v)(1)(A) gives the Secretary wide latitude in prescribing regulations governing the process of determining reasonable costs). In Good Samaritan, the Supreme Court noted that section 1861(v)(1)(A) "explicitly delegates to the Secretary the authority to develop regulatory methods for the estimation of reasonable costs," 508 U.S. at 418, and likened this authority to the "exceptionally broad authority" that congress bestowed upon the Secretary in other areas of the Social Security Act. Id. Pursuant to this authority, the Secretary has promulgated regulations establishing cost limits, see 42 CFR 413.30, and has provided that the cost limits may be calculated on a "per admission, per discharge, per diem, per visit, or other basis," Id. At 413.30(a)(2) (emphasis added).

[6] S. Rep. No. 92-1230, 92nd Cong., 2nd. Sess. 52(1972) (provision will "limit reimbursement for physical and other therapist to a reasonable salary related basis rather than a fee-for-services basis."); H. Rep. No. 992-231. 92nd Cong. 1st Sess. 110 (1971) ("Committee bill includes ... provisions for controlling program expenditures for therapy services ... and for preventing abuse"); S. Rep. No. 93-533, 93rd Cong. 1st Sess. 68 (1973) ("the cost that would have been occurred if payment had been on a reasonable salary-related basis rather than on a fee-for-service").

[7] See Chevron U.S.A., Inc. v. National Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). Where a statute is silent or ambiguous on the issue in question, the interpretation of the agency charged with administering the statute is entitled to deference as long as it is a reasonable one.

[8] 62 Fed. Reg. 14851, 14871 (Mar. 28, 1997)(proposed rule); see also 63 Fed. Reg. 5106, 5126 (January 1, 1998)(final rule).

[9] 48 Fed. Reg. 44922,44924,44928; see also PRM-1, Section 1499, Exhibit A-8.

[10] 62 Fed. Reg. 14851, 14871 (Mar. 28, 1997)(proposed rule); see also 63 Fed. Reg. 5106, 5126 (January 1, 1998)(final rule).

[11] See In Home Health, Inc. v. Shalala, 1999 U.S. App. Lexis 20878 (June 14, 1999).

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company