IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ERWINE'S HOME HEALTH CARE, INC., COLORADO HOME CARE, INC., and POTOMAC HOME HEALTH CARE, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 05-2441 (ESH) |
| v. | ) ) | Judge Ellen Segal Huvelle |
| MICHAEL O. LEAVITT, Secretary, Department of Health and Human Services, | ) ) ) | |
| Defendant. | ) ) ) | |

**EXHIBIT F TO PLAINTIFFS'
BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# CENTERS FOR MEDICARE AND MEDICAID SERVICES

## Decision of the Administrator

| | |
|---|---|
| In the case of: | Claim for: |
| MGH HOME HEALTH | Reimbursement Determination for Cost Reporting Periods ending: 06/30/96 and 06/30/97 |
| Provider | |
| vs. | |
| BLUE CROSS BLUE SHIELD ASSN/ CAHABA GOVERNMENT BENEIT ADMINISTRATORS | Review of: PRRB Dec. No. 2006-D25 Dated: June 1, 2006 |
| Intermediary | |

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in §1878(f)(1) of the Social Security Act. The parties were notified of the Administrator's intent to review Issue No. 1 of the Board's decision. Subsequently, comments on Issue No. 1 were received from the Provider and CMS' Center for Medicare Management (CMM). Accordingly, this decision is now before the Administrator for final agency review.

## ISSUE NO. 1 AND BOARD'S DECISION

Issue No. 1 involves whether the Intermediary's application of salary equivalency guidelines to the compensation of physical therapists employed by the Provider on a per visit basis was improper.[1]

The Board, reversing the Intermediary's adjustments, held that the Intermediary's improperly applied the Guidelines to the Provider's physical therapists paid on a

---

[1] Issue No. 2 involved whether the Intermediary's adjustment for fiscal year (FY) 1996 to include charity care home health visits in the calculation of the Provider's program reimbursement was proper. The Board held that the Intermediary's adjustment was proper. The Administrator summarily affirms Issue No. 2.

per-visit basis. The Board found that the Provider employed physical therapists to whom it paid a lump sum for each patient visit. The Board noted that the statute at §1861(v)(1)(A) [42 U.S.C. 1395(v)(1)(A)] distinguishes services performed by employee therapists from services performed by outside contractors" under an arrangement" with a provider. The Board also noted that the term under an arrangement is commonly referred to and used interchangeably with the term" outside contractor." In this case, the Board found that, although the Provider's physical therapists were paid on a fee-for-service, i.e., per visit basis, the therapists were employees of the Provider. Thus, the Guidelines do not apply.

For support that the salary equivalency guidelines do not apply, the Board cited, In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999), and High Country Home Health, Inc., v. Shalala, 84 F. Supp. 2d 1241 (D. Wy. 1999), wherein each of those courts found that the salary equivalency Guidelines do not apply to the situation put forward in the instant appeal. The Board also found that the guidelines alone cannot be used to adjust the provider's costs in accordance with Medicare prudent buyer principles, but, rather, 42 C.F.R. §413.9 indicates that intermediaries must determine whether or not a provider's costs are" substantially out of line" or are unreasonable based upon a comparison of those costs to those incurred by other similarly situated providers.

Finally, the Board found that the amendment to the regulations at 42 C.F.R. §413.106(c)(5), which applies the guidelines to therapists costs where compensation is based, at least in part on a fee-for-service basis, does not apply to the instant case. The amendment was published on January 30, 1998, and is effective for services furnished on or after April 1, 1998, which is after the subject cost reporting period.

## SUMMARY OF COMMENTS

The Provider commented requesting affirmation of the Board's decision. The Provider referred to its reasoning as set forth in its position paper before the Board.

CMM commented, requesting reversal of the Board's decision. CMM noted that this issue was a subject of several Administrator decisions. CMM, incorporating its comments in a prior case, SNI Home Care, Inc., PRRB Dec. No. 2003-D11 argued that the Intermediary's application of the Guidelines to the Provider's physical therapists paid on a fee-for-service basis was appropriate based on the CMS' authority to apply the guidelines under sections 1861(v)(1)(A) and 1861(v)(5)(A) of the Act. CMM maintained that the statute distinguishes between services furnished under an arrangement and those provided through a "salaried employee relationship" and therefore, the Provider's physical therapists, which were not salaried but paid on a per-visit basis, were subject to the Guidelines. Because the

plain language of the statute is silent or ambiguous on the issue of whether the Guidelines should be applied to employees compensated on a per-visit basis, CMS' interpretation should be upheld because it is reasonable under §1861(v)(5)(A) of the Act. CMM also noted that even if CMS is not mandated under statute to apply the Guidelines to therapist employees of a provider who are paid on a per-visit basis, CMS has the authority under statute to define reasonable cost and establish and apply cost limits to different provider costs and different classes of providers to determine whether such costs are reasonable in determining Medicare program payments.

