IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERWINE'S HOME HEALTH CARE, INC., COLORADO HOME CARE, INC., and POTOMAC HOME HEALTH CARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL O. LEAVITT, Secretary, Department of Health and Human Services, <br><br> Defendant. | Civil Action No. 05-2441 (ESH) <br><br> Judge Ellen Segal Huvelle |

**EXHIBIT G TO PLAINTIFFS'**
**BRIEF IN SUPPORT OF THEIR**
**MOTION FOR SUMMARY JUDGMENT**

CMS-DEC, MED-GUIDE ¶81,522, The Medical Team v. Blue Cross and Blue Shield Association/Cahaba Government Benefit Administrators, (April 26, 2006)

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

The Medical Team v. Blue Cross and Blue Shield Association/Cahaba Government Benefit Administrators

*CMS Administrator Decision,* April 26, 2006.

Medicare: Salary Guidelines for Therapists

Cost reports --Reasonable cost of therapy --Fee-for-service employees. --

The Intermediary's adjustment applying the Medicare Physical Therapy Compensation Guidelines to the costs of physical therapy performed by employees of the provider who were paid for each service, rather than on an hourly or salaried basis, was proper, and the PRRB's reversal of the Intermediary's action was incorrect. Soc. Sec. Act §1861(v)(5)(A) gives the Secretary authority to develop and apply the guidelines to services provided "under an arrangement" with the provider. The statute does not limit the Secretary's authority to nonemployees or outside contractors. The *Medicare Provider Reimbursement Manual*, Pub. 15-1, §1403, requires intermediaries to apply the guidelines whenever the therapist's compensation is based, at least in part, on a fee-for-service, whether or not the therapist is an employee of the provider under the Internal Revenue Code. The manual provision is an appropriate exercise of the Secretary's authority and reflects the intent of Congress, as expressed in the legislative history, to eliminate excessive charges based on fee-for-service.

See

¶5849D-2.30

The decision of the PRRB (see ¶81,504) was reversed.

[Text of Decision]

**CENTERS FOR MEDICARE & MEDICAID SERVICES**

*Decision of the Administrator*

In the case of: THE MEDICAL TEAM Provider vs. BLUE CROSS AND BLUE SHIELD ASSOCIATION/CAHABA GOVERNMENT BENEFIT ADMINISTRATORS Intermediary

Claim for: Determination of Reimbursable Costs for Cost Reporting Periods Ending 3/31/96, 3/31/97

Review of: PRRB Decision No. 2006-D18

Date: March 3, 2006

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the decision of the Provider Reimbursement Review Board (Board). The review is during the 60-day period in section 1878(f)(1) of the Social Security Act (Act), as amended (42 USC 1395oo(f)). The CMS' Centers for Medicare Management (CMM) submitted comments requesting reversal of the Board's decision. The parties were notified of the Administrator's intention to review the Board's decision. Accordingly, this case is now before the Administrator for final administrative decision.

## ISSUE AND BOARD'S DECISION

The issue is whether the Intermediary's adjustment applying Medicare's Physical Therapy Compensation Guidelines (the Guidelines) to the Provider's employee physical therapists was proper.

The Board reversed the Intermediary's adjustment, holding that the Guidelines do not apply to employee physical therapists. The Board found that the Provider employed physical therapists to whom it paid a lump sum for each patient visit. The Board noted that the statute at §1861(v)(1)(A) [42 U.S.C. 1395(v)(1)(A)] distinguishes services performed by employee therapists from services performed by outside contractors" under an arrangement" with a provider. The Board also noted that the term under an arrangement is commonly referred to and used interchangeably with the term" outside contractor." In this case, the Board found that, although the Provider's physical therapists were paid on a fee-for-service, i.e., per visit basis, the therapists were employees of the Provider. Thus, the Guidelines do not apply.

