IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ERWINE'S HOME HEALTH CARE, INC.,
COLORADO HOME CARE, INC., and
POTOMAC HOME HEALTH CARE, INC.,

Plaintiffs,

v.

MICHAEL O. LEAVITT, Secretary,
Department of Health and Human Services,

Defendant.

Civil Action No. 05-2441 (ESH)

Judge Ellen Segal Huvelle

**EXHIBIT I TO PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# PROVIDER REIMBURSEMENT REVIEW BOARD DECISION

ON THE RECORD
2005-D66

| | |
|---|---|
| **PROVIDER -**<br>Health Care Options<br>East Baton Rouge Parish, Louisiana | **DATE OF HEARING**<br>July 26, 2005 |
| Provider No.: 19-7213 | Cost Reporting Period Ended -<br>June 30, 1997 |
| **vs.** | |
| **INTERMEDIARY -**<br>Blue Cross Blue Shield Association/<br>Cahaba Government Benefit<br>Administrators | **CASE NO.:** 00-3299 |

## INDEX


| | Page No. |
|---|---|
| Issues | 2 |
| Medicare Statutory and Regulatory Background | 2 |
| Statement of the Case and Procedural History | 2 |
| Parties' Contentions | 3 |
| Findings of Fact, Conclusions of Law and Discussion | 4 |
| Decision and Order | 6 |

ISSUE:

1. Whether the Intermediary's adjustments applying the physical therapy salary guidelines to fee-for-service employee compensation were proper.

2. Whether the Intermediary's adjustment to reduce allowable related party rental expense was proper.

MEDICARE STATUTORY AND REGULATORY BACKGROUND:

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS, formerly the Health Care Financing Administration (HCFA)) is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

STATEMENT OF THE CASE AND PROCEDURAL HISTORY:

Health Care Options, Inc. (Provider) is a Medicare-certified home health agency located in East Baton Rogue Parish, Louisiana. During the fiscal year ended (FYE) June 30, 1997 the Provider rendered home health services, including physical therapy services, to its patients. Cahaba Government Benefit Administrators (Intermediary) reviewed the FYE 1997 cost report and proposed certain adjustments. The Provider disagrees with the Intermediary's adjustments relating to physical therapy costs and related party rent expense.

Issue #1 – Physical Therapy Costs

During FYE 1997, the Provider utilized both contracted therapists and employees to render physical therapy services to its patients. The Provider employees who provided physical therapy services were not salaried but were paid on a per-visit basis. The Intermediary, upon determining that the employees were paid on a per-visit basis, included all employee salaries and the corresponding visits on W/S A-8-3 of the cost report and subjected the employee salaries to

the salary equivalency guidelines. The guidelines, as described in HCFA Pub. 15-1 §4103, are to be used as a comparison to the cost of services furnished under arrangement in order to limit costs to that which would have reasonably been paid for similar services if performed by an employee. This adjustment resulted in a reduction of Medicare reimbursement in the amount of $69,900 for FYE 1997.

Issue #2 – Related Party Rental Expense

The Provider rents the space it occupies from Global Health Management Systems, Inc. which is related to the Provider through common ownership. The Intermediary and the Provider agree on the base cost of ownership for the office building as a whole. The Provider, however, is one of many tenants in the building and the dispute between the Provider and the Intermediary lies in the allocation methodology of the building costs to each tenant. The Intermediary reviewed the allocation of the building costs to each tenant and proposed an adjustment to reduce the cost attributed to the Provider. This adjustment resulted in a reduction of Medicare reimbursement in the amount of $35,100.

The Provider appealed these adjustments to the Board and met the jurisdictional requirements of 42 C.F.R §§405.1835- 405.1841. The Provider was represented by Mr. Franklin Foil of Henchy, Verbois, Futrell & Foil. The Intermediary was represented by Mr. Bernard Talbert, Esquire, of the Blue Cross Blue Shield Association.

PARTIES' CONTENTIONS:

Issue #1 – Physical Therapy Costs

The Provider contends that PRM §1403 should be not be applied to its employees' compensation as the provisions consistently stress that the salary equivalency guidelines apply only to outside suppliers.

The Provider relies on In Home Health, Inc. v. Shalala, 188 F.3d 1043 (8th Cir. 1999) in which the U.S. Court of Appeals for the Eighth Circuit affirmed the district court decision In Home Health, Inc. v. Shalala, Civ. No. 97-2598/RHK/FLN (D. Minn. June 16, 1998). The District Court concluded that, under the statute, the salary equivalency guidelines do not apply to employees regardless of their compensation arrangement. The Eighth Circuit also found that the Secretary's reliance on PRM §1403 was unfounded as manual provisions are merely nonbinding interpretive rules that do not control when they are contrary to the plain meaning of the governing statute.

The Intermediary notes that the Administrator consistently overturns the Board's decisions which find in favor of the Provider on this issue. The Intermediary asserts that PRM §1403 clearly instructs the Intermediary to hold per-visit compensation of employees to the salary guidelines, and 42 CFR §413.106(c)(5) allows the Intermediary to apply a prudent buyer principle to therapy services furnished under arrangement. It is the Intermediary's position that the fact that the compensation exceeds the guidelines proves that the costs are not reasonable and are substantially out of line.

