IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERWINE'S HOME HEALTH CARE, INC., COLORADO HOME CARE, INC., and POTOMAC HOME HEALTH CARE, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT, Secretary, Department of Health and Human Services,<br><br>Defendant. | Civil Action No. 05-2441 (ESH)<br><br>Judge Ellen Segal Huvelle |

**EXHIBIT J TO PLAINTIFFS'
BRIEF IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

CMS-DEC, MED-GUIDE, ¶81,433, VNA Healthcare, Inc. (Centralia, Ill.) v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, *CMS Administrator Decision,* (July 8, 2005)

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

VNA Healthcare, Inc. (Centralia, Ill.) v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators

*CMS Administrator Decision*, July 8, 2005.

### Medicare: Therapist Compensation

**Cost reports, allowable costs --Reasonable cost of therapy and other services furnished by outside suppliers --Fee-for-service employees. --**
An intermediary properly reduced a home health agency's (HHA) allowable physical and occupational therapy costs by applying Medicare's salary equivalency guidelines for services provided "under arrangements" by outside contractors to the wages paid to the HHA's employee therapists. Employees of the HHA rendered physical, occupational, and speech therapy services to patients and were compensated on a per visit basis. The fee-for-service compensation of the HHA's therapists was the controlling factor in its application limits and the intermediary properly applied the HHA's therapy compensation. The plain language of Soc. Sec. Act §1861(v)(5)(A) does not limit the application of the guidelines to non-employees or outside contractors. Although the language clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms, and, thus, does not specifically exclude employment situations. Additionally, while the HHA's rate per visit was not what a prudent and cost conscious buyer would pay for the given service, providers are allowed to demonstrate that they are entitled to exceptions to the application of the guidelines under certain circumstances.

See ¶5849D-2.30, ¶5849D-2.84.

The decision of the PRRB (see ¶81,351) was reversed.

[Text of Decision]

**CENTERS FOR MEDICARE & MEDICAID SERVICES**

*Decision of the Administrator*

**IN THE CASE OF: VNA Health Care, Inc. Provider vs. Blue Cross and Blue Shield Assn. Intermediary**

**CLAIM FOR:**

Medicare Reimbursement Fiscal Year Ending: 04/30/98

**REVIEW OF:**

PRRB Dec. No. 2005-D37 Dated: May 10, 2005

This case is before the Administrator, Centers for Medicare & Medicaid Services (CMS), for review of the Provider Reimbursement Review Board (Board) decision. The review is during the sixty-day period mandated in §1878(f)(1) of the Social Security Act (Act) [42 USC 1395oo(f)(1)], as amended. The Provider and the Intermediary submitted comments in this case. Accordingly, the Board's decision is now before the Administrator for final administrative review.

### ISSUE AND BOARD DECISION

The issue is whether the Intermediary's adjustments applying Medicare's salary equivalency guidelines to services performed by the Provider's employee physical and occupational therapists were proper.

The Board found that the Intermediary improperly applied the reasonable compensation equivalency guidelines to the Provider's employed physical and occupational therapists who were paid on a fee-for-service basis.

The Board concluded that the Intermediary's adjustment was not proper because it adjusted the Provider's cost report by applying the physical and occupational therapy guidelines for therapy services provided "under arrangement" by outside contractors to the wages paid to the Provider's employee therapists. The Board found that, contrary to the Intermediary's argument, 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413.106 provide no basis for the application of the guidelines to employee physical therapists.

The Board also disagreed with the Intermediary's alternative argument that the Provider's therapy compensation should be disallowed because these costs were substantially out of line, citing the prudent buyer concept set forth in the Provider Reimbursement Manual. The Board stressed that if the Intermediary believed that the compensation paid to the Provider's employees were subject to the specific therapy guidelines addressed by 42 C.F.R. 413.106 and the PRM, it is then inappropriate to rely on general regulations and program instructions (42 C.F.R. §413.9 and HCFA Pub. 15-1 §2103) to deny costs. Moreover, the Board found that the survey the Intermediary used to support its prudent buyer analysis was seriously flawed and unapproved by CMS. There was no evidence in the record that the survey was submitted to CMS for approval. The Board therefore concluded that it was unreasonable for the Intermediary to rely upon the survey to limit the Provider's actual therapy costs.

