IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
ERWINE'S HOME HEALTH CARE, INC.,          )
COLORADO HOME CARE, INC., and             )
POTOMAC HOME HEALTH CARE, INC.,           )
                                          )
            Plaintiffs,                   )   Civil Action No. 05-2441 (ESH)
                                          )
        v.                                )   Judge Ellen Segal Huvelle
                                          )
MICHAEL O. LEAVITT, Secretary,            )
Department of Health and Human Services,  )
                                          )
            Defendant.                    )
_____)

PLAINTIFFS' STATEMENT OF
MATERIAL FACTS NOT IN DISPUTE

In accordance with Rules 7(h) and 56.1 of the Local Civil Rules of the United States District Court for the District of Columbia, Plaintiffs file this statement of material facts that are undisputed. The evidentiary support for each statement (either the filings in this case and/or the Administrative Record ["AR"] on file with the Court) is reflected in the accompanying footnote for each statement. The citations do not purport to be exhaustive – there may be other places in the record (which exceeds 9,300 pages) that support the same proposition.

(1)     During its fiscal years ending ("FYEs") December 31, 1996 and December 31, 1997, Plaintiff Erwine's Home Health Care, Inc. ("Erwine's") operated a home health agency that was certified to participate in the Medicare program and that furnished services to Medicare beneficiaries in the Scranton-Wilkes Barre area of Pennsylvania.[1]

---

[1] Complaint at ¶ 10; Answer at ¶ 10. AR at 32.

{D0116560.DOC / 1}

(2)     During its FYE December 31, 1995, Plaintiff Colorado Home Care, Inc. ("CHC") operated a home health agency that was certified to participate in the Medicare program and that furnished services to Medicare beneficiaries in the metropolitan Denver, Colorado area.[2]

(3)     During its FYEs June 30, 1995 and June 30, 1996, Plaintiff Potomac Home Health Care ("PHHC") operated a home health agency that was certified to participate in the Medicare program and that furnished services to Medicare beneficiaries in the metropolitan Washington, DC area.[3]

(4)     For its FYEs December 31, 1996 and December 31, 1997, Erwine's employed physical therapists to furnish physical therapy services to its patients. These physical therapists were paid on a per-visit basis for their work, were entitled to and received employee benefits from Erwine's (including participation in Erwine's pension and health benefits plans), were subject to payroll withholdings for the employee share of Federal Insurance Contributions Act ("FICA") and Medicare taxes, and had their worker's compensation insurance and employer's share of FICA and Medicare taxes paid by Erwine's.[4]

(5)     For its FYE December 31, 1995, CHC employed physical therapists to furnish physical therapy services to its patients. These physical therapists were paid on a per-visit basis

---

[2] Complaint at ¶ 11; Answer at ¶ 11. AR at 1118.

[3] Complaint at ¶ 12; Answer at ¶ 12. AR at 3734.

[4] Complaint at ¶ 36. AR at 32, 294-95, 322, 482-83, 499, 509, and 989. Although Defendant denied this paragraph of the Complaint (Answer at ¶ 36), claiming that the Secretary's final decision made no explicit finding on this issue (AR at 6-7), there can be no reasonable doubt that these individuals were employees. In fact, the Secretary's final decision not only fails to reverse the Provider Reimbursement Review Board's ("PRRB's") express finding on this point but actually concedes that these physical therapists were employees, admitting that they were "'fee for service' compensated employees" and acknowledging that they were employees by Internal Revenue Service standards. AR at 6, 9.

for their work and were treated by CHC as employees, including payroll withholdings for FICA and the employee's FICA match.[5]

(6)   For its FYEs June 30, 1995 and June 30, 1996, PHHC employed physical therapists to furnish physical therapy services to its patients. These physical therapists were paid on a per-visit basis for their work, were entitled to and received employee benefits from PHHC (including participation in PHHC's pension and health benefits plans), were subject to withholdings for the employee share of FICA and Medicare taxes, and had their worker's compensation insurance and employer's share of FICA and Medicare taxes paid by PHHC.[6]

(7)   On September 16, 1998, the Medicare fiscal intermediary ("Intermediary") for Erwine's issued a notice of program reimbursement ("NPR") for Erwine's FYE December 31, 1996. In doing so, the Intermediary used the Salary Equivalency Guidelines ("Guidelines") to disallow some of the costs incurred by Erwine's as compensation paid to its employed physical therapists during this period.[7]

(8)   On September 30, 1999, Erwine's Intermediary issued a NPR for Erwine's FYE December 31, 1997. The Intermediary employed the Guidelines to disallow some of the costs incurred by Erwine's as compensation paid to its employed physical therapists during this period.[8]

---

[5] Complaint at ¶ 36. AR at 1118, 1134, and 1431. Again, Defendant denied this paragraph of the Complaint (Answer at ¶ 36), but the same points as made in n.4, supra, apply. That is, the Secretary's final decision did not reverse the PRRB's express finding of employee status and actually admits that these physical therapists were employees. AR at 1096, 1099.