## DISCUSSION

The entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments are included in the record and have been considered.

Since the inception of the Medicare program in 1966, reimbursement of providers has been governed by §§1814(b)(1) and 1861(v)(1)(A) of the Act. Section 1861(v)(1)(A) of the Act provides:

> Reasonable costs shall be the costs actually incurred, excluding, there from, any part of incurred costs found to be unnecessary in the efficient delivery of needed health care....

In addition, the Secretary has been granted authority over §1861(v)(1)(A) of the Act to establish:

> Limits on direct and indirect overall incurred costs, or incurred costs of specific items, or services, or groups of items or services to be recognized as reasonable, based on estimates of the costs, necessary in the efficient delivery of needed health services to individuals covered by the health insurance program established under this title....

The Secretary has promulgated regulations at 42 C.F.R. §413.9, which provides that all payments to providers must be based on reasonable cost of services covered under Title XVIII of the Act and related to the care of beneficiaries. In addition, the Provider must meet the documentation requirements of both the Act and the regulations in order to demonstrate entitlement to reimbursement.[2]

Further, the regulations at 42 C.F.R. §413.106(c) (5) states in part: "[u]ntil a

---

[2] Section 1851 of the Act [42 USC 1395g]; 42 CFR 413.20; 42 CFR 413.24.

guideline is issued for a specific therapy or discipline, costs are evaluated so that…costs do not exceed what a prudent and cost conspicuous buyer would pay for the given service." Id. This regulation is implemented by section 1403 of the Provider Reimbursement Manual (PRM), which reads in part, "[u]ntil specific guidelines are issued for the evaluation of reasonable costs of other services furnished by outside suppliers such costs will continued to be evaluated under Medicare program's requirement that only reasonable costs be reimbursed." Id.

A limitation on payment for reasonable costs of physical therapy services "under arrangement" was established by §251(c) of the Social Security Amendments of 1972[3] and §17(a) of the Social Security Amendments of 1973.[4] These amendments added §1861(v) (5) (A), which provides that:

> Where physical therapy services and other therapy services are furnished <u>under an arrangement</u> with a provider of services…, the amount included in any payment to such provider…as the reasonable cost of such services…shall not exceed an amount equal to the salary which would reasonably had been paid for such services…to the person performing them, if they had been performed in an employment relationship with such provider…incurred by such person, as the secretary may, in regulation, determine to be appropriate. (Emphasis added.)

Section 1861(w) (1) of the Act provides that:

> [T]he term "arrangement" is limited to arrangement under which receipt of payment by the home health agency {whether in its own right or as an adjustment} with respect to services for which an individual is entitled to have payment made under this Title discharges the liability for such individuals or any other person to pay for the services.

The Secretary implemented §1861(v)(5)(A) through the promulgation of 42 C.F.R. §413.106, which defines the guidelines as reflective of the "amount equivalent to the prevailing salary and additional costs that would have been incurred by the provider…had such services been performed by such person in an employment relationship." In turn, subsection (b) of this regulation defines "prevailing salary" as:

---

[3] Pub. Law 92-603.

[4] Pub. Law 93-233.

> The hourly salary rate based on the 75th percentile of salary ranges paid by providers in the geographical area, by type of therapy, to the therapists working full-time in an employment relationship.

Consequently, the guidelines, as explained, at §413.106(b)(6) are the amounts published by the Secretary, reflecting the application of §413.106(b)(1) through (4) to an individual therapy service and geographical area. Paragraph (c) of this regulation states that:

> Under this provision, [CMS] will establish criteria for use in determining the reasonable costs of physical ... therapy services ... furnished by individuals under arrangements with a provider of services.... It is recognized that providers have a wide variety of arrangements with such individuals. These individuals may be independent practitioners or employees of organizations furnishing various health care specialists. This provision does not require a change in the substance of these arrangements.

The Secretary's interpretation of reasonable cost provisions of §§1861(v)(1)(A), 1861(v)(5)(A) and the regulations at 42 C.F.R. §413.106 are set forth in §1403 of the PRM. First promulgated in 1977, §1403 of the PRM states, inter alia, that:

> The guidelines apply only to the costs of services performed by outside suppliers, not the salaries of provider employees, however, the cost of the services of the salaried employees who was formerly an outside supplier of therapy or other services, or any other new salaried employment relationship, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.

> In situation where compensation, at least in part, is based on a fee for service basis, or on a percentage of income, {commission}, these arrangements will be considered non-salaried arrangements, and the entire compensation will be subject to the guidelines.... (Emphasis added.)

The Administrator disagrees with the Board's analysis of the case and the relevant law and policy. The Administrator finds that, after review of the controlling law, legislative history of the Act, and relevant Medicare policy, the Intermediary properly applied the Guidelines to the provider's physical therapy compensation. Contrary to the Board's finding that an employment relationship between the

provider and the physical therapists determines whether the Guidelines should be applied, the Administrator finds that the fee-for-service basis for payment of the provider's therapists was the controlling factor in the application of the limits in this case.