For support that the salary equivalency guidelines do not apply, the Board cited, *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999), and *High Country Home Health, Inc., v. Shalala*, 84 F. Supp. 2d 1241 (D. Wy. 1999), wherein each of those courts found that the salary equivalency Guidelines do not apply to the situation put forward in the instant appeal. The Board also found that the guidelines alone cannot be used to adjust the provider's costs in accordance with Medicare prudent buyer principles, but, rather, 42 C.F.R. §413.9 indicates that intermediaries must determine whether or not a provider's costs are" substantially out of line" or are unreasonable based upon a comparison of those costs to those incurred by other similarly situated providers.

## SUMMARY OF COMMENTS

CMM commented, requesting reversal of the Board's decision. CMM noted that this issue was a subject of several Administrator decisions. CMM, incorporating its comments in a prior case, *SNI Home Care, Inc.*, PRRB Dec. no. 2003-D11 argued that the Intermediary's application of the Guidelines to the Provider's physical therapists paid on a fee-for-service basis was appropriate based on the CMS' authority to apply the guidelines under sections 1861(v)(1)(A) and 1861(v)(5)(A) of the Act. CMM maintained that the statute distinguishes between services furnished under an arrangement and those provided through a "salaried employee relationship" and therefore, the Provider's physical therapists, which were not salaried but paid on a per-visit basis, were subject to the Guidelines. Because the plain language of the statute is silent or ambiguous on the issue of whether the Guidelines should be applied to employees compensated on a per-visit basis, CMS' interpretation should be upheld because it is reasonable under §1861(v)(5)(A) of the Act. CMM also noted that even if CMS is not mandated under statute to apply the Guidelines to therapist employees of a provider who are paid on a per-visit basis, CMS has the authority under statute to define reasonable cost and establish and apply cost limits to different provider costs and different classes of providers to determine whether such costs are reasonable in determining Medicare program payments.

## DISCUSSION

The entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments are included in the record and have been considered.

Since the inception of the Medicare program in 1966, reimbursement of providers has been governed by §§1814(b)(1) and 1861(v)(1)(A) of the Act. Section 1861(v) (1)(A) of the Act provides:

> Reasonable costs shall be the costs actually incurred, excluding, there from, any part of incurred costs found to be unnecessary in the efficient delivery of needed health care....

In addition, the Secretary has been granted authority over §1861(v)(1)(A) of the Act to establish:

> Limits on direct and indirect overall incurred costs, or incurred costs of specific items, or services, or groups of items or services to be recognized as reasonable, based on estimates of the costs, necessary in

the efficient delivery of needed health services to individuals covered by the health insurance program established under this title....

The Secretary has promulgated regulations at 42 C.F.R. §413.9, which provides that all payments to providers must be based on reasonable cost of services covered under Title XVIII of the Act and related to the care of beneficiaries. In addition, the Provider must meet the documentation requirements of both the Act and the regulations in order to demonstrate entitlement to reimbursement.[1]

Further, the regulations at 42 C.F.R. §413.106(c)(5) states in part: "[u]ntil a guideline is issued for a specific therapy or discipline, costs are evaluated so that ... costs do not exceed what a prudent and cost conspicuous buyer would pay for the given service." *Id*. This regulation is implemented by section 1403 of the Provider Reimbursement Manual (PRM), which reads in part, "[u]ntil specific guidelines are issued for the evaluation of reasonable costs of other services furnished by outside suppliers such costs will continued to be evaluated under Medicare program's requirement that only reasonable costs be reimbursed." *Id*.

A limitation on payment for reasonable costs of physical therapy services "under arrangement" was established by §251(c) of the Social Security Amendments of 1972[2] and §17(a) of the Social Security Amendments of 1973.[3] These amendments added §1861(v)(5)(A), which provides that:

> Where physical therapy services and other therapy services are furnished *under an arrangement* with a provider of services ..., the amount included in any payment to such provider ... as the reasonable cost of such services ... shall not exceed an amount equal to the salary which would reasonably had been paid for such services ... to the person performing them, if they had been performed in an employment relationship with such provider ... incurred by such person, as the secretary may, in regulation, determine to be appropriate. (Emphasis added.)