Issue #2 – Related Party Rental Expense

The Provider claims the space it leased was improved space which warranted a higher rent per square foot than the remainder of the building, which was leased as unimproved space. The Provider argues that the improved space should receive a higher allocation of actual cost than the unimproved space, as more of the base cost was attributed to the improvement of the leased improved space.

The Intermediary claims the Provider has not supplied documentation to support its contention that improvement costs are included in the total building costs; therefore, the Provider does not warrant receiving a greater proportion of building costs than the other tenants. The sales agreement between the Provider and Global Health Management [1] was the only document submitted relating to the improvement of the Provider's leased space. The Intermediary points out that this document indicates that the lessor would finance up to $250,000 in improvements to the space, but there is no evidence that the improvements were actually made or, if they were, how much they cost. Absent such evidence, the Intermediary asserts that the most accurate and appropriate allocation methodology of the cost would be on square footage, which was the allocation basis utilized in the audit adjustment.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION:

The Board, after considering the Medicare law and program instructions, evidence and the parties' contentions, finds and concludes as follows:

Issue #1 – Physical Therapy Costs

The Intermediary improperly adjusted the Provider's cost report by applying the physical therapy guidelines for the therapy services provided "under arrangement" by outside contractors to the wages paid to the Provider's employee therapists. The Intermediary does not dispute that the Provider did have employee therapists as well as contracted therapists, but maintains that it is required to apply the guidelines to employees paid on a per-visit basis by PRM I, Section 1403. It states in part:

> [in] situations where compensation, at least in part, is based on a fee-for-service basis or on a percentage of income (or commission), these arrangements will be considered non-salary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

The Board finds compelling the rationale expressed against the application of physical therapy guidelines to in–house physical therapy staff by the U.S. District Court in In Home Health, Inc. v. Shalala, 97-2598 (D. Minn. June 16, 1998). The Court states in part:

[1] Provider's Position Paper, Exhibit P-4, Page 3

> . . . the Act clearly states that physical therapy services performed "under an arrangement" do not include services performed by a physical therapist in an employment relationship with the provider. 42 U.S.C. § 1395x(5)(A) reads:
>
>> Where physical therapy services . . . are furnished under an arrangement with a provider of services or other organization . . . the amount included in any payment to such provider or other organization . . . as the reasonable costs of such services (as furnished under such arrangements) shall not exceed an amount equal to the salary which would reasonably have been paid for such services . . . to the person performing them *if they had been performed in an employment relationship* with such provider or other organization (*rather than under such arrangement*) . . . . (Emphasis added).
>
> The language of the Act distinguishes between services that are performed by employees of the provider and services that are performed "under an arrangement," and it indicates that services performed by a physical therapist in an employment relationship with the provider are different from those services performed "under an arrangement." The Guidelines, therefore, do not apply to employee physical therapists who are paid on a fee-per-visit basis.

The decision of the district court was affirmed by the U.S. Court of Appeals for the Eight Circuit, No. 98-3141, September 1, 1999.

The Board further concludes that the salary equivalency guidelines should not be used in place of a prudent buyer analysis. In order to apply the prudent buyer principle, the Intermediary is required to determine whether a provider's costs are "substantially out of line" by comparing those costs to costs incurred by other similarly situated providers. 42 C.F.R. 413.9(c)(2). In the instant case, the Intermediary did not perform a prudent buyer analysis, but attempted to use the guidelines as the basis for the prudent buyer analysis. The Board concludes that the use of the salary equivalency guidelines is not a substitute for the analysis required by the regulation.

Issue #2 – Related Party Rental Expense

The Board was unable to locate any evidence in the record of improvement costs paid for by the building owner. The only document provided regarding the space improvements was the sales agreement between the Provider and Global Health Management, which indicated that up to $250,000 of improvements would be financed. It did not document that the improvements were made or the actual cost of those improvements. The Board, therefore, has no basis to equate the improvement cost to the additional two dollars a square foot the Provider paid for its improved space compared to what the other tenants paid for the un-improved space. The Board, therefore,

concludes that the Intermediary properly adjusted the allocation basis for the ownership costs from rental expense to square footage as square footage is more accurate in these circumstances.

DECISION AND ORDER

Issue #1 – Physical Therapy Costs

The Intermediary improperly applied the reasonable compensation equivalency guidelines to the Provider's employed physical therapists who were paid on a fee-for-service basis. The Intermediary's adjustments are reversed.

Issue #2 – Related Party Rental Expense

The Intermediary properly allocated related party building costs on square footage. The Intermediary's adjustment to reduce allowable related party rental expense is affirmed.

BOARD MEMBERS PARTICPATING:

Suzanne Cochran, Esquire
Gary B. Blogett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West

DATE: September 2, 2005

FOR THE BOARD:

Suzanne Cochran
Chairperson