Thus, the Board reversed the Intermediary's adjustments.

## SUMMARY OF COMMENTS

The Center for Medicare Management (CMM) requested reversal of the Board's decision. CMM argued that the policy was first included in the Provider Reimbursement Manual (PRM) in 1976 and clarified in 1977 by requiring that where compensation, at least in part, is based on a fee-for-service basis, or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines. CMM also noted that the policy was codified in 42 C.F.R. 413.106(c)(5) of the regulations in 1998, effective for services on or after April 1, 1998. The cost reporting period in question is May 1, 1997 through April 30, 1998, with one month falling within the effective date of the regulation. Therefore, by setting forth the same policy in regulations as in the PRM for years, it is clear that the intent of the policy is that the guidelines are to apply in situations in which employee compensation is based, at least in part, on a fee-for-service basis, or percentage of income.

CMM also incorporated comments from an earlier case.

## DISCUSSION

The entire record furnished by the Board has been examined, including all correspondence, position papers, exhibits, and subsequent submissions. All comments timely received have been considered and included in the record.

Since its inception in 1966, Medicare's reimbursement of health care providers was governed by §1814(b)(1)[1] and §1861(v)(1)(A) of the Act. Section 1861(v)(1)(a), provides that:

> reasonable cost shall be the cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services....

In addition, the Secretary has been granted authority under Section 1861(v)(1)(A) of the Act to establish:

> limits on the direct and indirect overall incurred costs or incurred costs of specific items or services or groups of items or services to be recognized as reasonable based on estimates of the costs necessary in

the efficient delivery of needed health services to individuals covered by the insurance programs established under this title....

The Secretary has promulgated regulations at 42 CFR 413.9 which provide that all payments to providers of services must be based on reasonable costs of services covered under Title XVIII of the Act and related to the care of beneficiaries. In addition, the Provider must meet the documentation requirements of both the Act and the regulations in order to demonstrate entitlement to reimbursement.[2]

A limitation on payments for the reasonable cost of physical therapy services under arrangement was established by §251(c) of the Social Security Amendments of 1972[3] and §17(a) of the Social Security Amendments of 1973.[4] These amendments added §1861(v)(5)(A) of the Act which provides that:

> Where physical therapy services [and other therapy services] ... are furnished *under an arrangement* with a provider of services ..., the amount included in any payment to such provider ... as the reasonable cost of such services ...*shall not exceed an amount equal to the salary* which would reasonably have been paid for such services ... to the person performing them if they had been performed in an employment relationship with such provider, incurred by such person, as the Secretary may in regulations determine to be appropriate. (Emphasis added.)

Section 1861(w)(1) of the Act provides that:

> the term 'arrangement' is limited to arrangements under which receipt of payment by the ... home health agency ... (whether in its own right or as agent), with respect to services for which an individual is entitled to have payment made under this title, discharges the liability of such individual or any other person to pay for the services.

The Secretary implemented §1861(v)(5)(A) through the promulgation of 42 CFR 413.106, which defines the Guidelines as reflective of the "amount equivalent to the prevailing salary and additional costs that would reasonably have been incurred by the provider ... had such services been performed by such person in an employment relationship." In turn, subsection (b) defines "prevailing salary" as:

> the hourly salary rate based on the 75th percentile of salary ranges paid by providers in the geographical area, by type of therapy, to the therapists working full-time in an employment relationship.

Consequently, the Guidelines, as explained at 42 CFR 413.106(b)(6), are the amounts published by the Secretary reflecting the application of §413.106(b)(1) through (4) to an individual therapy services and a geographical area. Paragraph (c) of the regulation states that:

> Under this provision, [CMS] will establish criteria for use in determining the reasonable costs of physical ... therapy services ... furnished by individuals under arrangements with a provider of services.... It is recognized that providers have a wide variety of arrangements with such individuals. These individuals may be independent practitioners or employees of organizations furnishing various health care specialists. This provision does not require a change in the substance of these arrangements.