[6] Complaint at ¶ 36. AR at 3734 n.2, 4456-57, 4489, 4499, 4594-95, 4610-11, and 4618. Although the Secretary denied this paragraph of the Complaint (Answer at ¶ 36), the same points as made in nn.4 and 5, supra, apply. Once more, the Secretary's final decision did not reverse the PRRB's express finding of employee status and acknowledges that these physical therapists were employees. AR at 3707-08 and 3710.

[7] Complaint at ¶ 37; Answer at ¶ 37. The PRRB projected the ensuing reduction in Medicare reimbursement to Erwine's to be $10,700. AR at 33.

[8] Complaint at ¶ 38; Answer at ¶ 38. The PRRB projected the resulting reduction in Medicare reimbursement to Erwine's to be $7,198. AR at 33.

(9) On September 26, 1997, CHC's Intermediary issued a NPR for CHC's FYE December 31, 1995. The Intermediary used the Guidelines to disallow some of the costs incurred by CHC as compensation paid to its employed physical therapists during this period.[9]

(10) On September 28, 1997, PHHC's Intermediary issued a NPR for PHHC's FYE June 30, 1995. The Intermediary employed the Guidelines to disallow some of the costs incurred by PHHC as compensation paid to its employed physical therapists during this period.[10]

(11) On September 30, 1998, PHHC's Intermediary issued a NPR for PHHC's FYE June 30, 1996. The Intermediary used the Guidelines to disallow some of the costs incurred by PHHC as compensation paid to its employed physical therapists during this period.[11]

(12) In each of the instances described in paragraphs 7-11 above, the disallowance of compensation paid to Erwine's, CHC, and PHHC to their employed physical therapists was entirely predicated on the fact that the compensation was in excess of the Guidelines. Apart from rote application of the Guidelines, the Intermediaries performed no separate or independent "prudent buyer" analysis as to these costs and their reasonableness, and the record contains no such evidence. Nor were these disallowances based in any way on any determination that the services involved were medically unnecessary or otherwise not covered by the Medicare program.[12]

---

[9] Complaint at ¶ 39; Answer at ¶ 39. The PRRB estimated the resulting reduction in Medicare reimbursement to CHC to be $10,346. AR at 1119.

[10] Complaint at ¶ 40; Answer at ¶ 40. AR at 4623. The PRRB projected the ensuing reduction in Medicare reimbursement to PHHC to be $45,230. AR at 3734.

[11] Complaint at ¶ 41; Answer at ¶ 41; AR at 4515. The PRRB estimated the resulting reduction of Medicare reimbursement to PHHC to be $71,026. AR at 3734.

[12] Complaint at ¶¶ 42-43; Answer at ¶¶ 42-43. The PRRB expressly found that there had been no "prudent buyer" analyses in these appeals, and the Secretary neither reversed nor questioned those factual determinations in the agency's final administrative determinations in these appeals. AR at 34 (Erwine's), 1120-21 (CHC), and 3733 (PHHC).

(13)  At least one Medicare fiscal intermediary, Aetna Life Insurance Company, did not enforce the Guidelines in the manner construed by the Secretary (<u>i.e.,</u> as applicable to employees with non-salary compensation).[13]

(14)  The Guidelines applied here were based upon 1983 data updated annually for inflation.  When the Guidelines were reissued in 1998 based on new data, they increased by 49.8% over the limits in effect only one year previously, strongly suggesting that the Guidelines substantially and materially underestimated compensation paid to physical therapists during the time the Guidelines were in effect.[14]

(15)  Erwine's, CHC, and PHHC filed timely requests with the PRRB for administrative review of the disallowances referenced in paragraphs 7-11 above.[15]

(16)  In each of the appeals described in paragraph 13 above, the PRRB reversed the Intermediary's adjustments in their entireties and ruled in favor of Erwine's, CHC, and PHHC.[16]

(17)  Acting on behalf of the Defendant Secretary, the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS") reversed the PRRB in each of these appeals.[17]

(18)  Erwine's, CHC, and PHHC have exhausted all available administrative remedies with respect to the disallowances at issue.[18]

---

[13] AR at 502-503.

[14] AR at 208-209 and 219.

[15] Complaint at ¶¶ 44-47; Answer at ¶¶ 44-47.

[16] Complaint at ¶ 47; Answer at ¶ 47.

[17] Complaint at ¶ 48; Answer at ¶ 48.

[18] Complaint at ¶ 49; Answer at ¶ 49.

(19) Erwine's, CHC, and PHHC timely sought judicial review in this Court.[19]

           Respectfully submitted,

           /s/ Joel M. Hamme (with consent)
           Joel M. Hamme (D.C. Bar 219170)
           Larry S. Gondelman (D.C. Bar 950691)
           POWERS, PYLES, SUTTER & VERVILLE, PC
           1875 Eye Street, NW
           12th Floor
           Washington, DC 20006-5409
           (202) 466-6550

           Attorneys for Plaintiffs

Dated: August 7, 2006

---

[19] Complaint at ¶ 48; Answer at ¶ 48. See 42 U.S.C. § 1395oo(f). The dates of the Deputy Administrator's decisions were October 24, 2005 (Erwine's), October 24, 2005 (CHC), and November 22, 2005 (PHHC), and they were received by the Plaintiffs' representatives on October 28, 2005, October 28, 2005, and November 29, 2005, respectively. The Complaint was filed on December 21, 2005.