First, in this case, the Board found that the Provider "employed" physical therapists. If the physical therapists were in fact employees, the Board asserted that that the physical therapists were exempt from the physical therapy Guidelines. However, the Administrator notes that the Secretary is not bound by the Internal Revenue Services (IRS) provisions in determining Medicare reimbursement. The Administrator notes that these physical therapists may be employees under the IRS Code but where compensation, at least in part, is based on a fee-for-service, these payments are treated as non-salaried payments under §1403 of the PRM, and non-employment relationships for Medicare reimbursement purposes.

In this situation, the payment arrangements for physical therapists are similar to non-salaried personnel. The employment payment schemes for physical therapy services appear to be outside of a standard employment arrangement with the Provider and thus create the same opportunities for abuses as more traditionally defined contractor relationships. Consequently, wages paid on a fee-for-service or commission basis are governed by the Guidelines for purposes of Medicare reimbursement. The Administrator finds that §1861(v)(1)(A) of the Act authorizes the Secretary to determine reasonable costs and to implement limits on costs. The Secretary's choice to apply the Guidelines to the cost of employee compensation on a fee-for-service basis is not inconsistent with that authority. The law is well established that §1861(v)(1)(A) of the Act gives the Secretary "broad discretion" to determine what are reasonable costs.[5] The Administrator finds that the application of the Guidelines under these facts is a reasonable exercise of that discretion.

---

[5] See, Good Samaritan Hospital v. Shalala, 508 U.S. 402, 411, 419 (1993); Mt. Diablo Hospital v. Bowen, 811 F.2d 38, 343 (7th Cir. 1987) (§1861(v)(1)(A) gives the Secretary wide latitude in proscribing regulations governing the process of reasonable costs. In Good Samaritan, the Supreme Court noted that §1861(v)(1)(A) of the Act, "explicitly delegates to the Secretary, the authority to develop regulatory methods for estimation of reasonable costs." 508 U.S. at 418, and likened this authority to the "exceptionally broad authority" that Congress bestowed on the Secretary in other areas of the Social Security Act. Pursuant to this authority, the Secretary promulgated regulations establishing cost limits, see 42 C.F.R. §413.30, and has provided that the cost limits may be calculated on a "per admission", "per discharge", "per diem", "per visit" or other basis," Id. at 413.30(a)(2), (Emphasis added.)

Moreover, with respect to the Secretary's authority to apply the Guidelines, in these circumstances, under the authority granted pursuant §1861(v)(5)(A) of the Act, the Administrator finds it significant that the plain language of §1861(v)(5)(A) does not specifically limit the application of the Guidelines only to non-employees or outside contractors. As evident from the foregoing statutory language, the phrase, "under an arrangement" is not defined in the Act by reference to a legal employment situation under the IRS Code, but rather, is defined in broad terms as where receipt of Medicare payment by a provider discharges the liability of the beneficiary to pay for such services. Although, the language of §1861(v)(5)(A) clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms and, thus, does not specifically exclude employment relationships.

In addition, both the language of the statute and its legislative history of the Act support the conclusion that Congress was concerned with limiting costs associated with fee-for-service arrangements, such as those in this case. In drafting language of §1861(v)(5)(A), Congress chose to refer to the form of compensation "salary," rather than the form of legal relationship between provider and therapist to establish a standard for determining applicable limits. Thus, this limit is established, based on salary compensation, i.e., a fixed compensation, which is periodically paid to a person for regular work or service.

Moreover, the legislative history clearly reflects that Congress expected this limit (salary-based) would be applied to fee-for-service arrangements, as Congress was concerned about the cost implications of therapy provided under fee-for-service arrangements, as opposed to salary-based compensation.[6] Thus, rather than focusing on the exact nature of the legal relationship between the provider and the therapists, Congress focused on the form of compensation to the therapists, viewing fee-for-service arrangements as the most likely area for uncontrolled costs and potential abuse.

Consequently, the statutory language of §1861(v)(5)(A) and its legislative history indicate that Congress did not contemplate all possible forms of fee-for-service arrangements, and, thus, did not contemplate fee-for-service arrangements within

---

[6] S. Rep. No. 92-1230, 92nd Cong., 2nd Sess. 52 (1972) (provision will "limit reimbursement for physical and other therapists to a reasonable salary related basis rather than a fee for service basis".); H. Rep. No. 992-231, 92nd Cong., 1st Sess. 110 (1971) ("Committee bill includes…provisions for controlling program expenditures for therapy services … and for preventing abuse"); S. Rep. No. 93-533, 93rd Cong., 1st Sess. 68 (1973) ("the cost that would have been incurred if payment had been on a reasonable salary-related basis rather than on a fee-for-service").

the context of a formal employment relationship. It is equally evident that the purpose of enacting §1861(v)(5)(A) of the Act was to place limits on physical therapy fee-for-service compensation costs. Because of the ambiguity of the language at §1861(v)(5)(A), the Secretary's interpretation of the statute is entitled to considerable deference as long as it is reasonable.[7] The Administrator finds that the Secretary's interpretation of the Act, to consider the phrase "under arrangement" to include those employment situations where payment is on a per-visit or per-unit basis, is reasonable based on the ambiguous language of the statute, the clear congressional intent to control costs and abuses by limiting fee-for-service compensation, and the Secretary's concern about the possibility of providers circumventing that intent through what would appear to be employment relationships.