Section 1861(w)(1) of the Act provides that:

> [T]he term "arrangement" is limited to arrangement under which receipt of payment by the home health agency {whether in its own right or as an adjustment} with respect to services for which an individual is entitled to have payment made under this Title discharges the liability for such individuals or any other person to pay for the services.

The Secretary implemented §1861(v)(5)(A) through the promulgation of 42 C.F.R. §413.106, which defines the guidelines as reflective of the "amount equivalent to the prevailing salary and additional costs that would have been incurred by the provider ... had such services been performed by such person in an employment relationship." In turn, subsection (b) of this regulation defines "prevailing salary" as:

> The hourly salary rate based on the 75th percentile of salary ranges paid by providers in the geographical area, by type of therapy, to the therapists working full-time in an employment relationship.

Consequently, the guidelines, as explained, at §413.106(b)(6) are the amounts published by the Secretary, reflecting the application of §413.106(b)(1) through (4) to an individual therapy service and geographical area. Paragraph (c) of this regulation states that:

> Under this provision, [CMS] will establish criteria for use in determining the reasonable costs of physical ... therapy services ... furnished by individuals under arrangements with a provider of services.... It is recognized that providers have a wide variety of arrangements with such individuals. These individuals may be independent practitioners or employees of organizations furnishing various health care specialists. This provision does not require a change in the substance of these arrangements.

The Secretary's interpretation of reasonable cost provisions of §§1861(v)(1)(A), 1861(v)(5)(A) and the regulations at 42 C.F.R. §413.106 are set forth in §1403 of the PRM. First promulgated in 1977, §1403 of the PRM states, *inter alia*, that:

> The guidelines apply only to the costs of services performed by outside suppliers, not the *salaries* of provider employees, however, the cost of the services of the salaried employees who was formerly an

outside supplier of therapy or other services, or any other new salaried employment relationship, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.

In situation where compensation, at least in part, is based on a fee for service basis, or on a percentage of income, {commission}, these arrangements will be considered non-salaried arrangements, and the entire compensation will be subject to the guidelines.... (Emphasis added.)

The Administrator disagrees with the Board's analysis of the case and the relevant law and policy. The Administrator finds that, after review of the controlling law, and legislative history of the Act, and relevant Medicare policy, the Intermediary properly applied the Guidelines to the provider's physical therapy compensation. Contrary to the Board's finding that an employment relationship between the provider and the physical therapists determines whether the Guidelines should be applied, the Administrator finds that the fee-for-service basis for payment of the provider's therapists was the controlling factor in the application of the limits in this case.

First, in this case, the Board found that the Provider "employed" physical therapists. If the physical therapists were in fact employees, the Board asserted that that the physical therapists were exempt from the physical therapy Guidelines.

However, the Administrator notes that the Secretary is not bound by the Internal Revenue Services (IRS) provisions in determining Medicare reimbursement. The Administrator notes that these physical therapists may be employees under the IRS Code but where compensation, at least in part, is based on a fee-for-service, these payments are treated as non-salaried payments under §1403 of the PRM, and nonemployment relationships for Medicare reimbursement purposes.

In this situation, the payment arrangements for physical therapists are similar to nonsalaried personnel. The employment payment schemes for physical therapy services appear to be outside of a standard employment arrangement with the Provider and thus create the same opportunities for abuses as more traditionally defined contractor relationships. Consequently, wages paid on a fee-for-service or commission basis are governed by the Guidelines for purposes of Medicare reimbursement. The Administrator finds that §1861(v)(1)(A) of the Act authorizes the Secretary to determine reasonable costs and to implement limits on costs. That the Secretary has chosen to apply the Guidelines to the cost of employee compensation on a fee-for-service basis is not inconsistent with that authority The law is well established that §1861(v)(1)(A) of the Act gives the Secretary "broad discretion" to determine what are reasonable costs.[4] The Administrator finds that the application of the Guidelines under these facts is a reasonable exercise of that discretion.