The Secretary's interpretation of §1861(v)(5)(A) and the regulation at 42 CFR 413.106 is set forth in §1403 of the PRM, first promulgated in 1977, which states, *inter alia*, that:

> The guidelines apply only to the costs of services performed by outside suppliers, not the *salaries* of provider's employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationship, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.
>
> In situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commissions), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

The Administrator finds that, after a review of the controlling law, legislative history of the Act, and relevant Medicare policy, the Intermediary properly applied the Guidelines to the Provider's physical therapy compensation. Contrary to the Board's finding that the legal relationship between the Provider and the physical therapists determined whether the Guidelines should be applied, Administrator finds that the fee-for-service compensation of the Provider's therapists was the controlling factor in the application of the limits in the case.

In making this determination, the Administrator finds significant that the plain language of §1861(v)(5)(A) of the Act does not limit the application of the Guidelines only to non-employees or outside contractors. As evident from the foregoing statutory language, the phrase "under an arrangement" is not defined in the Act by reference to a legal employment situation, but rather, is defined, in broad terms, as where receipt of Medicare payment by a provider discharges the liability of the beneficiary to pay for such services. Although the language of §1861(v)(5)(A) clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms, and thus, does not specifically exclude employment situations.

First, in this case, the Board found that the Provider "employed" physical therapists. If the physical therapists were in fact employees, the Board asserts that the physical therapists were exempt from the physical therapy Guidelines. However, the Administrator notes that the Secretary is not bound by the Internal Revenue Services (IRS) provisions in determining Medicare reimbursement. The Administrator notes that these physical therapists may be employees under the IRS code but where compensation, at least in part, is based on fee-for-service, these payments are treated as non-salaried payments under section 1402 of the PRM and non-employment relationships for Medicare reimbursement purposes.

The specific salary arrangements in this case are not consistent with prudent practices associated with full time employment. In this situation, the payment arrangements for physical therapists are similar to non-salaried personnel. The employment payment schemes for physical therapy services appear to be outside of a standard employment arrangement with the Provider and thus create the same opportunities for abuses as more traditionally defined contractor relationships. Consequently, wages paid on a fee-for-service or commissioned basis are governed by the Guidelines for purposes of Medicare reimbursement. The Administrator finds that section 1861(v)(1)(A) of the Act authorizes the Secretary to determine reasonable costs and to implement limits on costs. That the Secretary has chosen to apply the Guidelines to the cost of employee compensation on a fee-for-service basis is not inconsistent with that authority. The law is well established that section 1861(v)(1)(A) of the Act gives the Secretary "broad discretion" to determine what are reasonable costs.[5] The Administrator finds that the application of the Guidelines under these facts is a reasonable exercise of that discretion.

Moreover, with respect to the Secretary's authority to apply the Guidelines under these circumstances under the authority granted pursuant to section 1861(v)(5)(A) of the Act, the Administrator finds it significant that the plain language of section 1861(v)(5)(A) of the Act does not limit the application of the Guidelines only to non-employees or outside contractors. As evident from the foregoing statutory language, the phrase "under an arrangement" is not defined in the Act by reference to a legal employment situation under the IRS code, but rather, is defined in broad terms as where receipt of Medicare payment by a provider discharges the liability of the beneficiary to pay for such services. Although the language of section 1861(v)(5)(A) clearly applies in situations where there is an outside contractor relationship, the plain language of the statute does not actually define "under arrangement" with those terms and, thus, does not specifically exclude employment situations.

In addition, both the language of the statute and the legislative history of the Act support the conclusion that Congress was concerned with limiting costs associated with fee-for-service arrangements such as those in this case. First, in drafting the language of §1861(v)(5)(A), Congress chose to refer to the form of the legal relationship between provider and therapist to establish the standard for determining the applicable limits. Thus, this limit is established based on a salary compensation, i.e., a fixed compensation which is periodically paid to a person for regular work or service.