The language of §1403 of the PRM specifically addresses two types of "employment" situations, i.e., (1) the "newly salaried" employees which the Secretary closely scrutinizes to make sure that an "employment situation is not being used to circumvent the guidelines," and, (2) the "fee-for-service" compensated employee which the Secretary treats as "non-salary arrangement." As noted above, the Secretary's treatment of the latter situation as a non-salary arrangement reflects the CMS' assumption that such a compensation arrangement is subject to the same possible abuses that arise in the situation of the use of an outside contractor. Section 1403 of the PRM is therefore CMS' attempt to further congressional efforts to prevent such abuses, whether they arise through a clear outside contractor situation, or through a hybrid employment/contractor situation, as in this case.

As reflected at § 1403 of the PRM, the Secretary believes that either way, the possibility of abusing the Medicare program for greater reimbursement is the same, and could reasonably be prevented by using the same imposed compensation limits. Contrary to the Board's decision, whether the therapists are employees of the provider, or receive benefits from the Provider which employees typically receive, are not the significant factors in this case. To base the decision of whether the Guidelines apply simply by examining the form of employment relationship, rather than by exploring its substance, would facilitate the types of program abuses which Congress was trying to prevent in its adoption of §1861(v)(5)(A) of the Act.

Consistent with, the above, the Administrator finds that the Secretary has amended the regulations, reiterating the longstanding Medicare policy of treating fee-for-

---

[7] See, Chevron, U.S.A., Inc., v. National Resources Defense Council, Inc., 467 U.S. 837, 842-843 (1984) (Where a statute is silent or ambiguous on the issue in question, the interpretation of the agency charged with administering the statute is entitled to deference as long as it is a reasonable one.)

service therapist services as "under arrangement" situations. The 1998 amendment to the regulations at 42 C.F.R. §413.106(c)(5) provides:

> If therapy services are performed in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service, or on a percentage of income (or commission), the guidelines will apply. The entire compensation will be subject to the guidelines in cases where the nature of the arrangement is most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The intent of this section is to prevent an employment situation from being used to circumvent the guidelines.

The Secretary explained in the preamble to the proposed rule of the above regulation at 42 C.F.R. §413.106(c)(5) that:

> We are proposing to revise §413.106(c) to add a new paragraph (c)(6) that would provide that the salary equivalency guidelines will apply in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service, or on a percentage of income (or commission). The entire compensation would be subject to the guidelines in cases where the nature of the arrangements are most like an under "arrangement" situation, although technically the provider may treat the therapist as employees. The guidelines would be applied in this situation so that employment relationships are not being used to circumvent the guidelines.

> Since June 1977, there has been longstanding governing policy at §1403 of the Provider Reimbursement Manual, Guideline Application, regarding this issue for making payments to providers.... This instruction clearly requires the intermediary to apply the salary equivalency guidelines in cases where the provider is paying the physical therapists on a fee-for-service basis. This instruction considered the nature of those arrangements and that they are most like an under "arrangement" situation, although technically they are employees. Therefore, the instructions further the statutory purpose as reflected in the legislative history of the salary equivalency guidelines. This instruction addresses the fact that [CMS] recognizes that certain employment relationships would

effectively circumvent the guidelines, and provided for these circumstances in §1403 of the Provider Reimbursement Manual.[8]

The Administrator finds that the foregoing language reflects a clarification in the regulation of longstanding Medicare interpretive policy. Section 1403 of the PRM interprets and clarifies existing legislation and regulatory instruction regarding the Guidelines' applicability to physical therapist compensation paid under arrangement. Moreover, in this case, as discussed above, the policy of applying the guidelines to fee-for-service arrangements has been in section 1403 of the PRM since 1977.

Further, the Board found that the Intermediary failed to prove that the costs for its employee physical therapists are substantially out of line with physical therapy costs paid by similar home health agencies.    However, the regulation at §413.106(c)(5) provides that these costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service. The Administrator notes that the Provider's physical therapy costs exceeded the Guidelines.    The Secretary has determined that in such circumstances the Provider's rate per visit was not what a prudent and cost conscious buyer would pay for the given services.    However, rather than an irrebuttable presumption of unreasonableness, the Secretary in fact allows providers to demonstrate that they are entitled to exceptions to the application of the guidelines under certain circumstances. The Provider did not request an exception in this case.