Moreover, with respect to the Secretary's authority to apply the Guidelines, under these circumstances, under the authority granted pursuant §1861(v)(5)(A) of the Act, the Administrator finds it significant that the plain language of §1861(v)(5)(A) does not specifically limit the application of the Guidelines only to non-employees or outside contractors. As evident from the foregoing statutory language, the phrase, "under an arrangement" is not defined in the Act by reference to a legal employment situation under the IRS Code, but rather, is defined in broad terms as where receipt of Medicare payment by a provider discharges the liability of the beneficiary to pay for such services. Although, the language of §1861(v)(5)(A) clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms and, thus, does not specifically exclude employment relationships.

In addition, both the language of the statute and its legislative history of the Act support the conclusion that Congress was concerned with limiting costs associated with fee-for-service arrangements, such as those in this case. In drafting language of §1861(v)(5)(A), Congress chose to refer to the form of compensation "salary," rather than the form of legal relationship between provider and therapist to establish a standard for determining applicable limits. Thus, this limit is established, based on salary compensation, i.e., a fixed compensation, which is periodically paid to a person for regular work or service.

Moreover, the legislative history clearly reflects that Congress expected this limit (salary-based) would be applied to fee-for-service arrangements, as Congress was concerned about the cost implications of therapy provided under fee-for-service arrangements, as opposed to salary-based compensation.[5] Thus, rather than focusing on the exact nature of the legal relationship between the provider and the therapists, Congress focused

on the form of compensation to the therapists, viewing fee-for-service arrangements as the most likely area for uncontrolled costs and potential abuse.

Consequently, the statutory language of §1861(v)(5)(A) and its legislative history indicate all indicate that Congress did not contemplate all possible forms of fee-for-service arrangements, and, thus, did not contemplate fee-for-service arrangements within the context of a formal employment relationship. It is equally evident that the purpose of enacting §1861(v)(5)(A) of the Act was to place limits on physical therapy fee-for-service compensation costs. Because of the ambiguity of the language at §1861(v)(5)(A), the Secretary's interpretation of the statute is entitled to considerable deference as long as it is reasonable.[6] The Administrator finds that the Secretary's interpretation of the Act, to consider the phrase "under arrangement" to include those employment situations where payment is on a per-visit or per-unit basis, is reasonable based on the ambiguous language of the statute, the clear congressional intent to control costs and abuses by limiting fee-for-service compensation, and the Secretary's concern about the possibility of providers circumventing that intent through what would appear to be employment relationships.

The language of §1403 of the PRM specifically addresses two types of "employment" situations, i.e., (1) the "newly salaried" employees which the Secretary closely scrutinizes to make sure that an "employment situation is not being used to circumvent the guidelines," and, (2) the "fee-for-service" compensated employee which the Secretary treats as "nonsalary arrangement." As noted above, the Secretary's treatment of the latter situation as a nonsalary arrangement reflects the CMS' assumption that such a compensation arrangement is subject to the same possible abuses that arise in the situation of the use of an outside contractor. Section 1403 of the PRM is therefore CMS' attempt to further congressional efforts to prevent such abuses, whether they arise through a clear outside contractor situation, or through a hybrid employment/contractor situation, as in this case.

As reflected at §1403 of the PRM, the Secretary believes that either way, the possibility of abusing the Medicare program for greater reimbursement is the same, and could reasonably be prevented by using the same imposed compensation limits. Contrary to the Board's opinion, whether the therapists are employees of the provider, or receive benefits from the Provider which employees typically receive, are not the significant factors in this case. To base the decision of whether the Guidelines apply simply by examining the form of employment relationship, rather than by exploring its substance, would facilitate the types of program abuses which Congress was trying to prevent in its adoption of §1861(v)(5)(A) of the Act.