Moreover, the legislative history clearly reflects that Congress expected this limit (salary-based) would be applied to fee-for-service arrangements, as Congress was concerned about cost implications of therapy provided under fee-for-service arrangements, as opposed to salary-based compensation.[6] Thus, rather than focusing on the exact nature of the compensation to the therapist, viewing fee-for-service arrangements as the most likely area for uncontrolled costs and potential abuse,

http://hr.cch.com/primesrc/bin/highwire.dll

7/29/2006

Consequently, the statutory language of section 1861(v)(5)(A) and its legislative history all indicate that Congress did not contemplate all possible forms of fee-for-service arrangements and, thus, did not contemplate fee-for-service arrangements within the context of a formal employment relationship. However, it is equally evident that the purpose of enacting section 1861(v)(5)(A) of the Act was to place limits on physical therapy fee-for-service compensation costs. Because of the ambiguity of the language at section 1861(v)(5)(A), the Secretary's interpretation of the statute is entitled to considerable deference as long as it is reasonable.[7] The Administrator finds that the Secretary's interpretation of the Act, to consider the phrase "under arrangement" to include those employment situations where payment is on a per-visit or per-unit basis, is reasonable based on the ambiguous language of the statute, the clear congressional intent to control costs and abuses by limiting fee-for-service compensation, and the Secretary's concern about the possibility of providers circumventing that intent through what would appear to be employment relationships.

Thus, the Administrator concludes that the language of §1403 is not limited to non-employment situations. However, of relevance to this case, §1403 states that "[i]n situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered non-salary arrangements" and hence subject to the Guidelines. In context, this provision is clearly meant to encompass *employment* relationships where compensation is on a fee-for-service basis, such as is the case here.[8] An interpretation of the provision as applying only to outside suppliers renders the provision superfluous, since there is no need to explain that such arrangements are "nonsalary" arrangements.[9] Further, in light of the longstanding Manual provision, the Secretary is not retroactively applying a new policy and has been consistent in certain general statements regarding application of the Guidelines.

Moreover, §1403 of the PRM, specifically addresses two types of "employment" situations, i.e., 1) the "newly salaried" employees which the Secretary closely scrutinizes to make sure that an "employment situation is not being used to circumvent the guidelines," and 2) the "fee-for-service" compensated employees, which the Secretary treats as "nonsalary arrangement." As noted above, the Secretary's treatment of the latter situation, as a nonsalary arrangement, reflects the agency's assumption that such a compensation arrangement is subject to the same possible abuses that arise in the situation of the use of an outside contractor. Section 1403 of the PRM is therefore CMS' attempt to further congressional efforts to prevent such abuses, whether they arise through a clear outside contractor situation or through a hybrid employment/contractor situation, as in this case.

As reflected at section 1403 of the PRM, the Secretary believed that either way, the possibility of abusing the program for greater reimbursement was the same, and could reasonably be prevented using the same imposed compensation limits. Whether the therapist is an employee of the Provider or receives benefits from the Provider which employees typically receive, are not the significant factors in this case. To base the decision of whether the Guidelines apply simply by examining the form of the employment relationship, rather than by exploring its substance, would facilitate the types of program abuses which Congress was trying to prevent in its adoption of section 1861(v)(5)(A) of the Act.

Consistent with the above, the Administrator notes that the Secretary has amended her regulations, reiterating the longstanding policy of treating fee-for-service therapist services as "under arrangement" situations. The 1998 amendments to the regulation at 42 CFR 413.106(c)(5) provide that:

> If therapy services are performed in situations where compensation to a therapist employed by the provider is based, at least in apart, on a fee-for-service or on a percentage of income (or commission), the guidelines will apply. The entire compensation will be subject to the guidelines win cases where the nature of the arrangements is most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The intent of this section is to prevent an employment relationship from being used to circumvent the guidelines.