Finally, the Administrator notes the Board's reliance on the Court of Appeals for the Eighth Circuit holding in the case of <u>In Home Health</u> and the District Court decision of <u>High Country Home Health</u>.    These cases are not controlling in this case because the Provider is not located in a state, which is comprised in the Eighth Circuit or under the jurisdiction of that District Court.

---

[8] 62 Fed. Reg. 14851, 14871 (Mar. 28, 1997) (proposed); <u>see</u> <u>also</u> 63 Fed. Reg. 5106, 5126 (January 1, 1998) (final rule).

## DECISION

The Administrator reverses the Board's decision on Issue No. 1 consistent with the foregoing opinion. The Administrator summarily affirms the Board on Issue No. 2.


**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES.**


Date: 7/11/06

Leslie V. Norwalk, Esq.
Deputy Administrator
Centers for Medicare & Medicaid Services

**PRRB-DEC, MED-GUIDE ¶81,532, MGH Home Health (Olney, Md.) v. BlueCross BlueShield Association /Cahaba Government Benefits Administrators, (June 1, 2006)**

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**MGH Home Health (Olney, Md.) v. BlueCross BlueShield Association /Cahaba Government Benefits Administrators**

*PRRB Hearing* Dec. No. 2006-D25, Case No. 01-1397, 01-1398 (cost reporting periods ending 06/30/96 and 06/30/97), June 1, 2006.

### Medicare: Salary Equivalency Guidelines

**Medicare Part A --Physical, speech, and occupational therapy --Salary equivalency guidelines. --**

Although an intermediary improperly applied salary equivalency guidelines to employee physical therapists paid on a per-visit basis, the intermediary's inclusion of charity care home visits in the calculation of the provider's program reimbursement was proper. The provider employed physical therapists who were paid based upon the number of home care visits they performed. After the intermediary reviewed the provider's cost reports, the intermediary applied salary equivalency guidelines to the amounts paid to the physical therapists, reducing the provider's program reimbursement. However, salary equivalency guidelines apply only to physical therapists who are outside contractors and not to employee physical therapists. Additionally, because visits did not need to be billed or billable in order to be deemed a visit, the provider was required to include charity care home visits in its total visit statistics.

See

¶1475.74

### [Text of Decision]

*ISSUE*:

1. Whether the Intermediary's application of Medicare's physical therapy guidelines to physical therapists paid on a per-visit basis was proper. (Applies to both cost reporting periods at issue --case numbers 01-1397 and 01-1398.)

2. Whether the Intermediary's adjustment to include charity care home health visits in the calculation of the Provider's program reimbursement was proper. (Applies only to the Provider's fiscal year 1996 cost reporting period --case number 01-1397.)

*MEDICARE STATUTORY AND REGULATORY BACKGROUND*:

This is a dispute over the amount of Medicare reimbursement due a health care provider.

The Medicare program provides health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with the program's administration. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due providers under Medicare law and interpretative guidelines published by CMS. *See*, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the NPR. 42 U.S.C. §1395oo; 42 C.F.R. §405.1835.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY :

MGH Home Health (Provider) is a free-standing home health agency located in Olney, Maryland. During its Medicare cost reporting periods ended June 30, 1996 and June 30, 1997, the Provider employed physical therapists who were paid based upon the number of home care visits they performed, i.e., they were paid on a "per-visit" basis. Cahaba Government Benefit Administrators (Intermediary) reviewed the Provider's cost reports for each of these periods and applied Medicare's reasonable compensation guidelines (limits) to the cost of these physical therapists, which reduced the Provider's program reimbursement.

With respect to this matter, 42 U.S.C §1395x(v)(1)(A) of the Social Security Act (Act) provides that the reasonable cost of any service shall be the actual cost incurred excluding any part of such costs found to be unnecessary in the efficient delivery of needed health services. The statute also authorizes the Secretary of DHHS to establish cost limits. Essentially, the limits recognize reasonable costs based upon estimates of costs found to be necessary in the efficient delivery of covered items and services.

Regarding therapy costs, 42 U.S.C §1395x(v)(5)(A) states:

[w]here physical therapy services, occupational therapy services, speech therapy services, or other therapy services or services of other health-related personnel (other than physicians) are furnished under an arrangement with a provider of services or other organization, ... the amount included in any payment to such provider or other organization under this subchapter as the reasonable cost of such services (as furnished under such arrangements) shall not exceed an amount equal to the salary which would reasonably have been paid for such services ... to the person performing them if they had been performed in an employment relationship with such provider or other organization (rather than under such arrangement) plus the cost of such other expenses ... incurred by such person, as the Secretary may in regulations determine to be appropriate.