Consistent with, the above, the Administrator finds that the Secretary has amended the regulations, reiterating the longstanding Medicare policy of treating fee-for-service therapist services as "under arrangement" situations. The 1998 amendment to the regulations at 42 C.F.R. §413.106(c)(5) provide:

> If therapy services are performed in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service, or on a percentage of income (or commission), the guidelines will apply. The entire compensation will be subject to the guidelines in cases where the nature of the arrangement is most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The intent of this section is to prevent an employment situation from being used to circumvent the guidelines.

The Secretary explained in the preamble to the proposed rule of the above regulation at 42 C.F.R. §413.106(c)(5) that:

> We are proposing to revise §413.106(c) to add a new paragraph (c)(6) that would provide that the salary equivalency guidelines will apply in situations where compensation to a therapist employed by the provider is based, at least in part, on a fee-for-service, or on a percentage of income (or commission). The entire compensation would be subject to the guidelines in cases where the nature of the arrangements are most like an under "arrangement" situation, although technically the provider may treat the therapist as employees. The guidelines would be applied in this situation so that employment relationships are not being used to circumvent the guidelines.

> Since June 1977, there has been longstanding governing policy at §1403 of the Provider Reimbursement Manual, Guideline Application, regarding this issue for making payments to providers.... This instruction clearly requires the intermediary to apply the salary equivalency guidelines in cases where the provider is paying the physical therapists on a fee-for-service basis. This instruction considered the nature of those

arrangements and that they are most like an under "arrangement" situation, although technically they are employees. Therefore, the instructions further the statutory purpose as reflected in the legislative history of the salary equivalency guidelines. This instruction addresses the fact that [CMS] recognizes that certain employment relationships would effectively circumvent the guidelines, and provided for these circumstances in §1403 of the Provider Reimbursement Manual.[7]

The Administrator finds that the foregoing language reflects a clarification in the regulation of longstanding Medicare interpretive policy. Section 1403 of the PRM interprets and clarifies existing legislation and regulatory instruction regarding the Guidelines' applicability to physical therapist compensation paid under arrangement. Moreover, in this case, as discussed above, the policy of applying the guidelines to fee-for-service arrangements has been in section 1403 of the PRM since 1977.

Further, the Board found that the Intermediary failed to prove that the costs for its employee physical therapists are substantially out of line with physical therapy costs paid by similar home health agencies. However, the regulation at §413.106(c)(5) provides that these costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service. The Administrator notes that the Provider's physical therapy costs exceeded the Guidelines. The Secretary has determined that in such circumstances the Provider's rate per visit was not what a prudent and cost conscious buyer would pay for the given services. However rather than an irrebuttable presumption of unreasonableness, the Secretary in fact allows providers to demonstrate that they are entitled to exceptions to the application of the guidelines under certain circumstances. The Provider did not request an exception in this case.

Finally, the Administrator notes that the Board's reliance on the Court of Appeals for the Eighth Circuit holding in the case of *In Home Health* and the District Court decision of *High Country Home Health.* However, these cases are not controlling in this case because the Provider is not located in a state, which is comprised in the Eighth Circuit or under the jurisdiction of that District Court.

## DECISION

The Board's decision is reversed consistent with the forgoing opinion.

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES**

Date: 4/26/06

[1] Section 1851 of the Act [42 USC 1395g]; 42 CFR 413.20; 42 CFR 413.24.

[2] Pub. Law 92-603.

[3] Pub. Law 93-233.

[4] See, Good Samaritan Hospital v. Shalala, 508 U.S. 402, 411, 419 (1993); Mt. Diablo Hospital v. Bowen, 811 F.2d 38, 343 (7th Cir. 1987) (§1861(v)(1)(A) gives the Secretary wide latitude in proscribing regulations governing the process of reasonable costs. In *Good Samaritan*, the Supreme Court noted that §1861(v)(1)(A) of the Act, "explicitly delegates to the Secretary, the authority to develop regulatory methods for estimation of reasonable costs." 508 U.S. at 418, and likened this authority to the "exceptionally broad authority" that Congress bestowed on the Secretary in other areas of the Social Security Act. Pursuant to this authority, the Secretary promulgated regulations establishing cost limits, see 42 C.F.R. §413.30, and has provided that the cost limits may be calculated on a "per admission", "per discharge", "per diem", "per visit" or other basis, *Id*. at 413.30(a)(2). (Emphasis added.)