The Secretary explained in the preamble to the proposed rule of the above regulation at 42 CFR 413.106(c)(5) that:

> We are proposing to revise section 413.106(c)(6) that would provide that salary equivalency guidelines will apply in situations where compensation to a therapist employed by the provider is based, at least is part, on a fee-for-service or on a percentage of income (or commission), The entire compensation would be subject to the guidelines in cases where the nature of the arrangements are most like an under "arrangement" situation, although technically the provider may treat the therapists as employees. The

guidelines would be applied in this situation so that an employment relationship is not being used to circumvent the guidelines.

Since June 1977, there has been longstanding governing policy at section 1403 of the Provider Reimbursement Manual, Guideline Application, regarding this issue for making payments to providers.... This instruction clearly requires the intermediary to apply the salary equivalency guidelines in cases where the provider is paying the physical therapists on a fee-for-service basis. This instruction considered the nature of those arrangements and that they are most like an under "arrangement" situation, although technically they are employees. Therefore, the instructions further the statutory purpose as reflected in the legislative history of the salary equivalency guidelines. This instruction addresses the fact that HCFA recognizes that certain employment relationships would effectively circumvent the guidelines and provided for these circumstances in section 1403 of the Provider Reimbursement Manual.[10]

The Administrator finds that the foregoing regulatory language reflects a clarification in regulation of longstanding Medicare interpretative policy. Section 1403 of the PRM interprets and clarifies existing legislation and regulatory instruction regarding the Guidelines' applicability to physical therapist compensation paid under arrangements. Moreover, in this case, as discussed above, the policy of applying the Guidelines to fee-for-service arrangements has been in section 1403 of the PRM since 1977.

The Board found that the Intermediary failed to prove that the costs for its employee physical therapists are substantially out of line with physical therapy costs paid by similar home health agencies. However, the regulation at 42 CFR 413.106(c)(5) provides that these costs are evaluated so that such costs do not exceed what a prudent and cost conscious buyer would pay for the given service. The Administrator notes that the Provider's physical therapy costs exceeded the Guidelines. The Secretary has determined that in such circumstances the Provider's rate per visit was not what a prudent and cost conscious buyer would pay for the given service. However, rather than an irrebuttable presumption of unreasonableness, the Secretary in fact allows providers to demonstrate that they are entitled to exceptions to the application of the Guidelines under certain circumstances.

### DECISION

The Administrator reverses the decision of the Board in this case.

**THIS CONSTITUTES THE FINAL ADMINISTRATIVE DECISION OF THE SECRETARY OF HEALTH AND HUMAN SERVICES**

Date: 7/8/05

[1] 42 USC 1395f(b)(1).

[2] Section 1815 of the Act (42 USC 1395g); 42 CFR 413.20; 42 CFR 413.24

[3] Pub. Law 92-603.

[4] Pub. Law 93-233.

[5] See, e.g., *Good Samaritan Hospital v. Shalala*, 508 U.S. 402, 411, 419 (1993); *Mt. Diablo County Hosp. v. Bowen*, 811 F.2d 38, 3443 (7th Cir. 1987) (section 1861(v)(1)(A) gives the Secretary wide latitude in prescribing regulations governing the process of determining reasonable costs). In *Good Samaritan*, the Supreme Court noted that section 1861(v)(1)(A) "explicitly delegates to the Secretary the authority to develop regulatory methods for the estimation of reasonable costs," 508 U.S. at 418, and likened this authority to the "exceptionally broad authority" that Congress bestowed upon the Secretary in other areas of the Social Security Act. *Id*. Pursuant to this authority, the Secretary has promulgated regulations establishing cost limits, see 42 CFR 413.30, and has provided that the cost limits may be calculated on a "per admission", per discharge, per diem, per visit, or other basis, *Id*, at 413.30(a)(2) (Emphasis added).