The implementing regulation at 42 C.F.R. §413.106 states:

(a) *Principle.* The reasonable cost of the services of physical, occupational, speech, and other therapists, and services of other health specialists (other than physicians), furnished under arrangements (as defined in section 1861(w) of the Act) with a provider of services, a clinic, a rehabilitation agency or a public health agency, may not exceed an amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider or other organization had such services been performed by such person in an employment relationship, plus the cost of other reasonable expenses incurred by such person in furnishing services under such arrangement. However, if the services of a therapist are required on a limited part-time basis, or to perform intermittent services, payment may be made on the basis of a reasonable rate per unit of service, even though this rate may be greater per unit of time than salary-related amounts, if the greater payment is, in the aggregate, less than the amount that would have been paid had the therapist been employed on a full-time or regular part-time salaried basis.

With regard to the second issue, during the cost reporting period ended June 30, 1996, the Provider furnished 115 charity care home health visits that it excluded from the calculation of its Medicare reimbursable costs, i.e., it excluded these visits from "total visits" shown on Worksheet S-3 of its Medicare cost report. The Intermediary, however, made an adjustment to include the charity care visits in the Provider's total visit count, which served to reduce the Provider's program reimbursement. During this period the Provider was essentially reimbursed based upon a "cost per visit" determined through the Medicare cost report process. The Provider's direct and indirect costs were statistically grouped to determine a total cost for each discipline of service the Provider furnished, e.g., skilled nursing care, physical therapy, and speech therapy. Each discipline's total cost was then divided by the total number of visits made for that service (i.e., the total of both Medicare and other or non-Medicare patient visits) to determine a cost per visit per discipline. The Provider's costs per visit were then multiplied by the number

of Medicare visits made in each discipline to apportion costs to the Medicare program (determine program reimbursement). Accordingly, an increase to the Provider's total visits decreased its cost per visit and, correspondingly, its Medicare reimbursement.

The Provider appealed the Intermediary's adjustments to the Board pursuant to 42 C.F.R. §§405.1835-405.1841 and met the jurisdictional requirements of those regulations. The amount of Medicare funds in controversy is approximately $34,900 ($25,900 resulting from the Intermediary's adjustment to the Provider's physical therapy costs in 1996 and 1997, and $9,000 resulting from the Intermediary's adjustment to charity care visits in 1996).[1]

The Provider was represented by Carel T. Hedlund, Esq., of Ober, Kaler, Grimes & Shriver. The Intermediary was represented by Bernard M. Talbert, Esq., Associate Counsel, Blue Cross Blue Shield Association.

## PARTIES' CONTENTIONS :

### Issue No. 1. Application of Medicare's Reasonable Compensation Guidelines to Employee Physical Therapists

The Provider contends that the controlling statute and regulations apply the guidelines to the cost of therapy services performed "under arrangement," which are services performed by "outside contractors," not bona fide employees as in the instant case.[2] To the extent that Medicare's Provider Reimbursement Manual, Part I (HCFA Pub. 15-1) §1403 treats employees paid on a fee-for-service basis as nonsalaried arrangements, it is inconsistent with the statute and regulations and is therefore invalid. Also, it is clear that HCFA Pub. 15-1 §1403 is intended to prevent employment relationships from being used to circumvent the guidelines. However, paying therapists on a per-visit basis was prompted by an Internal Revenue Service (IRS) effort to identify employees misclassified as independent contractors. The Provider refers to Private Letter Ruling 9208012 in which the IRS determined certain health care professionals, including therapists, to be employees of a home health agency rather than independent contractors.[3] The Provider also cites In Home Health, Inc. v. Shalala, Civ. No. 97-2598 [1998-2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶300,005 (D. Minn. June 6, 1998), affm'd, In Home Health, Inc. v. Shalala, No. 98-3141 [1999-2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶300,326 (8th Cir. Sept. 1, 1999) and, High Country Home Health v. Shalala, Case No. 97-CV-1036-J, [2000-1 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶300,411 (D. Wyo. Dec. 20, 1999), upholding the Board's decisions that neither the statute nor regulations provide a basis for applying the guidelines to employed physical therapists.

The Provider contends that had the Intermediary compared the cost of its physical therapists with the costs incurred by other similarly situated providers, the Intermediary would have determined that none of the Provider's physical therapy costs were "substantially out of line" in accordance with Medicare's prudent buyer principle. 42 C.F.R. §413.9(c)(2).

And finally, the Provider states that 42 C.F.R. §413.106(c) was amended effective April 1, 1998, to include physical therapists paid based upon a fee-for-service within the scope of the regulation. However, the Provider also explains that this revision was made after the subject cost reporting periods and can not be applied retroactively to support the Intermediary's adjustments.