[5] S. Rep. No. 92-1230, 92nd Cong., 2nd Sess. 52 (1972) (provision will "limit reimbursement for physical and other therapists to a reasonable salary related basis rather than a fee for service basis".); H. Rep. No. 992-231, 92nd Cong., 1st Sess. 110 (1971) ("Committee bill includes ... provisions for controlling program expenditures for therapy services ... and for preventing abuse"); S. Rep. No. 93-533, 93rd Cong., 1st Sess. 68 (1973) ("the cost that would have been incurred if payment had been on a reasonable salary-related basis rather than on a fee-for-

service").

[6] See, Chevron, U.S.A., Inc., v. National Resources Defense Council, Inc., 467 U.S. 837, 842-843 (1984) (Where a statute is silent or ambiguous on the issue in question, the interpretation of the agency charged with administering the statute is entitled to deference as long as it is a reasonable one.)

[7] 62 Fed. Reg. 14851, 14871 (Mar. 28, 1997) (proposed); see also 63 Fed. Reg. 5106, 5126 (January 1, 1998) (final rule).

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

<<"employed physical therapist">>

**PRRB-DEC, MED-GUIDE ¶81,504, The Medical Team (Reston, Va.) v. Blue Cross Blue Shield Ass'n/Cahaba Government Benefit Administrators, (March 3, 2006)**

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**The Medical Team (Reston, Va.) v. Blue Cross Blue Shield Ass'n/Cahaba Government Benefit Administrators**

*PRRB Hearing* Dec. No. 2006-D18, Case Nos. 00-0548 and 00-0609 (cost reporting periods ending 3/31/1996 and 3/31/1997), March 3, 2006.

### Medicare: HHA Employee Physical Therapists

**Cost reports --Reasonable cost of therapy --Fee-for-service employees. --**

The intermediary's adjustment to a home health agency's (HHA) reimbursement for employee physical therapists was improper because it applied Medicare's physical therapy compensation guidelines, which only apply to outside contractors. The HHA employed physical therapists who were paid a lump sum for each patient visit, and the intermediary reduced the HHA's program reimbursement pursuant to salary equivalency guidelines contained in the *Provider Reimbursement Manual,* Pub. 15-1, §1400. The intermediary's application of the guidelines was improper, however, because the plain language of Soc. Sec. Act §1861(v)(5)(A) distinguishes between services performed by employee therapists and those provided by outside contractors "under arrangement" with a provider. The guidelines in §1400 were created to prevent perceived abuse in the practice of outside physical therapy contractors as opposed to HHA employees.

See

¶5849D-2.30

[Text of Decision]

### PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

ON THE RECORD

2006-D18

**PROVIDER** --The Medical Team Reston, Virginia **vs. INTERMEDIARY** --Blue Cross Blue Shield Association/Cahaba Government Benefit Administrators

Provider No.: 49-7033

**DATE OF HEARING**

December 6, 2005

Cost Reporting Periods Ended

March 31, 1996 and March 31, 1997

CASE NOs.: 00-0548 and 00-0609

**ISSUE**

Was the Intermediary's adjustment applying Medicare's Physical Therapy Compensation Guidelines to the Provider's employee physical therapists proper?

**MEDICARE STATUTORY AND REGULATORY BACKGROUND**

This is a dispute over the amount of Medicare reimbursement due a health care provider.

The Medicare program provides health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare & Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (DHHS) charged with the program's administration. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due providers under Medicare law and interpretative guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider, and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the NPR. 42 U.S.C. §1395oo; 42 C.F.R. §405.1835.

Medicare reimbursement is governed by section 42 U.S.C §1395x(v)(1)(A) of the Social Security Act (Act). In part, the statute provides that the reasonable cost of any service shall be the actual cost incurred excluding any part of such costs found to be unnecessary in the efficient delivery of needed health services. The statute also authorizes the Secretary of DHHS to establish cost limits. Essentially, the limits recognize reasonable costs based upon estimates of costs found to be necessary in the efficient delivery of covered items and services.