[6] S. Rep. No. 92-1230, 92nd Cong., 2nd. Sess. 52 (1972) (provision will "limit reimbursement for physical and other therapists to a reasonable salary related basis rather than a fee-for-service basis."); H. Rep. No. 992-231.

92nd Cong. 1st Sess. 110 (1971) ("Committee bill includes ... provisions for controlling program expenditures for therapy services ... and for preventing abuse"); S. Rep. No. 93-533, 93rd Cong. 1st Sess. 68 (1973) ("the cost that would have been occurred if payment had been on a reasonable salary-related basis rather than on a fee-for-service").

[7] *See Chevron U.S.A., Inc. v. National Resources Defense* Council, Inc., 467 U.S. 837, 842-43 (1984). Where a statute is silent or ambiguous on the issue in question, the interpretation of the agency charged with administering the statute is entitled to deference as long as it is a reasonable one.

[8] A rule of statutory construction equally meaningful in this context, is "every word and clause must be given effect." Black, Construction and Interpretation of Laws, §60 (2d. 1911). *See also Babbit v. Sweet Home Chapter of Communities for a Greater Oregon,* 115 S.Ct. 2407, 2413 (1995).

[9] Moreover, the Board's decision concludes that a prudent buyer analysis should be administered in order to determine whether the Provider's therapist costs were unreasonable. However, the Administrator would point out to the Board that guidelines themselves establish CMS's determination of costs which are reasonable in the marketplace. Costs in excess of the Guidelines are, in effect, determined to be unreasonable.

le.

[10] 62 Fed. Reg. 14851, 14871 (Mar. 28, 1997)(proposed rule); *see also* 63 Fed. Reg. 5106, 5126 (January 1, 1998) (final rule).

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

PRRB-DEC, MED-GUIDE, ¶81,351, VNA Healthcare, Inc. (Centralia, Ill.) v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators, *PRRB Hearing* Dec. No. 2005-D37, Case No. 01-2620, (May 10, 2005)

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company

**VNA Healthcare, Inc. (Centralia, Ill.) v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators**

*PRRB Hearing* Dec. No. 2005-D37, Case No. 01-2620 (cost reporting period ending 4/30/98), May 10, 2005.

Medicare: Therapist Compensation

**Cost reports --Reasonable cost of therapy and other services furnished by outside suppliers --Fee-for-service employees. --**
The intermediary improperly reduced a home health agency's (HHA) allowable physical and occupational therapy costs by applying Medicare's salary equivalency guidelines for services provided "under arrangements" by outside contractors to the wages paid to the HHA's employee therapists. Employees of the HHA rendered physical, occupational, and speech therapy services to patients and were compensated on a per visit basis. As a result of the intermediary's application of 42 C.F.R. §413.106 and Provider Reimbursement Manual Part I, §1403, which state the rules for payment for services provided under arrangements, physical therapy costs were reduced in the amount of $79,886 and a occupational therapy were reduced in the amount of $2,104. Reasonable compensation guidelines should not be applied to employee compensation based on a fee per visit because there is no basis for application of guidelines to employee therapists. The Medicare Act distinguishes between services that are performed by employees of a provider and services that are performed under arrangement, and both the legislative and regulatory history of the guidelines indicate that the purpose of the guidelines was to curtail and prevent abuse in practices of outside physical therapy contractors. The HHA's therapy compensation should not be disallowed for the alternative reason that the costs were substantially out of line because the intermediary relied on general regulations and program instructions even though the HHA was subject to specific regulations relating to therapy costs and the survey it used to support the analysis was flawed.

See ¶5849D-2.30, ¶5849D-2.84.

[Text of Decision]

**PROVIDER REIMBURSEMENT REVIEW BOARD DECISION**

ON THE RECORD

2005-D37

**PROVIDER** --VNA Healthcare, Inc. Centralia, Illinois **vs. INTERMEDIARY** --BlueCross BlueShield Association/Cahaba Government Benefit Administrators

Provider No.: 14-7112

**DATE OF HEARING** --February 11, 2005

Cost Reporting Period Ended --April 30, 1998

**CASE NO.:** 01-2620

**ISSUE**

Were the Intermediary adjustments applying Medicare's salary equivalency guidelines to services performed by

Provider's employee physical and occupational therapists proper?