The Intermediary contends that its application of HCFA Pub. 15-1 §1403 to the Provider's employee physical therapists is, in effect, an application of Medicare's prudent buyer principle. This position is supported by both CMS and the Blue Cross Blue Shield Association (Exhibits I-5 and I-6) and 42 C.F.R. §413.106(c)(5), which states "[u]ntil a guideline is issued for a specific therapy or discipline, costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service."[4]

The Intermediary contends that therapists paid on a per-visit basis are subject to the guidelines pursuant to HCFA Pub. 15-1 §1403, which states "[i]n situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter." The Intermediary notes that this provision recognizes that certain salaried employment relationships could be used to circumvent the guidelines.

Also, the Intermediary contends that the April 1, 1998 amendment to 42 C.F.R. §413.106(c), which brought

physical therapists paid on a fee-for-service basis within the scope of the guidelines, was not a substantive change in Medicare policy. Rather, the Intermediary asserts that the regulation was changed based upon the long-standing policy contained in HCFA Pub. 15-1 §1403.

### Issue No. 2. Charity Care Home Visits

The Provider contends that section 218.1 of the Medicare Home Health Agency Manual defines a home health visit as an "episode of personal contact with the patient by staff of the HHA ... for the purpose of providing a covered home health service." Moreover, the Provider asserts that section 218.3 of the manual adds that the encounter must be "billable" to be a visit. Accordingly, the Provider concludes that charity visits are not "visits" for Medicare purposes since they are not billable, and are, therefore, properly excluded from the total visit count.[5]

The Intermediary contends that the decision of whether or not a visit should be included in the Medicare cost report cost-finding process is not based on a patient's ability to pay but is based on whether or not the visit is the same type that would be covered by Medicare, i.e., a "like-kind visit".[6] If a visit is not of like-kind, the cost of the service should be reported in a non-reimbursable cost center. With respect to the instant case, the cost of the non-reimbursable charity care visits has been included in the Provider's cost report. Therefore, the appropriate method of excluding these costs from Medicare reimbursement is to include the charity care visits in total visits and allow the cost per visit to calculate appropriately.

The Intermediary cites Medicare's cost report instructions at HCFA Pub. 15-1 §3205, which state in part:

> [i]n preparing the cost report, recognize only the costs associated with Medicare-type like-kind visits in reimbursable cost centers. Medicare like-kind visits generally fall under the definition of Medicare visits ... In counting like-kind visits, it is critical that non-Medicare visits are of the same type as those that would be covered by Medicare. This insures that costs of services are comparable across insurers and the providers are reimbursed equitably for home health services provided.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION :

The Board, after consideration of Medicare law and guidelines, parties' contentions, and the evidence presented, finds and concludes as follows:

### Issue No. 1. Physical Therapist Costs

The Provider employed physical therapists which it paid a lump sum for each patient visit performed. The Intermediary applied the salary equivalency guidelines contained in HCFA Pub. 15-1 §1400 to the therapists' compensation, thereby reducing the Provider's allowable program costs and reimbursement.

The Intermediary contends that applying the guidelines to the Provider's costs is appropriate pursuant to HCFA Pub. 15-1 §1403, which states:

> [i]n situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

In addition, the Intermediary contends that application of the guidelines to employee physical therapist costs is appropriate pursuant to Medicare's prudent buyer principles. The Intermediary asserts that the fact the Provider's costs exceed the guidelines indicates that they are substantially out of line with the costs incurred by other providers and are, therefore, unreasonable.

The Board finds, however, that the Intermediary's application of the guidelines to the Provider's costs is improper. 42 U.S.C. §1395x(v)(5)(A), the controlling statute, distinguishes services performed by employee therapists from services performed by outside contractors "under an arrangement" with a provider. Both the legislative history and regulatory history of the guidelines indicate that they were created to prevent perceived abuse in the practices of outside physical therapy contractors as opposed to provider employees. Moreover, the Board notes that the term "under an arrangement" is commonly referred to and used interchangeably with the term "outside contractor." Accordingly, the Board finds the guidelines do not apply to employee physical therapists

even though they are paid on a fee-for-service basis.

As noted in previous cases, the Board cites to *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999) and *High Country Home Health, Inc. v. Shalala*, 84 F. Supp. 2d 1241 (D. Wy. 1999), finding, in part:

> 42 U.S.C. §1395x(v)(5)(A) does not provide a basis for the application of the Guidelines to In Homes' employee physical therapists. The first part of the sentence in 42 U.S.C. §1395x(v)(5)(A) explains that the subsection applies to persons providing physical therapy services "under an arrangement" with a provider. The second part of the sentence explains that the reasonable cost of compensation for the persons "under an arrangement" is calculated by reference to the salary which would have reasonably been paid to the person if that person had been in an "employment relationship" with the provider. The plain meaning of 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413.106, which uses similar language, distinguishes between services provided "under an arrangement" and those provided by a person in an "employment relationship." It is clear from the language that a physical therapist who is "under an arrangement" is different from a person in an "employment relationship" with the provider. The Guidelines apply to a person "under an arrangement." The final notice in the Federal Register indicates that a person "under an arrangement" is an outside contractor. The Secretary's attempt to now further limit the term "employment relationship" to mean only salaried employees is not supported by the statute or the Secretary's contemporaneous interpretation as reflected in the 1992 regulation.... Thus, the statute requires nothing more than that a provider should be reimbursed for the services performed by a nonemployee, i.e., an outside contractor working under an arrangement with the provider, similarly to what an employer reasonably would pay its employee for such services. Services provided by a provider's employee are themselves subject to a reasonableness requirement. See 42 U.S.C. §1395x(v)(1).... We affirm the district court's reversal of the Secretary's decision and hold that the secretary may not apply the Guidelines to In Home's employee physical therapists.

The Board also finds that the guidelines alone can not be used to adjust a provider's costs in accordance with Medicare's prudent buyer principle. Rather, 42 C.F.R. §413.9 indicates that intermediaries must determine whether or not a provider's costs are "substantially out of line" or are unreasonable based upon a comparison of those costs to those incurred by other similarly situated providers.

And finally, the Board finds that the amendment made to 42 C.F.R. §413.106(c)(5), which applies the guidelines to therapist costs where compensation was based, at least in part on a fee-for-service, does not apply to the instant case. The amendment was published on January 30, 1998, and effective for services furnished on or after April 1, 1998, which is after the subject cost reporting periods.[7]

### Issue No. 2. Charity Care Home Visits

The Provider furnished 115 charity care visits which it excluded form its Medicare cost report and the calculation of its cost per visit (per discipline of service) used to determine Medicare reimbursement. The Provider concluded that the charity visits should be excluded because no "billable service" was performed. In reaching this conclusion, the Provider relied upon section 218.3 of Medicare's Home Health Agency Manual, which discusses "evaluation visits." Essentially, the Provider equated the manual's instruction excluding evaluation visits from the cost report (i.e., visits in which no individual or third party payer would be billed) to mean that non-billable visits in general should be excluded.

The Board, however, disagrees. 42 C.F.R. §409.48(c), which defines an HHA visit, does not require an episode of personal contact with a patient to be billed/billable in order to be deemed a visit. Rather, the regulation only requires that the reason for the episode be for the purpose of providing a covered service. Notably, the Provider does not dispute that the subject visits were performed to furnish a covered service, but only that they did not bill for them.

Having concluded that the program recognizes visits even though no billing was made for the services, 42 C.F.R. §413.53(a)(3) requires that they be included in the Provider's total visit statistics within the Medicare cost report. In pertinent part, the regulation states:

> *Cost per visit by type-of-service method --HHAs.* For cost reporting periods beginning on or after October 1, 1980, all HHAs must use the cost per visit by type-of-service method of apportioning costs between Medicare and non-Medicare beneficiaries. Under this method, the total allowable cost of all visits for each

type of service is divided by the *total number of visits* for that type of service. (Emphasis added).

Application of these rules in the instant case is essentially the same as the Board's findings in *Maxicare, Inc. v. Blue Cross Blue Shield Association/Palmetto Government Benefit Administrators*, PRRB Dec. No. 2000-D55, May 30, 2000, *decl'd rev.*, CMS Admin., July 18, 2000 (*Maxicare*). In *Maxicare*, program payments for home health visits were denied because the visits were performed outside of a physician's plan of treatment. Nonetheless, the Board found that "visits" were performed according to the definition at 42 C.F.R. §409.48(c), and that they must be included in the provider's total visit statistics according to 42 C.F.R. §413.53(a)(3) quoted above.

In conclusion, the Board finds that excluding the charity care visits from the Provider's total visit statistics would improperly shift the non-reimbursable costs of the charity care visits to the Medicare program.

## DECISION AND ORDER :

### Issue No. 1. Physical Therapist Costs

The Intermediary's application of Medicare's salary equivalency guidelines to the compensation of physical therapists employed by the Provider but paid on a per-visit basis was improper. The Intermediary's adjustments are reversed.

### Issue No. 2. Charity Care Home Visits

The Intermediary's adjustment which included the Provider's charity care home health visits in the calculation of the Provider's program reimbursement was proper. The Intermediary's adjustment is affirmed.

### Board Members Participating :

Suzanne Cochran, Esq.

Dr. Gary B. Blodgett

Elaine Crews Powell, C.P.A

### FOR THE BOARD :

**JUN 01 2006**

[1] Provider's Position Papers at 2.

[2] Provider's Position Papers at 9. Exhibit P-5.

[3] *Id*. Exhibit P-18.

[4] Intermediary Position Papers at 4.

[5] Provider Position Paper, Case No. 01-1397, at 19 and 20.

[6] Intermediary Position Paper, Case No. 01-1397, at 9.

[7] Exhibit P-15.

---

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company