With respect to therapy costs, 42 U.S.C §1395x(v)(5)(A) states:

> [w]here physical therapy services, occupational therapy services, speech therapy services, or other therapy services or services of other health-related personnel (other than physicians) are furnished *under an arrangement* with a provider of services or other organization ... the amount included in any payment to such provider or other organization under this subchapter as the reasonable cost of such services (as furnished under such arrangements) shall not exceed an amount equal to the salary which would reasonably have been paid for such services ... to the person performing them if they had been performed in an employment relationship with such provider or other organization (rather than under such arrangement) plus the cost of such other expenses ... incurred by such person, as the Secretary may in regulations determine to be appropriate. (Emphasis added.)

The implementing regulation at 42 C.F.R. §413.106 states:

> (a) *Principle.* The reasonable cost of the services of physical, occupational, speech, and other therapists, and services of other health specialists (other than physicians), furnished under arrangements (as defined in section 1861(w) of the Act) with a provider of services, a clinic, a rehabilitation agency or a public health agency, may not exceed an amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider or other organization had such services been performed by such person in an employment relationship, plus the cost of other reasonable expenses incurred by such person in furnishing services under such arrangement. However, if the services of a therapist are required on a limited part-time basis, or to perform intermittent services, payment may be made on the basis of a reasonable rate per unit of service, even though this rate may be greater per unit of time than salary-related amounts, if the greater payment is, in the aggregate, less than the amount that would have been paid had

the therapist been employed on a full-time or regular part-time salaried basis.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

The Medical Team (Provider) is a home health agency (HHA) located in Reston, Virginia. It is a member of a chain of HHAs with related Medicaid, private care, and homemaker business activities. During its Medicare cost reporting periods ended March 31, 1996 and March 31, 1997, the Provider employed physical therapists who were paid based upon the number of home care visits they performed, i.e., they were paid on a "per visit" basis. Cahaba Government Benefit Administrators (Intermediary) reviewed the Provider's cost reports for each of these periods and applied Medicare's reasonable compensation guidelines (limits) authorized pursuant to 42 U.S.C §1395x(v)(5)(A) and 42 C.F.R. §413.106 discussed above, to the cost of these therapists, thereby reducing the Provider's program reimbursement. The Provider appealed the application of the guidelines to "employee" physical therapist costs to the Board pursuant to 42 C.F.R. §§405.1835-.1841 and met the jurisdictional requirements of those regulations. The amount of program funds in controversy is approximately $59,836 ($41,380 in 1996 and $18,456 in 1997).[1]

The Provider was represented by John W. Jansak, Esq., of Harriman, Jansak & Wylie. The Intermediary was represented by Bernard M. Talbert, Esq., Associate Counsel, Blue Cross Blue Shield Association.

## PARTIES' CONTENTIONS

The Provider contends that the pertinent statute and regulation establishes guidelines applicable to therapy services furnished under arrangements, which means services performed by outside contractors and not employees. The Provider acknowledges that Medicare's Provider Reimbursement Manual, Part I (HCFA Pub. 15-1) §1403 requires that the guidelines be applied to employees paid on a fee-for-service basis. However, the Provider cites *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999) aff'ing., *In Home Health v. Blue Cross Blue Shield Association et. al.* PRRB Dec. No. 96-D16, February 27, 1996, Medicare & Medicaid Guide (CCH) ¶44,065, where the Board found no authoritative basis for applying the guidelines to employees.[2] In addition, the Provider contends that its 1996 cost per visit was not out of line with the compensation paid by comparable providers based upon the physical therapy guidelines published by CMS on January 30, 1998.[3]

The Intermediary contends that the therapy guidelines apply to the Provider's therapists who where paid on a per visit basis according to HCFA Pub. 15-1 §1403, which states in part:

> [i]n situations where compensation, at least in part, is based on a fee-for-service or a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

The Intermediary also contends that the fact the Provider's physical therapy costs exceeded the physical therapy guidelines proves they are out of line with the costs of other providers; therefore, these costs are unreasonable pursuant to Medicare's prudent buyer provisions. 42 C.F.R. §413.106(c)(5), HCFA Pub. 15-1 §1403, 42 C.F.R. §413.9(c)(2).