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

This is a dispute over the amount of Medicare reimbursement due a provider of medical services.

The Medicare program was established to provide health insurance to the aged and disabled. 42 U.S.C. §§1395-1395cc. The Centers for Medicare and Medicaid Services (CMS), formerly the Health Care Financing Administration (HCFA) is the operating component of the Department of Health and Human Services (DHHS) charged with administering the Medicare program. CMS' payment and audit functions under the Medicare program are contracted out to insurance companies known as fiscal intermediaries. Fiscal intermediaries determine payment amounts due the providers under Medicare law and under interpretive guidelines published by CMS. See, 42 U.S.C. §1395(h), 42 C.F.R. §§413.20(b) and 413.24(b).

At the close of its fiscal year, a provider must submit a cost report to the fiscal intermediary showing the costs it incurred during the fiscal year and the proportion of those costs to be allocated to Medicare. 42 C.F.R. §413.20. The fiscal intermediary reviews the cost report, determines the total amount of Medicare reimbursement due the provider and issues the provider a Notice of Program Reimbursement (NPR). 42 C.F.R. §405.1803. A provider dissatisfied with the intermediary's final determination of total reimbursement may file an appeal with the Provider Reimbursement Review Board (Board) within 180 days of the issuance of the NPR. 42 U.S.C. §1395oo(a); 42 C.F.R. §405.1835.

## STATEMENT OF THE CASE AND PROCEDURAL HISTORY

VNA Healthcare, Inc. (Provider) is a home health agency (HHA) located in Centralia, Illinois. During the fiscal year May 1, 1997 to April 30, 1998, the Provider rendered physical, occupational and speech therapy services to patients. The therapists performing these functions were employees of the HHA and were compensated on a per visit basis. These employees were subject to payroll tax withholding and were covered by the agency's health insurance and retirement plans.

Cahaba Government Benefit Administrators (Intermediary) applied Medicare regulation 42 C.F.R. §413.106 -- Reasonable Cost of Physical and Other Therapy Services Furnished Under Arrangements --and HCFA Program Instruction (HCFA Pub. 15-1) §1403 --Guideline Application to the Provider's therapy costs. This resulted in a reduction of allowable physical therapy cost in the amount of $79,886. Occupational therapy cost was reduced by $2,104.

The Provider appealed these adjustments to the Board. The Provider's filing met the jurisdictional requirements of 42 C.F.R. §§405.1835 --405.1841. The Provider was represented by Mr. Eric Thomas of ServiceMaster Home Healthcare Services. The Intermediary was represented by Bernard M. Talbert, Esquire of Blue Cross Blue Shield Association.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND DISCUSSION

The Board, after considering the Medicare law, regulations, program instructions, evidence and the parties' contentions finds as follows.

The Intermediary improperly adjusted the Provider's cost report by applying the physical and occupational therapy guidelines for therapy services provided "under arrangement" by outside contractors to the wages paid to the Provider's employee therapists. Although the Intermediary does not dispute that the therapists were employees of the Provider, it maintains that, according to Medicare guidelines, PRM1, Section 1403, "[In] situations where compensation, at least in part, is based on a fee-for-service basis or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter."

The Board concurs with the Provider's position that the U.S. District Court case for In Home Health, dated June

16, 1998 provides strong argument against allowing the reasonable compensation guidelines to be applied to employee compensation based on a fee per visit. The court decision stated in part:

> ... the Act clearly states that physical therapy services performed "under arrangement" do not include services performed by a physical therapist in an employment relationship with the provider. 42 U.S.C. §1395x(5)(A) reads: "Where physical therapy services ... are furnished under arrangement with a provider of services or other organization ... the amount included in any payment to such provider or other organization ... as the reasonable costs of such services (as furnished under such arrangements) shall not exceed an amount equal to the salary which reasonably would have been paid for such services ... to the person performing them if they had been performed in an employment relationship with such provider or other organization (rather than under such arrangement)...." (Emphasis added).
>
> The language of the Act distinguishes between services that are performed by employees of the provider and services that are performed "under an arrangement," and it indicates that services performed by a physical therapist in an employment relationship with the provider are different from those services performed "under an arrangement." The guidelines, therefore, do not apply to employee physical therapists who are paid on a fee-per-visit basis.
>
> District of Minnesota, No 97-2598, June 16, 1998.