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION

The Board, after consideration of the facts, parties' contentions, and evidence presented finds and concludes as follows:

The Provider employed physical therapists to whom it paid a lump sum for each patient visit. The Intermediary applied the salary equivalency guidelines contained in HCFA Pub. 15-1 §1400 to the therapists' compensation thereby reducing the Provider's allowable program costs and reimbursement.

The Board finds that the Intermediary's application of the guidelines to the Provider's costs is improper. 42 U.S.C. §1395x(v)(5)(A), the controlling statute, distinguishes services performed by employee therapists from services performed by outside contractors "under an arrangement" with a provider. Both the legislative and

regulatory history of the guidelines indicate that the guidelines were created to prevent perceived abuse in the practices of outside physical therapy contractors as opposed to provider employees. Moreover, the Board notes that the term "under an arrangement" is commonly referred to and used interchangeably with the term "outside contractor." Accordingly, the Board finds the guidelines do not apply to employee physical therapists even though they are paid on a fee-for-service basis.

As noted in previous cases, the Board cites the *In Home Health, Inc. v. Shalala*, 188 F.3d 1043 (8th Cir. 1999) and *High Country Home Health, Inc. v. Shalala*, 84 F. Supp. 2d 1241 (D. Wy. 1999), finding, in part:

> 42 U.S.C. §1395x(v)(5)(A) does not provide a basis for the application of the Guidelines to In Homes' employee physical therapists. The first part of the sentence in 42 U.S.C. §1395x(v)(5)(A) explains that the subsection applies to persons providing physical therapy services "under an arrangement" with a provider. The second part of the sentence explains that the reasonable cost of compensation for the persons "under an arrangement" is calculated by reference to the salary which would have reasonably been paid to the person if that person had been in an "employment relationship" with the provider. The plain meaning of 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413.106, which uses similar language, distinguishes between services provided "under an arrangement" and those provided by a person in an "employment relationship." It is clear from the language that a physical therapist who is "under an arrangement" is different from a person in an "employment relationship" with the provider. The Guidelines apply to a person "under an arrangement." The final notice in the Federal Register indicates that a person "under an arrangement" is an outside contractor. The Secretary's attempt to now further limit the term "employment relationship" to mean only salaried employees is not supported by the statute or the Secretary's contemporaneous interpretation as reflected in the 1992 regulation.... Thus, the statute requires nothing more than that a provider should be reimbursed for the services performed by a nonemployee, i.e., an outside contractor working under an arrangement with the provider, similarly to what an employer reasonably would pay its employee for such services. Services provided by a provider's employee are themselves subject to a reasonableness requirement. See 42 U.S.C. §1395x(v)(1).... We affirm the district court's reversal of the Secretary's decision and hold that the secretary may not apply the Guidelines to In Home's employee physical therapists.

The Board also finds that the guidelines alone can not be used to adjust a provider's costs in accordance with Medicare's prudent buyer principle. Rather, 42 C.F.R. §413.9 indicates that intermediaries must determine whether or not a provider's costs are "substantially out of line" or are unreasonable based upon a comparison of those costs to those incurred by other similarly situated providers.

## DECISION AND ORDER

The Intermediary's application of Medicare's salary equivalency guidelines to the compensation of physical therapists employed by the Provider but paid on a per-visit basis was improper. The Intermediary's adjustments are reversed.

---

[1] Intermediary's Position Paper dated May 20, 2004, at 5 and 4.

[2] Provider's Final Position Paper at 3.

[3] Provider's Supplemental Position Paper at 3.

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company