The decision of the District Court was subsequently affirmed by the U.S. Court of Appeals for Eighth Circuit, No. 98-3141, September 1, 1999.

See also, *High Country Home Health, Inc. v. Shalala*, U.S. District Court of Wyoming, No. 97-CV-1036-J, Dec. 20, 1999 (supporting the Board's decision denying application of the physical therapy guidelines to the Provider's salaried therapists.)

The Board finds that 42 U.S.C. §1395x(v)(5)(A) and 42 C.F.R. §413.106 provide no basis for the application of the guidelines to employee physical therapists. Both the legislative and regulatory history of Medicare Guidelines indicate that their purpose was to curtail and prevent perceived abuse in the practices of outside physical therapy contractors. The Board also notes that the term "under arrangement" is commonly referred to and used interchangeably with the term "outside contractor."

The Board also disagrees with the Intermediary's alternative argument that the Provider's therapy compensation should be disallowed because these costs were substantially out of line, citing the prudent buyer concept set forth in HCFA Pub. 15-1. First, the Intermediary asserts that since the Provider's physical therapy costs exceeded the limits in the physical therapy guidelines for outside contractors, that alone proves that the costs were unreasonable and were, in fact, substantially out of line. Second, the Intermediary compares the Provider's therapy compensation costs to the Hospital and Healthcare Compensation Service Survey (1998) to show that the Provider's costs were higher. The Board finds this analysis troubling, in that the Intermediary cites general regulations and program instructions (42 C.F.R. §413.9[1] and HCFA Pub. 15-1 §2103) despite the existence of very specific regulations relating to therapy costs (42 C.F.R. §413.106 and Chapter 14 of HCFA Pub. 15-1). If the Intermediary believes that the compensation paid to the Provider's employees was subject to the specific therapy guidelines addressed above, it is not appropriate to rely on general regulations and program instructions to deny such costs. Inherent in the specific regulations and program instructions are CMS' analysis and conclusions of what is reasonable and prudent regarding the specific type of cost being regulated-in this case, physical and occupational therapy costs.

The Board also finds that the survey the Intermediary used to support its prudent buyer analysis is seriously flawed, in that it:

- lacks detail sufficient to support its conclusions,

- includes responses from only thirty therapists,

- contains data that did not come from Medicare cost reports or other auditable reports or documents, and

• contains data that is not verifiable.

Finally, there is no evidence in the record that the survey was submitted to CMS for approval as required by 42 C.F.R. §413.106(b)(6), which states in relevant part:

> Other statistically valid data may be used to establish guidelines for a geographical area, provided that the study designs, questionnaires and instructions, as well as the resultant survey data for determining the guidelines are submitted to and approved in advance by CMS. Such data must be arrayed so as to permit the determination of the 75th percentile of the range of salaries paid to full-time employee therapists.

The Board concludes that since the survey was unreliable and unapproved, it is unreasonable for the Intermediary to rely upon it to limit the Provider's actual therapy costs.

### DECISION AND ORDER

The Intermediary improperly applied the reasonable compensation equivalency guidelines to the Provider's employed physical and occupational therapists who were paid on a fee-for-service basis. The Intermediary's adjustments are reversed.

---

[1] This regulation is a general requirement that costs must be related to patient care and must be reasonable. It is the foundation of the prudent buyer concept at forth in HCFA Pub. 15-1 §2103.

---

© 2006, CCH INCORPORATED. All Rights Reserved. A WoltersKluwer Company